No. 24-30706

# In the United States Court of Appeals for the Fifth Circuit

DARCY ROAKE, REVEREND, ON BEHALF THEMSELVES AND ON BEHALF OF THEIR MINOR CHILDREN, REAL PARTY IN INTEREST A.V., REAL PARTY IN INTEREST S.V.; ADRIAN VAN YOUNG, ON BEHALF OF THEMSELVES AND ON BEHALF OF THEIR MINOR CHILDREN, REAL PARTY IN INTEREST A.V., REAL PARTY IN INTEREST S.V.; MAMIE BROADHURST, REVEREND, ON BEHALF OF THEMSELVES AND ON BEHALF OF THEIR MINOR CHILD, REAL PARTY IN INTEREST N.W.; RICHARD WILLIAMS, REVEREND, ON BEHALF OF THEMSELVES AND ON BEHALF OF THEIR MINOR CHILD, REAL PARTY IN INTEREST N.W.; JEFF SIMS, REVEREND, ON BEHALF OF HIMSELF AND ON BEHALF OF HIS MINOR CHILDREN, REAL PARTY IN INTEREST A.S., REAL PARTY IN INTEREST C.S. 1, REAL PARTY IN INTEREST C.S. 2; JENNIFER HARDING, ON BEHALF OF THEMSELVES AND ON BEHALF OF THEIR MINOR CHILD, REAL PARTY IN INTEREST A.O.; BENJAMIN OWENS, ON BEHALF OF THEMSELVES AND ON BEHALF OF THEIR MINOR CHILD, REAL PARTY IN INTEREST A.O.; DAVID HAWLEY, ON BEHALF OF THEMSELVES AND ON BEHALF OF THEIR MINOR CHILDREN REAL PARTY IN INTEREST A.H., REAL PARTY IN INTEREST L.H.; ERIN HAWLEY, ON BEHALF OF THEMSELVES AND ON BEHALF OF THEIR MINOR CHILDREN, REAL PARTY IN INTEREST A.H, REAL PARTY IN INTEREST L.H.; DUSTIN MCCRORY, ON BEHALF OF THEMSELVES AND ON BEHALF OF HIS MINOR CHILDREN, REAL PARTY IN INTEREST E.M., REAL PARTY IN INTEREST P.M., REAL PARTY IN INTEREST L.M.; GARY SERNOVITZ, ON BEHALF OF THEMSELVES AND ON BEHALF OF THEIR MINOR CHILD, REAL PARTY IN INTEREST T.S.; MOLLY PULDA, ON BEHALF OF THEMSELVES AND ON BEHALF OF THEIR MINOR CHILD, REAL PARTY IN INTEREST T.S.; CHRISTY ALKIRE, ON BEHALF OF HERSELF AND ON BEHALF OF HER MINOR CHILD, REAL PARTY IN INTEREST L.A.; JOSHUA HERLANDS, ON BEHALF OF HIMSELF AND ON BEHALF OF HIS MINOR CHILDREN, REAL PARTY IN INTEREST E.H., REAL PARTY IN INTEREST J.H.,

*Plaintiffs-Appellees,*

v.

CADE BRUMLEY, IN HIS OFFICIAL CAPACITY AS THE LOUISIANA STATE SUPERINTENDENT OF EDUCATION; CONRAD APPEL, IN HIS OFFICIAL CAPACITY

AS A MEMBER OF THE LOUISIANA STATE BOARD OF ELEMENTARY AND
SECONDARY EDUCATION (LSBESE); JUDY ARMSTRONG, IN HER OFFICIAL
CAPACITY AS A MEMBER OF THE LSBESE; KEVIN BERKEN, IN HIS OFFICIAL
CAPACITY AS A MEMBER OF THE LSBESE; PRESTON CASTILLE, IN HIS
OFFICIAL CAPACITY AS A MEMBER OF THE LSBESE; SIMONE CHAMPAGNE, IN
HER OFFICIAL CAPACITY AS A MEMBER OF THE LSBESE; SHARON LATTEN-
CLARK, IN HER OFFICIAL CAPACITY AS A MEMBER OF THE LSBESE; LANCE
HARRIS, IN HIS OFFICIAL CAPACITY AS A MEMBER OF THE LSBESE; PAUL
HOLLIS, IN HIS OFFICIAL CAPACITY AS A MEMBER OF THE LSBESE; SANDY
HOLLOWAY, IN HER OFFICIAL CAPACITY AS A MEMBER OF THE LSBESE;
STACEY MELERINE, IN HER OFFICIAL CAPACITY AS A MEMBER OF THE
LSBESE; RONNIE MORRIS, IN HIS OFFICIAL CAPACITY AS A MEMBER OF THE
LSBESE; EAST BATON ROUGE PARISH SCHOOL BOARD; LIVINGSTON PARISH
SCHOOL BOARD; VERNON PARISH SCHOOL BOARD; ST. TAMMANY PARISH
SCHOOL BOARD,

*Defendants-Appellants.*

---

On Appeal from the United States District Court
for the Middle District of Louisiana
No. 3:24-cv-517, Hon. John W. deGravelles

---

## BRIEF OF PLAINTIFFS-APPELLEES

Heather L. Weaver
Daniel Mach
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street, NW, Ste. 600
Washington, DC 20005
(202) 675-2330
hweaver@aclu.org
dmach@aclu.org

Jonathan K. Youngwood
Janet A. Gochman
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
(212) 455-2000
jyoungwood@stblaw.com
jgochman@stblaw.com

*Counsel for Plaintiffs-Appellees*
*(continued on inside cover)*

### *Additional Counsel for Plaintiffs-Appellees*

Nora Ahmed
Charles Andrew Perry
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF LOUISIANA
PO Box 56157
New Orleans, LA 70156
(504) 522-0628
nahmed@laaclu.org
aperry@laaclu.org

Patrick C. Elliott
Samuel T. Grover
FREEDOM FROM RELIGION
FOUNDATION
PO Box 750
Madison, WI 53701
(608) 256-8900
patrick@ffrf.org
sam@ffrf.org

V. Noah Gimbel
Nicholas J. Prendergast
Jordan T. Krieger
SIMPSON THACHER & BARTLETT LLP
900 G Street, NW
Washington, D.C. 20001
(202) 636-5500
noah.gimbel@stblaw.com
nicholas.prendergast@stblaw.com
jordan.krieger@stblaw.com

Alex J. Luchenitser
AMERICANS UNITED FOR
SEPARATION OF CHURCH & STATE
1310 L Street, NW, Ste. 200
Washington, DC 20005
(202) 466-7306
luchenitser@au.org

## CERTIFICATE OF INTERESTED PERSONS

*Roake, et al. v. Brumley, et al.*, No. 24-30706

The undersigned counsel of record certifies, pursuant to Fifth Circuit Rule 27.4 and Rule 28.2.1, that the following listed persons and private entities have an interest in the outcome of this case, including all private practice lawyers and private law firms currently engaged in this litigation. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**Defendants-Appellants:**     Defendants-Appellants     are represented by Office of the Attorney General of Louisiana attorneys Elizabeth B. Murrill, J. Benjamin Aguiñaga, and Zachary Faircloth. Defendant-Appellants Brumley and LBESE officials are also represented by the Becket Fund for Religious Liberty attorneys Eric C. Rassbach, Joseph C. Davis, Benjamin A. Fleishman, Amanda L. Salz, and Kelsey Baer Flores.

**Plaintiffs-Appellees**: Plaintiffs-Appellees are represented by American Civil Liberties Union Foundation Attorneys Heather L. Weaver and Daniel Mach; American Civil Liberties Union Foundation of Louisiana attorneys Nora Ahmed and Charles Andrew Perry;

i

Americans United for Separation of Church & State attorney Alex J. Luchenitser; Freedom From Religion Foundation attorneys Patrick C. Elliot and Samuel T. Grover; and Simpson Thacher & Bartlett LLP attorneys Jonathan K. Youngwood, Janet A. Gochman, V. Noah Gimbel, Nicholas J. Prendergast, and Jordan T. Krieger.

**Amici**: The States of Alabama, Arkansas, Florida, Idaho, Iowa, Indiana, Kentucky, Mississippi, Missouri, Montana, Nebraska, Ohio, South Carolina, South Dakota, Tennessee, Texas, Utah, West Virginia are represented by Office of the Kentucky Attorney General attorneys Russell Coleman, Matthew F. Kuhn, and John H. Heyburn. The Conscience Project and Professor Mark David Hall are represented by attorney Andrea Picciotti-Bayer. Professor Lorianne Updike Toller is represented by Cecere PC attorney J. Carl Cecere. The America First Policy Institute is represented by attorney Michael Berry. The Fraternal Order of Eagles is represented by Schaerr Jaffe LLP attorneys Gene C. Schaerr and Justin A. Miller, and attorney Creighton A. Thurman. The Foundation for Moral Law is represented by attorneys John Eidsmoe and Talmadge Butts.

///

Date: December 30, 2024

*/s/ Jonathan K. Youngwood*

*Counsel for Plaintiffs-Appellees*

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is scheduled for January 23, 2025. Plaintiffs-Appellees agree that oral argument is warranted.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ..........................................i

STATEMENT REGARDING ORAL ARGUMENT ................................iv

TABLE OF CONTENTS ...................................................................... v

TABLE OF AUTHORITIES ............................................................vii

INTRODUCTION................................................................................1

COUNTER-STATEMENT ON JURISDICTION....................................4

COUNTER-STATEMENT OF THE ISSUES .........................................4

COUNTER-STATEMENT OF THE CASE...........................................5

    I.    Factual Background ................................................................5

    II.    Procedural Background............................................................8

SUMMARY OF THE ARGUMENT ..................................................14

ARGUMENT ...................................................................................22

    I.    The District Court Properly Exercised Its Jurisdiction........22

        A.    Plaintiffs' Claims Are Ripe. ........................................24

            1.    This case is fit for judicial decision.....................24

            2.    Plaintiffs will suffer substantial hardship if review is delayed.................................................25

            3.    *Staley* does not preclude jurisdiction here. ........27

        B.    Plaintiffs Have Standing. ...........................................30

            1.    Plaintiffs' asserted injuries are certainly impending...........................................................30

2.    There is no basis for revisiting so-called "offended-observer standing" here......................33

C.    Defendants Are Not Entitled to Sovereign Immunity.....................................................37

II.    H.B. 71 Is Facially Unconstitutional. ...................................41

A.    H.B. 71 Violates the Establishment Clause. ...............42

1.    H.B. 71 is unconstitutional under *Stone*. ...........42

2.    H.B. 71 is unconstitutionally coercive. ...............45

3.    H.B. 71 discriminates based on religious denomination. ...................................................51

4.    H.B. 71 does not fit within any historical tradition..............................................................53

B.    H.B. 71 Violates the Free Exercise Clause.................60

III.    The District Court Properly Granted a Preliminary Injunction. ...........................................................................64

IV.    The District Court's Notice Provision Is Lawful. .................66

CONCLUSION .......................................................................67

CERTIFICATE OF SERVICE.................................................68

CERTIFICATE OF COMPLIANCE......................................69

# TABLE OF AUTHORITIES

**Pages**

## Cases

*ACLU of Ohio Found., Inc. v. Ashbrook,*
   211 F. Supp. 2d 873 (N.D. Ohio 2002), *aff'd,* 375 F.3d 484 (6th
   Cir. 2004) ............................................................................45

*Am. Legion v. Am. Humanist Ass'n,*
   588 U.S. 29 (2019)..........................................................36, 55

*Barber v. Bryant,*
   860 F.3d 345 (5th Cir. 2017)......................................31, 32, 33

*Blanchette v. Conn. Gen. Ins. Corps.,*
   419 U.S. 102 (1974)...............................................................24

*Book People, Inc. v. Wong,*
   91 F.4th 318 (5th Cir. 2024) ........................................ passim

*Bosse v. Oklahoma,*
   580 U.S. 1 (2016)....................................................................44

*Braidwood Mgmt., Inc. v. EEOC,*
   70 F.4th 914 (5th Cir. 2023) ...........................................22, 25

*Briggs v. Mississippi,*
   331 F.3d 499 (5th Cir. 2003)..................................................45

*Carson v. Makin,*
   596 U.S. 767 (2022)..........................................................51, 62

*City of Elkhart v. Books,*
   532 U.S. 1058 (2001).........................................................50, 63

*City of Ocala v. Rojas,*
   143 S. Ct. 764 (2023).............................................................35

*City of Tuscaloosa v. Harcros Chems., Inc.,*
   158 F.3d 548 (11th Cir. 1998)...........................................59, 60

*Collins v. Yellen*,
  594 U.S. 220 (2021) ........................................................... 30

*Cooper v. McBeath*,
  11 F.3d 547 (5th Cir. 1994) ............................................... 26

*Croft v. Perry*,
  624 F.3d 157 (5th Cir. 2010) ............................................. 41

*Doe ex rel. Doe v. Elmbrook Sch. Dist.*,
  687 F.3d 840 (7th Cir. 2012) (en banc) ............................. 50

*Doe v. Sch. Bd. of Ouachita Par.*,
  274 F.3d 289 (5th Cir. 2001) ............................................. 30

*Doe v. Tangipahoa Par. Sch. Bd.*
  494 F.3d 494 (5th Cir. 2007) (en banc) ............................. 32

*Edwards v. Aguillard*,
  482 U.S. 578 (1987) ...................................................... 1, 45

*Elrod v. Burns*,
  427 U.S. 347 (1976) ........................................................... 64

*Engel v. Vitale*,
  370 U.S. 421 (1962) ........................................................... 44

*Ex Parte Young*,
  209 U.S. 123 (1908) .................................................... 16, 38

*Freedom From Religion Found., Inc. v. Mack*,
  49 F.4th 941 (5th Cir. 2022) ...................................... passim

*Glassroth v. Moore*,
  335 F.3d 1282 (11th Cir. 2003) ......................................... 52

*Gulfport Energy Corp. v. FERC*,
  41 F.4th 667 (5th Cir. 2022) ............................................. 26

*Harrison v. Young*,
  48 F.4th 331 (5th Cir. 2022) ........................................ 61, 64

*Ingebretsen v. Jackson Pub. Sch. Dist.*,
    88 F.3d 274 (5th Cir. 1996)...................................... 15, 46, 66

*Jackson v. Wright*,
    82 F.4th 362 (5th Cir. 2023) ............................................ 39

*Janny v. Gamez*,
    8 F.4th 883 (10th Cir. 2021) ............................................ 62

*Jusino v. Fed'n of Catholic Teachers, Inc.*,
    54 F.4th 95 (2d Cir. 2022), *cert. denied*, 143 S. Ct. 1056 (2023).......... 44

*Kennedy v. Bremerton Sch. Dist.*,
    597 U.S. 507 (2022)................................................. passim

*Lakedreams v. Taylor*,
    932 F.2d 1103 (5th Cir. 1991)............................................ 65

*Larson v. Valente*,
    456 U.S. 228 (1982).................................................... 51

*Lee v. Weisman*,
    505 U.S. 577 (1992)................................................. passim

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992).................................................... 30

*Marsh v. Chambers*,
    463 U.S. 783 (1983).................................................... 56

*Masterpiece Cakeshop v. Colo. Civ. Rts. Comm'n*,
    584 U.S. 617 (2018).................................................... 63

*McCreary Cnty. v. ACLU of Ky.*,
    545 U.S. 844 (2005)............................................ 37, 51, 53

*Murray v. City of Austin*,
    947 F.2d 147 (5th Cir. 1991)......................................... 33, 62

*Nat'l Coal. for Men v. Selective Serv. Sys.*,
    969 F.3d 546 (5th Cir. 2020)............................................ 44

*NetChoice, L.L.C. v. Paxton,*
121 F.4th 494 (5th Cir. 2024) ............................................................. 41

*New Doe Child #1 v. United States,*
901 F.3d 1015 (8th Cir. 2018) ............................................................ 62

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen,*
597 U.S. 1 (2022) ................................................................................ 55

*NLRB v. Catholic Bishop of Chicago,*
440 U.S. 490 (1979) ...................................................................... 44, 45

*O'Connor v. Washburn Univ.,*
416 F.3d 1216 (10th Cir. 2005) ......................................................... 37

*Opulent Life Church v. City of Holly Springs,*
697 F.3d 279 (5th Cir. 2012) ................................................ 25, 64, 65

*Pearson v. Holder,*
624 F.3d 682 (5th Cir. 2010) ............................................................. 25

*Pennsylvania v. West Virginia,*
262 U.S. 553 (1923), *aff'd on reh'g*, 263 U.S. 350 (1923) ..................... 22

*Quern v. Jordan,*
440 U.S. 332 (1979) ........................................................................... 66

*Santa Fe Indep. Sch. Dist. v. Doe,*
530 U.S. 290 (2000) ........................................................................... 29

*Sch. Dist. of Abington Twp. v. Schempp,*
374 U.S. 203 (1963) ..................................................................... passim

*Shurtleff v. City of Boston,*
596 U.S. 243 (2022) ...................................................................... 20, 58

*Staley v. Harris Cnty.,*
485 F.3d 305 (5th Cir. 2007) (en banc) ......................................... passim

*Stone v. Graham,*
449 U.S. 39 (1980) ....................................................................... passim

*Summit Med. Assocs., P.C. v. Pryor*,
  180 F.3d 1326 (11th Cir. 1999).............................................38

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014)................................................31, 32

*Texas v. United States*,
  497 F.3d 491 (5th Cir. 2007).............................................24

*Thomas v. Union Carbide Agr. Prods. Co.*,
  473 U.S. 568 (1985)................................................22, 24

*Town of Greece v. Galloway*,
  572 U.S. 565 (2014).....................................................56

*Van Orden v. Perry*,
  545 U.S. 677 (2005) ............................................... passim

*Watkins v. Telsmith, Inc.*,
  121 F.3d 984 (5th Cir. 1997).............................................57

*Whole Women's Health v. Jackson*,
  595 U.S. 30 (2021)......................................................40

*Wisconsin v. Yoder*,
  406 U.S. 205 (1972).....................................................61

## State Constitutional Provisions

La. Const. art. VIII, § 3(A) ................................................66

## Federal Statutory Provisions

28 U.S.C. § 1292(a)(1)......................................................4

28 U.S.C. § 1331 ...........................................................4

28 U.S.C. § 1343(a)(3)......................................................4

## State Statutory Provisions

La. House Bill No. 71, Act No. 676 (2024) ..................... passim

La. R.S. § 17:6(A)(10) ................................................................. 66

La. R.S. § 17:22(3) ...................................................................... 40

La. R.S. § 17:221 ........................................................................... 7

La. R.S. § 17:233 ........................................................................... 8

## **Other Authorities**

4 West Publ'g Co., *American Jurisprudence* § 8 (2d ed. 2024) ............... 53

17A Daniel R. Coquillette, Gregory P. Joseph, Georgene M. Vairo,
  Chilton Davis Varner, *Moore's Federal Practice - Civil* § 123.40
  (Matthew Bender 3d ed. 2024) ............................................. 38

Bill Murphy, *Bible Monument's Removal Adds Twist to Appeal*,
  Hou. Chronicle (Jan. 22, 2007), https://bit.ly/3AVSkdQ .................. 27

## INTRODUCTION

"Families entrust public schools with the education of their children, but condition their trust on the understanding that the classroom will not purposely be used to advance religious views that may conflict with the private beliefs of the student and his or her family." *Edwards v. Aguillard*, 482 U.S. 578, 584 (1987). Louisiana Act No. 676, which will impose the Ten Commandments on public-school children *for nearly every hour of every day of their public education*, is an alarming betrayal of that trust.

The Act is patently unconstitutional under Supreme Court precedent, including (1) *Stone v. Graham*, 449 U.S. 39 (1980), which struck down a nearly identical Kentucky statute, and (2) a long line of First Amendment cases prohibiting the State from holding public-school students captive to government-sponsored religious messages and observance. As the Court has recognized, because schoolchildren "are impressionable and their attendance is involuntary," *Edwards*, 482 U.S. at 584, there are "heightened concerns with protecting freedom of conscience from subtle coercive pressure in the elementary and secondary public schools." *Lee v. Weisman*, 505 U.S. 577, 592 (1992). Although the

1

Supreme Court recently affirmed that subjecting a "captive audience" of students to official religious observance is "problematically coercive," *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 541-42 (2022), the Louisiana Legislature nevertheless designed the Act, according to its primary sponsor, to ensure that "children learn what God says is right and what He says is wrong." *Infra* p. 5.

The version of the Ten Commandments selected, approved, and mandated by lawmakers in the Act—a Protestant rendition of scripture—further illustrates the constitutional impropriety of the statutory scheme. Even among those who adhere to this scripture, there are deep theological differences as to its correct text and meaning. By wading into thorny religious questions and taking sides on these disputes, the Act violates another well-established constitutional principle, the First Amendment's prohibition on governmental denominational preference.

After thorough consideration of the historical record and evidence, including live testimony by a qualified expert, the district court correctly found that the displays mandated by the Act do not fit within any historical tradition that could justify their coercive and denominationally

discriminatory nature. And, consistent with our founding principles of religious freedom and the governing caselaw, the court properly held that the minimum requirements of the statute, *standing alone*, render it facially unconstitutional under both the Establishment and Free Exercise Clauses.

Defendants-Appellants' hypothetical "illustrations" do not save the Act. Regardless of any variations in content, the statute's mandatory minimum provisions demand permanent displays that all feature one constant as their central focus: a state-adopted, Protestant version of the Ten Commandments. Students will be, quite literally, a captive audience to this scripture because the pervasive nature of the Act's statutory scheme ensures that there is no way to avoid the displays.

The First Amendment does not allow this. The rights to decide which religion, if any, to follow and which religious beliefs, if any, to adopt and practice are constitutionally reserved to individuals, parents, families, and faith communities—not government officials.

## <u>COUNTER-STATEMENT ON JURISDICTION</u>

The district court had jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3). This Court has jurisdiction pursuant to 28 U.S.C. § 1292(a)(1).

## <u>COUNTER-STATEMENT OF THE ISSUES</u>

1.     Did the district court correctly conclude that (i) Plaintiffs' claims are ripe for resolution, and (ii) Plaintiffs have Article III standing?

2.     Did the district court correctly conclude that the state Defendants, as officials statutorily required to implement the Act, are not entitled to sovereign immunity?

3.     Did the district court correctly conclude that the Act facially violates the Establishment and Free Exercise Clauses of the First Amendment?

4.     Did the district court abuse its discretion in issuing a preliminary injunction after determining that the preliminary-injunction factors weigh in Plaintiffs' favor?

# COUNTER-STATEMENT OF THE CASE

## I.    Factual Background

On June 19, 2024, Louisiana Governor Jeff Landry signed into law House Bill No. 71, Act No. 676 ("H.B. 71" or "the Act"), requiring each public-school governing authority in the state to permanently display— no later than January 1, 2025—the Ten Commandments in every elementary, secondary, and post-secondary classroom under its jurisdiction. ROA.2093. The measure took effect immediately. ROA.2098.

According to Representative Dodie Horton, the primary author and sponsor of H.B. 71, the measure was designed to teach children God's law: "It is so important that our children learn what God says is right and what He says is wrong and to allow [the Ten Commandments] to be displayed in our classrooms as a visual aid, I believe, especially in this day and time is so important." ROA.824; *see also* ROA.838 ("I'm not concerned with an atheist. I'm not concerned with a Muslim. I'm concerned with our children looking and seeing what God's law is.").

Under the Act, at minimum, each permanent display must include a "poster or framed document that is at least eleven inches by fourteen inches." ROA.2097. Further, "[t]he text of the Ten Commandments shall

be the central focus of the poster or framed document and shall be printed in a large, easily readable font." ROA.2097. The Act specifies the exact version of the commandments that public schools must use—a Protestant rendition of scripture drawn from the King James Bible. ROA.1621, 2095-96. The statute's prescribed scriptural text states:

The Ten Commandments

I AM the LORD thy God.

Thou shalt have no other gods before me.

Thou shalt not make to thyself any graven images.

Thou shalt not take the Name of the Lord thy God in vain.

Remember the Sabbath day, to keep it holy.

Honor thy father and thy mother, that thy days may be long

upon the land which the Lord thy God giveth thee.

Thou shalt not kill.

Thou shalt not commit adultery.

Thou shalt not steal.

Thou shalt not bear false witness against thy neighbor.

Thou shalt not covet thy neighbor's house.

Thou shalt not covet thy neighbor's wife, nor his

manservant,

nor his maidservant, nor his cattle,

nor anything that is thy neighbor's.

ROA.2095-96. As Defendants conceded below, this text is not the version of the Ten Commandments observed by most adherents of the Catholic and Jewish faiths. ROA.458 ("This was the version upheld in *Van Orden*, but different faith traditions adopt different versions of the Commandments' text. For example, the Catholic version omits 'graven images.' And the Torah uses the phrase 'I am the Lord your God who brought you out of the land of Egypt, out of the house of bondage.'" (quoting Ex. A-1 at 14)); *see also* ROA.1760, 1778 n.22. And many other religions do not consider the commandments to be part of their belief system at all. ROA.873-74.

There is no way for public-school students and their families to opt out of the Act's pervasive religious scheme: Under threat of civil and/or criminal penalty, including fines and jail, "parents must send their minor children to school and ensure attendance during regular school hours at least 177 days per year." *See* ROA.1749; *see also* La. R.S. §§ 17:221,

17:233. In addition, the Louisiana Attorney General has repeatedly affirmed that every public school must meet the statute's January deadline. ROA.1672-73.

The Act further requires the Louisiana Board of Elementary and Secondary Education ("BESE") to "adopt rules and regulations . . . to ensure the proper implementation" of the statute. ROA.2097. These rules must be enforced by the Superintendent of Education, whom Louisiana law expressly charges with "[i]mplement[ing] the policies and programs of the board and the laws affecting schools under the jurisdiction of the board." ROA.1661-62, 1672.

## II.    Procedural Background

Plaintiffs, a multi-faith group of fourteen parents and their combined sixteen minor children enrolled or soon-to-be enrolled in Louisiana's public schools, filed their Complaint on June 24, 2024, ROA.39, and their Motion for Preliminary Injunction on July 8, 2024. ROA.239. Through the Complaint and declarations, Plaintiffs have asserted that the Act will harm them in violation of the Establishment and Free Exercise Clauses of the First Amendment, including by (1) substantially burdening the parent-Plaintiffs' religious exercise by

usurping their parental authority to direct their children's religious upbringing and education; and (2) religiously coercing their children by pressuring them to observe, meditate on, venerate, and follow the state's favored religious text, and by pressuring the children to suppress expression of their own religious beliefs and backgrounds at school. ROA.55-76, 256-57, 278-329. Defendants filed a motion to dismiss on August 5, 2024. ROA.413.

On August 13, 2024, Plaintiffs proffered the expert report of Dr. Steven K. Green, a historian who has conducted research and published extensively on matters relating to the intersection of law, religion, and history, as well as the history of public schools. ROA.848-76. Although the schedule set by the district court expressly allowed them to do so, Defendants declined to offer their own opening expert report or a rebuttal report. ROA.1522, 2476. Instead, on August 30, 2024, they filed a motion to exclude Dr. Green's testimony. ROA.1117.

On October 21, 2024, the district court held a full-day evidentiary hearing and oral argument. The court accepted as evidence the testimony (by declaration) of the Plaintiffs and representatives of Defendants and more than forty exhibits. The court also heard live testimony from Dr.

9

Green, whom Defendants cross-examined. His testimony tracked and expanded on his expert report and focused on (among other topics) the founders' concern for religious coercion and denominational preference, and the historical insignificance of the Ten Commandments in American public education. ROA.1770-77.

On November 12, 2024, the district court denied Defendants' motion to exclude Dr. Green's testimony, ROA.1595-1617, granted Plaintiffs' preliminary-injunction motion, and denied Defendants' motion to dismiss. ROA.1793-94. As to Dr. Green, the court found him to be "exceptionally well-credentialed and knowledgeable on the issues under consideration and . . . credible, clear, and candid in his answers during both examination and cross-examination." ROA.1609; *see also* ROA.1770, 1777.[1]

As to the parties' jurisdictional arguments, the court held that (1) Plaintiffs' claims are ripe because there is "sufficient information about

---

[1] Notwithstanding Defendants' attempt to misrepresent Dr. Green's opinions and testimony by presenting out-of-context transcript excerpts, Defs.Br.16, the district court recognized that his opinions were "nuanced," ROA.1614, and his testimony "well supported and persuasive," ROA.1770, and "convincing, logical, and consistent with the Court's own review of the evidence." ROA.1777.

what the Ten Commandment displays will look like from the Act itself to determine whether the display is constitutional," ROA.1623, 1645-52; and (2) Plaintiffs have standing because they "have a personal stake in the outcome of the litigation." ROA.1624, 1658-65. The court also held that "the Superintendent and BESE Members are not entitled to sovereign immunity." ROA.1624, 1671-75.

Turning to the merits, the court first determined that Plaintiffs' Establishment Clause claim is controlled by *Stone*, which dispositively renders the Act unconstitutional. ROA.1625-26, 1703-15. The court noted that Defendants conceded at oral argument "that *Stone* remains binding on this Court, but they attempted to downplay and distinguish it." ROA.1714, 2519.[2] Second, the court ruled that, even absent *Stone*, under

---

[2] Defendants now deny that they made this concession, Def.Br.50 n.5, but the transcript supports the district court's account:

| **The Court:** | But do you agree with her premise which is I'm bound by *Stone* until the Supreme Court [t]ells me I'm not bound by *Stone*? |
|---|---|
| **Mr. Aguiñaga:** | Your Honor, we're happy for - we're not going to dispute that, your Honor. Obviously, if this case gets to the Supreme Court we will vigorously litigate whether *Stone* remains good law. But assuming it does remain good law and binding on |

*Kennedy* and other Establishment Clause jurisprudence, (1) "Plaintiffs have shown a real and substantial likelihood of coercion," ROA.1751, and (2) the Act is unconstitutionally discriminatory because it "fails to select historical documents generally and versions of the Decalogue specifically 'without regard for belief.'" ROA.1627 (quoting *Freedom From Religion Found., Inc. v. Mack*, 49 F.4th 941, 958 (5th Cir. 2022)).

Third, recounting the expert testimony and its "own review of the evidence," ROA.1777, the court rejected Defendants' claims that there is a tradition of using the Ten Commandments in public-school education and that permanent displays of the Ten Commandments in public-school classrooms fits within that tradition. ROA.1769-78.

Fourth, the court held that, under the Free Exercise Clause, the Act "conflicts with and burdens the [Plaintiffs'] sincere beliefs" and "substantially interferes with and burdens the right of parents to direct

---

this court, as we accept for purposes of this discussion, your Honor, look at what *Stone* says.

ROA.2519. The purportedly qualifying language cited by Defendants— "for purposes of this discussion"—plainly refers to the assumption that the Supreme Court will not overturn *Stone*. Defendants' counsel's vow to "vigorously litigate whether *Stone* remains good law" if the case reaches the Supreme Court would make no sense if he were taking the position that *Stone* is *already* not good law.

their children's religious education and upbringing." ROA.1760-61 (cleaned up). The court "easily reject[ed]" Defendants' argument that the Act is religiously neutral, pointing to the text of the Act itself and its legislative history, ROA.1760-66, and held that the statute failed strict scrutiny. ROA.1764.

Fifth, the court held that the Act unconstitutionally coerces the child-Plaintiffs under the Free Exercise Clause because "for all practical purposes, they cannot opt out of viewing the Ten Commandments when they are displayed in every classroom, every day of the year, every year of their education." ROA.1760-66.

Finally, determining that the preliminary-injunction factors weighed in Plaintiffs favor, ROA.1768, the court issued an order prohibiting Defendants from "(a) enforcing H.B. 71; (b) adopting rules or regulations for the enforcement of H.B. 71; and (c) requiring that the Ten Commandments be posted in every public-school classroom in Louisiana in accordance with H.B. 71." ROA.1793-94. The court also directed the state Defendants to provide notice of the order and the Act's unconstitutionality (the "Notice Provision") to all Louisiana "public

elementary, secondary, and charter schools, and all public post-secondary education institutions." ROA.1793-94.

Defendants filed a notice of appeal on November 13, 2024. Two days later, Defendants moved this Court to stay the preliminary injunction. ECF No. 39. On November 20, 2024, the Court denied the stay motion and lifted a previously granted administrative stay of the Notice Provision. ECF No. 68. On December 30, 2024, the Court denied a petition previously filed by Defendants, ECF No. 75, for initial hearing en banc. ECF No. 155.

## SUMMARY OF THE ARGUMENT

Defendants' demand that this Court dismiss Plaintiffs' claims for lack of jurisdiction directly contravenes longstanding precedent. Defendants contend that any suit challenging the Act is premature on both ripeness and standing grounds because (1) Plaintiffs have not yet been harmed, and (2) a court can determine whether H.B. 71's displays are constitutional only by adjudging each individual display on its own merits. The district court properly rejected these arguments.

First, the minimum requirements of the Act, with which all schools must comply, provide adequate context to render this case fit for decision

14

under ripeness doctrine. Although Defendants maintain that the district court did not follow this Court's ruling in *Staley v. Harris County*, 485 F.3d 305 (5th Cir. 2007) (en banc), the court undertook a careful comparison between the display and other facts at issue in *Staley* and the displays and other facts at issue here and recognized that they are distinguishable in significant ways.

Second, the district court held that Plaintiffs need not await consummation of their threatened injuries to sue and that future, "certainly impending" harms are adequate to confer standing. Defendants take issue with the court's citation to *Ingebretsen v. Jackson Public School District*, 88 F.3d 274, 278 (5th Cir. 1996), in reaching this conclusion, but *Ingebretsen* is consistent with a long line of uncontested caselaw affirming the same point, and, notably, the district court's ruling also rested on many of those other cases. This Court's recent opinion in *Mack* lays to rest Defendants' theory that Plaintiffs may bring an Establishment Clause challenge *only after* they have been exposed to the Act's displays: "For a plaintiff to sue under the Establishment Clause, his 'regular activities' must prompt 'personal confrontation' with the challenged religious exercise. *When a plaintiff seeks only prospective*

*relief, he must show that future confrontation is substantially likely.*" 49 F.4th at 949 (cleaned up) (emphasis added). Here, of course, it is certain that the child-Plaintiff will be directly confronted with the displays.

Defendants' argument that the state Defendants are entitled to sovereign immunity fares no better. While they insist that the named state officials have no real enforcement duties pursuant to the Act, the text of the Act and the state education code belie that position. In addition, Defendants' suggestion that the *Ex Parte Young* exception is applicable only where state officials' implementation is ongoing runs contrary to numerous cases in which courts have denied sovereign immunity in pre-enforcement actions. Indeed, *Ex Parte Young*, 209 U.S. 123 (1908)*,* itself involved a *pre-enforcement* action. The exception is not available for *past* conduct, of course, but it has never been interpreted to prevent plaintiffs from obtaining equitable relief against *future* implementation.

Finally, Defendants' argument that this Court should eviscerate so-called "offended-observer" standing and deny jurisdiction on that ground is a red herring. As an initial matter, Defendants mischaracterize Plaintiffs' demonstrated injuries as spiritual offense alone. In fact,

Plaintiffs have shown that they will suffer a range of cognizable harms, including the harms associated with religious coercion of students and government usurpation of parents' right to direct the religious education and upbringing of their children. Any change to "offended-observer standing" would not, therefore, affect standing here. Moreover, the form of standing to which Defendants object—spiritual offense and stigma resulting from direct, unwelcome contact with, or exposure to, a governmental religious display or practice—is doctrinally sound and is not in need of reconsideration by this Court.

Defendants' merits arguments are also weak. Louisiana children attend public school in compliance with the state's compulsory-education laws. As of January 1, Louisiana will subject those children—no matter their faith or religious belief—to unavoidable displays of a state-prescribed, Protestant version of the Ten Commandments *for nearly every hour of every school day of their public education*. As the district court held, this statutory scheme is facially unconstitutional and violates the Plaintiffs' rights under both the Establishment and Free Exercise Clauses.

Nearly fifty years ago, the Supreme Court struck down, on its face, a materially indistinguishable Kentucky statute, recognizing that posting the Ten Commandments in every public-school classroom would unconstitutionally "induce the schoolchildren to read, meditate upon, perhaps to venerate and obey, the Commandments." *Stone*, 449 U.S. at 42. The same is true here. The text of the Ten Commandments, infused with religious directives, will "confront[] elementary school students every day." *See Van Orden v. Perry*, 545 U.S. 677, 691 (2005) (plurality opinion).

H.B. 71 cannot be reconciled with *Stone*, which is good law and binding on lower courts, as Defendants have conceded. Indeed, the Act is more constitutionally egregious than the statute overturned in *Stone* because it mandates that schools use an official, denominationally preferential version of the Ten Commandments. Trying to walk back their admission below, Defendants now assert that "*Stone* is dead" and that the district court erroneously relied on it. Def.Br.50. But that position is untenable in light of this Court's repeated warnings that it is the Supreme Court's prerogative to overrule its own precedent and that this Court must follow binding precedent until and unless that happens.

18

Accordingly, in holding that the Act is "facially unconstitutional and unconstitutional in all applications," ROA.1780 (cleaned up), the district court properly determined that *Stone* is "directly on point" and dispositive. ROA.1699.

As a matter of law, that should end the inquiry. But even absent *Stone*, H.B. 71 does not pass muster under Establishment or Free Exercise Clause jurisprudence prohibiting the government from religiously coercing public-school students and from enacting denominationally preferential laws. The district court's opinion faithfully applies this precedent, and Defendants fail to address in any serious measure the court's ruling on these points. As to the former, Defendants contend only that H.B. 71 does not involve religious exercise. The Supreme Court has disagreed. As to the latter, they argue that the Act's Protestant version of the Ten Commandments cannot be denominationally preferential because it is identical to the text of the monument upheld in *Van Orden*. However, there is an obvious distinction between accepting a donated monument with text chosen by a private party and affirmatively selecting and mandating—across every classroom in the State—a version of religious scripture that excludes

Jews and Catholics, not to mention all other Louisiana students and families who do not consider the Ten Commandments to be part of their faith traditions.

Furthermore, the district court correctly found that the historical record does not support any tradition that would justify such a coercive and denominationally discriminatory practice. The court's analysis involved a careful and thorough factual inquiry that included its "own review of the evidence[,]" ROA.1777, and allowed both parties the opportunity to submit written expert evidence as well as live testimony. Defendants, who chose not to offer any expert evidence, do not argue that the court's factual findings on these issues are clearly erroneous. Instead, they attempt to create a new legal standard for Establishment Clause claims, based on a single footnote in *Kennedy* and Justice Gorsuch's concurring opinion in *Shurtleff v. City of Boston*, 596 U.S. 243 (2022)— neither of which says what Defendants claim. And they argue for an entirely new rule of litigation, unsupported by caselaw, suggesting that it is improper for courts to hear expert testimony from a historian in cases involving historical analysis.

Finally, Defendants return repeatedly to their hypothetical "illustrations" as an envisaged panacea for the Act's constitutional infirmities. But many of the illustrations do not comply with the minimum requirements of the Act (because the text is not the "central focus" of the display and/or is not "printed in a large, easily readable font"), as the district court found. ROA.1698-99, 2519-21. And even if they did, this case is not about the content of any individual display. Whatever else may be included in any particular display, the minimum requirements of the Act will impose scripture—the State's preferred, denominationally discriminatory version, no less—on every student, and these displays will confront students throughout every hour of every day of every year of their educational journeys.

To that point, as the district court held, the central question here "is not whether the Biblical laws can ever be put on a poster; the issue is whether, as a matter of law, there is any constitutional way to display the Ten Commandments *in accordance with the minimum requirements of the Act*." ROA.1699. There is not, as the district court concluded. The decision below should be affirmed.

# **ARGUMENT**

## I.    **The District Court Properly Exercised Its Jurisdiction.**

While they present separate jurisdictional questions, "there is a fair amount of overlap between Article III standing requirements and the ripeness analysis." *Braidwood Mgmt., Inc. v. EEOC,* 70 F.4th 914, 930 (5th Cir. 2023). Contrary to Defendants' arguments, neither ripeness nor standing doctrine requires a plaintiff to "to await the consummation of threatened injury to obtain preventive relief." ROA.1652 (quoting *Thomas v. Union Carbide Agr. Prods. Co.*, 473 U.S. 568, 581 (1985)). Rather, "[i]f the injury is certainly impending, that is enough." ROA.1652 (quoting *Thomas*, 473 U.S. at 581). This Article III principle is as uncontroversial as it is longstanding.[3] Accordingly, the district court properly held that Plaintiffs need not delay suit until H.B. 71 is implemented and they actually suffer harm. ROA.1652, 1658.

Plaintiffs' claims are ripe because, as the district court recognized, "the Act itself" provides "sufficient information about what the Ten

---

[3] *See, e.g.*, *Pennsylvania v. West Virginia*, 262 U.S. 553, 592-93 (1923), *aff'd on reh'g*, 263 U.S. 350 (1923) (holding that lawsuits filed "a few days" after challenged statute took effect were not premature even though "the statute had not been tested" in actual practice).

Commandment[s] displays will look like . . . to determine whether the display is constitutional" without further factual development. ROA.1623. In addition, given the injuries asserted by Plaintiffs and the looming implementation of the Act, "Plaintiffs have a personal stake in the outcome of the litigation sufficient to confer standing." ROA.1623-24.

So, too, the district court correctly held that no Defendant is entitled to sovereign immunity because "Plaintiffs have satisfied the *Ex Parte Young* exception as to Brumley and the BESE Members." ROA.1625. The state Defendants' statutory enforcement authority and obligations are evident from the face of H.B. 71 and Louisiana's education code. ROA.1671-76. And Defendants' contention that sovereign immunity applies because the state Defendants have yet to carry out those duties would preclude *all* pre-enforcement lawsuits against state officials. That is not the law in this Circuit or anywhere else.

In an effort to salvage their jurisdictional arguments, Defendants decry "offended-observer standing," but Plaintiffs' claims do not depend on such standing. Defendants also repeatedly fall back on their hypothetical "illustrations," which they believe are permissible under the First Amendment. Not only are most of these displays largely

23

*in*consistent with the minimum requirements of H.B. 71, ROA.1679-99, 2519-21, but they are also beside the point. Even if their illustrations could somehow render the statutory scheme constitutional *on the merits* (they cannot), they do nothing to obviate or undermine the impending injuries that Plaintiffs assert from such displays and do not otherwise deprive the court of jurisdiction over the constitutional question at issue: whether the Act's minimum requirements violate the First Amendment.

### A.    Plaintiffs' Claims Are Ripe.

Ripeness is a question of timing, with courts seeking to avoid "premature adjudication" of "abstract disagreements." *Thomas*, 473 U.S. at 580. The two-prong ripeness analysis examines and balances "the fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration." *Texas v. United States*, 497 F.3d 491, 498 (5th Cir. 2007). Both prongs weigh in Plaintiffs' favor here.

#### 1.    *This case is fit for judicial decision.*

Plaintiffs' facial challenge to H.B. 71 is fit for judicial determination because, "regardless of what iterations of the displays AG Defendants are able to conjure up for purposes of their briefing, the fundamental requirements of the Act mandate that the displays occur in a specific time, place, and manner," and no public-school governing authority may

deviate from those minimum requirements. ROA.1645-46. The relevant inquiry for the Court is thus a "pure question of law," namely, "whether the displays, *as mandated by the State*, violate the Establishment and Free Exercise Clauses of the First Amendment." ROA.1649 (quoting *Braidwood*, 70 F.4th at 930) (emphasis added); *see, e.g.*, *Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 141-42 (1974) (holding that takings claim was ripe where statute required special court to order the conveyance of rail properties and "granted no discretion not to order the transfer," even though "the exact terms of the conveyance remain[ed] to be decided").

2. *Plaintiffs will suffer substantial hardship if review is delayed.*

As this Court has repeatedly held, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Book People, Inc. v. Wong*, 91 F.4th 318, 341 (5th Cir. 2024) (internal quotation marks omitted). Such harms, which are present here, constitute serious hardship for ripeness purposes. *See Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 288 (5th Cir. 2012) (holding that plaintiffs' facial claims were ripe "because "[e]ach day that

passes without Opulent Life being able to occupy its new building is a day in which its religious free exercise is curtailed").

Plaintiffs' uncontroverted testimony details the injuries they will suffer once H.B. 71 is implemented, *supra* pp. 8-9, and they need not await the consummation of this threatened harm to obtain injunctive relief. A case is ripe where "an injury that has not yet occurred is sufficiently likely to happen [so as] to justify judicial intervention." *Pearson v. Holder*, 624 F.3d 682, 684 (5th Cir. 2010); *see also Gulfport Energy Corp. v. FERC*, 41 F.4th 667, 679 (5th Cir. 2022) ("Ripeness does not demand that an injury be certain. Instead, the feared injury need only be sufficiently likely to happen [.]" (cleaned up)).

Here, there is no question that, once H.B. 71 is implemented, the children-Plaintiffs will be subjected, in every classroom during every school day, to displays that accord with the minimum requirements of the statute. Nor is there any question that, absent judicial intervention, Defendants will implement the law. ROA.1661, 1767. Plaintiffs' injuries are thus sufficiently likely to occur, and their claims are ripe. *See Cooper v. McBeath*, 11 F.3d 347, 552 n.7 (5th Cir. 1994) (holding that "promise

of threatened enforcement [of statute] is . . . sufficient to thwart any assertion that the dispute lacks ripeness").

### 3. Staley *does not preclude jurisdiction here.*

Defendants' ripeness argument rests almost entirely on this Court's en banc ruling in *Staley*. *See* Def.Br.27; ROA.1646. But *Staley*, which challenged the constitutionality of a lone Bible monument placed near the public entrance of a county courthouse, 485 F.3d at 307, 309, involved a unique and unusual set of factual circumstances that "is distinguishable for several reasons." ROA.1648.

Four days before the en banc oral argument, the *Staley* monument (previously held unconstitutional by a three-judge panel) was removed from public view and placed in storage to accommodate an extensive renovation of the property. 485 F.3d at 307. Because the renovation sought to restore a previously demolished stone staircase where the monument had stood, the county would be prevented from re-displaying it in the same location. *See* Bill Murphy, *Bible Monument's Removal Adds Twist to Appeal*, Hou. Chron. (Jan. 22, 2007), https://bit.ly/3AVSkdQ. As a result, the en banc Court deemed the appeal moot and "any dispute over a probable redisplay" unripe, explaining: "[I]t is not known when,

where, or under what circumstance the monument and Bible will be restored on the Courthouse grounds." 485 F.3d at 307. Indeed, "no decision ha[d] been made regarding *any aspect* of the future display of the monument." *Id.* at 309; ROA.1647-48.

The facts here stand in stark contrast to those in *Staley*. There, the county had made no decisions or plans pertaining to the monument's future. *Id.* at 307-09. And there was no legal requirement that the Bible monument be re-displayed in accordance with any particular specifications or at all, for that matter. (To Plaintiffs' counsel's knowledge, the monument has never been re-erected on courthouse property.) H.B. 71 *requires* Defendants to post the Ten Commandments in every classroom by a date certain (January 1, 2025), and the displays *must* comply with the statute's clear and extensive minimum requirements.

*Staley* also did not concern public-school-sponsored religious observance. The distinction is important. With the monument "[o]ut of sight in some warehouse" and no specific plan to re-erect it, there was substantial uncertainty as to whether the plaintiff would ever again encounter the monument or suffer the same hardship that animated her

claim in the first place. 485 F.3d at 309. Here, Louisiana law makes the displays and school attendance mandatory. The statute provides no way for students to avoid classrooms featuring the displays. Nor could it, given that the displays will be posted in every single classroom in every elementary, middle, and high school.

Examining these facts, the district court properly concluded that there exists here (unlike in *Staley*) "sufficient context concerning the placement of the Ten Commandments so that the Court can evaluate the Act's constitutionality at this time." ROA.1648-49 ("[I]t *is* 'known when, where, [and] under what circumstance' the Ten Commandments will be displayed in public schools."). The district court's ripeness reasoning is thus consistent with *Staley* and with Supreme Court precedent holding that a challenge to school-sponsored religious observance is properly adjudicated even if some details remain unknown. *See Santa Fe Indep. School Dist. v. Doe*, 530 U.S. 290, 313 (2000) (rejecting argument that plaintiffs filed a "premature facial challenge" to football-game prayer policy even though "there [could] be no certainty" that the pregame invocations "w[ould] be religious"); *Lee v. Weisman*, 505 U.S. 577, 583 (1992) (affirming jurisdiction, although "[t]he record in this case is

sparse," and "[a]ssum[ing] the clergy's participation in any high school graduation exercise would be about what it was at [Plaintiff's] middle school ceremony").

## B.    Plaintiffs Have Standing.

"To establish Article III standing, a plaintiff must show that it has suffered an 'injury in fact' that is 'fairly traceable' to the defendant's conduct and would likely be 'redressed by a favorable decision.'" *Collins v. Yellen*, 594 U.S. 220, 242 (2021) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). The district court correctly held that Plaintiffs "have satisfied the three requirements for standing for each claim as to each defendant." ROA.1658.

### 1.    *Plaintiffs' asserted injuries are certainly impending.*

The interests of "school children and their parents, who are directly affected by the laws and practices against which their complaints are directed . . . suffice to give the parties standing to complain." *Sch. Dist. of Abington Twp. v. Schempp*, 374 U.S. 203,  224 n.9 (1963); *accord Doe v. Sch. Bd. of Ouachita Par.*, 274 F.3d 289, 292 (5th Cir. 2001) ("The case for standing is made stronger when the plaintiffs are students and parents of students attending public schools, who enjoy a cluster of rights vis-a-vis their schools, and thus are not merely 'concerned bystanders.'").

In insisting that Plaintiffs have no cognizable injury because the child-Plaintiffs have "never seen an H.B. 71 display," Def.Br.31, Defendants misstate basic standing principles: Standing based on future, threatened injury is permissible where the asserted injury is "certainly impending." *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014); *Barber*, 860 F.3d at 357 ("Future injuries can provide the basis for standing but they must be *certainly impending* to constitute injury in fact[.]" (internal quotations marks omitted)). As this Court held in *Mack*, when plaintiffs seek only prospective relief against state-sponsored religious activity, they can establish a cognizable injury by "show[ing] that future confrontation is substantially likely." 49 F.4th at 949 (cleaned up). The Supreme Court has held the same in the school context, ruling that "a live and justiciable controversy is before us" as to prayers at "future graduations" because the plaintiff was "enrolled as a student at [the high school] and from the record it appear[ed] likely, if not certain, that an invocation and benediction will be conducted at her high school graduation." *Lee*, 505 U.S. at 584.

Here, of course, future confrontation is not just likely; it is an absolute certainty. ROA.1651-52 ("[T]he risk of a future encounter by the

Plaintiff children, who are required under the Act to attend classes with displays of the Ten Commandments and their statutorily [mandated] 'minimum requirements' by January 1, 2025, is 'certainly impending.'" (quoting *Driehaus*, 573 U.S. at 158)). As discussed above, to demonstrate standing, Plaintiffs need not acquiesce to the very injuries they seek to prevent through equitable relief. *Supra* p. 22. *Ingebretsen* is fully consistent with the many other cases holding just that, including those relied on by the district court. ROA.1624, 1645-52. None of the cases cited by Defendants overrule, contradict, or otherwise undermine this precedent.

*Doe v. Tangipahoa Parish School Board*, 494 F.3d 494, 496 (5th Cir. 2007) (en banc), Def.Br.31-32, acknowledged that "[c]onstitutional standing" may be based on "threatened injury." Unlike here, however, the *Doe* record did not evince past or future harm: There was no evidence that the plaintiffs had attended previous meetings at which the challenged prayers were delivered or would attend future meetings where they would be subjected to such prayers. *See id.* at 499-500 (DeMoss, J., specially concurring). *Barber* affirmed *Doe*, holding that "[f]uture injuries can provide the basis for standing, but they must be

*certainly impending* to constitute injury in fact, and . . . [s]uch allegations also must be contained in the record." 860 F.3d at 357 (citing *Doe*, 494 F.3d at 499) (internal quotation marks omitted). The *Barber* plaintiffs did not have standing because there was no state-sponsored religious display or observance to which they had been or would be exposed. *Id.* at 354 (distinguishing religious-display cases); ROA.1651. And in *Staley,* which addressed mootness and ripeness, *supra* pp. 27-30, not standing, it was simply not clear that the plaintiff would ever again encounter the challenged monument because any potential re-display was shrouded in uncertainty.

> 2. *There is no basis for revisiting so-called "offended-observer standing" here.*

Defendants likewise misstate longstanding precedent governing so-called "offended-observer standing." To be clear, spiritual offense resulting from direct, unwelcome contact with, or exposure to, a governmental religious display or practice is a sufficient basis for standing. *See, e.g.*, *Murray v. City of Austin*, 947 F.2d 147, 151-52 (5th Cir. 1991). And the record adequately shows that the child-Plaintiffs will be directly exposed to the Act's mandatory displays. *Supra* pp. 7-8. But Plaintiffs' claims do not depend on this form of standing because their

demonstrated injuries go far beyond the right of "observers" to be free from "offense."

Plaintiffs seek to prevent both the coercive injury that state-sponsored religious observance in public schools inflicts on students and the harm that such coerced observance causes parents by interfering with their right to direct the religious education and upbringing of their children. *Supra* pp. 8-9. Due to Louisiana's compulsory education laws and the pervasive nature of the displays, students are a captive audience, and there is no way to opt out of this harm. *Infra* pp. 45-50. Plaintiffs' claims here are thus a far cry from cases where the government has permitted or erected a display in a public park, roadside median, courthouse lawn, or other area in which individuals may come and go— or possibly not go and avoid the display altogether. *See Van Orden,* 545 U.S. at 691 plurality opinion) ("The placement of the Ten Commandments monument on the Texas State Capitol grounds is a far more passive use of those texts than was the case in *Stone*, where the text confronted elementary school students every day.").

The harms that Plaintiffs seek to avert are the very sort of injury that courts have repeatedly recognized as sufficient to confer standing.

The Supreme Court has, for example, expressly held that children who are or will be subjected to allegedly coercive school-sponsored religious observance have standing to challenge it. *See Lee*, 505 U.S. at 584 (affirming standing to challenge future graduation invocations based on student's enrollment in high school and likelihood that her graduation would include prayer); *see also Schempp*, 374 U.S. at 224 n.9. Defendants' belief that *Kennedy* somehow eliminated "offended-observer standing," Def.Br.35, is thus immaterial here. *Kennedy* did not call into question the continuing vitality of *Lee* or *Schempp*. And *Kennedy* did not overrule *Stone*, *infra* pp.43-45, where the plaintiffs stood in the same position vis-à-vis their facial challenge to a materially identical Kentucky statute as the Plaintiffs do here. Given the nature of the injuries shown by Plaintiffs, revisiting "offended-observer standing," as Defendants demand, would have no effect on the outcome of this case.

In any event, *Kennedy* did not change Establishment Clause standing law. Defendants' argument rests on the slimmest of reeds: a statement regarding the denial of certiorari in *City of Ocala v. Rojas*, 143 S. Ct. 764 (2023), and a dissent from the denial in the same case. Defs.Br.35-36. *Kennedy*, however, did not address Establishment Clause

standing because the petitioner there, a football coach, did not bring an Establishment Clause claim. The ruling did not, therefore, preclude standing based on direct contact and spiritual offense, and there is no reason for this Court to revisit its precedent on this issue.

Defendants also point to Justice Gorsuch's concurring opinion in *American Legion v. American Humanist Association*, 588 U.S. 199, 80 (2019), Def.Br.35-37, but *American Legion* undermines their claim that the demise of the *Lemon* test also ended "offended-observer standing." There, despite declining to apply *Lemon*, *Am. Legion*, 588 U.S. at 48-52, and notwithstanding Justice Gorsuch's concurring opinion, the Court adjudicated the plaintiffs' claims, which they brought because they were "offended by the sight of the memorial on public land." *Id.* at 37.

Standing based on spiritual injury arising from direct, unwelcome contact with a governmental religious display remains doctrinally sound post-*Kennedy* because it is rooted not in the mechanics of the now-abandoned *Lemo*n test but in two of the Establishment Clause's core historical purposes: to prevent religious coercion and religious divisiveness. *See, e.g.*, *McCreary Cnty. v. ACLU of Ky.*, 545 U.S. 844, 876 (2005) ("The Framers and the citizens of their time intended not only to

protect the integrity of individual conscience in religious matters, but to guard against the civic divisiveness that follows when the government weighs in on one side of religious debate." (cleaned up)).

Defendants' invitation to prohibit such standing would open the flood gates to government-sponsored religious displays and messages. For example, a county could post signs in its courthouse depicting a cross and stating that Islam is a false religion and Christianity the one true faith, or a city could erect an anti-Catholic statue in the town square. *Cf. O'Connor v. Washburn Univ.*, 416 F.3d 1216, 1223 (10th Cir. 2005) ("Appellants' allegations that they were frequently brought into direct and unwelcome contact with the [allegedly anti-Catholic] statue are sufficient to give them standing for an Establishment Clause challenge."). Whatever the outcome on the merits, under Defendants' theory, those who encounter these governmental religious displays would have no standing to sue, effectively insulating the displays from any challenge.

### C.    Defendants Are Not Entitled to Sovereign Immunity.

Neither of Defendants' arguments in support of sovereign immunity aligns with governing precedent. First, Defendants posit that

*Ex Parte Young*, 209 U.S. at 123, is not applicable here because "there is no ongoing violation[.]" Def.Br.38. Put another way, according to Defendants, the *Ex Parte Young* exception is *never* available in pre-enforcement challenges. Defendants' interpretation is obviously wrong considering that *Ex Parte Young* was itself a *pre-enforcement* action. As the district court explained, "[t]he ongoing violation requirement is satisfied when a state officer's enforcement of an allegedly unconstitutional state law is threatened." ROA.1669 (quoting 17A Daniel R. Coquillette, Gregory P. Joseph, Georgene M. Vairo, Chilton Davis Varner, *Moore's Federal Practice - Civil* § 123.40 (Matthew Bender 3d ed. 2024); *see also* ROA.1670 ("[The] ongoing and continuous requirement merely distinguishes between cases where the relief sought is prospective in nature . . . and cases where relief is retrospective." (quoting *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1338 (11th Cir. 1999)).

Second, Defendants argue that BESE and Brumley "do not have the requisite enforcement authority." Def.Br.39. But to invoke the *Ex Parte Young* exception, "[a]ll that is required is a mere scintilla of enforcement by the relevant state official with respect to the challenged law." *Jackson v. Wright*, 82 F.4th 362, 367 (5th Cir. 2023). That low bar is easily met

here because H.B. 71 expressly states that BESE "shall adopt rules and regulations . . . to ensure the proper implementation of this Section." ROA.2097. "Without question, that specific statutory directive goes beyond 'the general duty to see that the laws of the state are implemented' by requiring the BESE Members to 'enforce the particular statutory provision that is the subject of the litigation.'" ROA.1671 (quoting *Book People*, 91 F.4th at 335).

This exercise of statutory duties plainly involves the "compulsion or constraint" that Defendants complain is lacking. Def.Br.39-40. BESE is not merely permitted to issue regulations implementing the Act; it *shall* do so. And those regulations will not comply with the statute unless they *ensure* (*i.e.* compel) its *proper implementation*. This will necessarily result in the compulsion or constraint of the child-Plaintiffs, who will be forced to attend school and submit to unwanted and unconstitutionally coercive religious displays, and the parent-Plaintiffs, who will be forced to acquiesce to schools' usurpation of their right to direct their children's religious education. "The fact that H.B. 71 will be enforced through the School Board Defendants does not gainsay the role of the Superintendent

and BESE Members in implementing and enforcing the Act." ROA.1674 (citing *Book People*, 91 F.4th at 334-36).

With respect to Defendant Brumley, Plaintiffs have "identified a specific duty of the Superintendent to enforce the Act": State law specifically charges the Superintendent with doing BESE's bidding by "[i]mplement[ing] the policies and programs of the board and the laws affecting schools under the jurisdiction of the board." ROA.1661 (quoting La. R.S. § 17:22(3)).

*Whole Women's Health v. Jackson*, 595 U.S. 30, 44 (2021), Defs.Br.39, does not advance Defendants' argument. Plaintiffs here "do not seek to enjoin the AG or the 'world at large;' they are trying to enjoin *specific* state officials charged with adopting and implementing rules for the enforcement of an unconstitutional law." ROA.1676 (emphasis added). And Plaintiffs here do not rely on a "series of hypotheticals" as to enforcement. ROA.1675-76 (quoting *Whole Women's Health*, 595 U.S. at 44). Defendants have repeatedly affirmed that they will carry out their statutorily prescribed duties, and the district court has "identified the specific powers of the BESE Members and Superintendent which can be

curbed through injunctive relief." ROA.1676. The court thus properly denied the state Defendants' sovereign-immunity claim.

## II.     H.B. 71 Is Facially Unconstitutional.

Defendants argue that the district court did not consider whether every hypothetical display under H.B. 71 could satisfy the First Amendment. Def.Br.3 (citing *NetChoice, L.L.C. v. Paxton*, 121 F.4th 494 (5th Cir. 2024)). On the contrary, the court did just that, holding that Plaintiffs must show that the Act is "unconstitutional in every application." ROA.1625. ("Plaintiffs must show that 'there is no set of circumstances under which' the display of the Ten Commandments is constitutional under the Act." (quoting *Croft v. Perry*, 624 F.3d 157, 164 (5th Cir. 2010)).

First, regarding Defendants' "illustrations," the district court found that many of them "ignore[d]" the Act's minimum requirements. ROA.1698-99, 2519-21. Second, as to any other hypothetical display Defendants might dream up, the court correctly observed that—no matter the non-religious content and no matter "how outlandish" those displays might be—each one must nonetheless comply with the minimum requirements of the Act. ROA.1698. Finally, the court reviewed the

statute's mandatory provisions and concluded that, "as a matter of law, there is [not] any constitutional way to display the Ten Commandments *in accordance with the minimum requirements of the Act*." ROA.1699. In other words, the court considered every hypothetical application of the Act that would be permissible under the statute (those that comply with its minimum requirements) and found that none could be constitutional. Nothing more is required.

### A.    H.B. 71 Violates the Establishment Clause.

1.    *H.B. 71 is unconstitutional under* Stone.

*Stone* is "directly on point and controlling" here because "its facts and reasoning are on all fours." ROA.1707, 1714. The district court identified a number of material similarities between the Kentucky law struck down in *Stone* and H.B. 71, ROA.1707-08, and Defendants have not pointed to any meaningful distinction between the two statutes.

Defendants contrast H.B. 71's "three-paragraph context statement," which purportedly "articulates the Legislature's secular historical and educational purposes for displaying the Commandments," with the Kentucky statute's one-sentence "notation untethered to the educational context." Def.Br.52. But this difference is immaterial. Both statements purport to set forth secular, (inaccurate) historical

42

justifications for displaying the Ten Commandments, and neither alters the coercive features of the statute. Indeed, as Defendants "illustrations" highlight, H.B. 71's context statement serves no edifying purpose: Unlike the commandments, it is not required to be the "central focus" or "printed in a large, easily readable font." As a result, the statement is ludicrously tiny and illegible in nearly all of Defendants' "illustrations." ROA.1680-99, 1804.

Defendants also argue that the Kentucky statute authorized only isolated displays of the Ten Commandments. Def.Br.51. Not so. Nothing in the Kentucky law implicitly or explicitly required that the commandments be displayed standing alone. *See Stone*, 449 U.S. at 39 n.1. Nevertheless, the Supreme Court held that it was facially unconstitutional. *Id.* at 42-43.

Unable to adequately distinguish H.B. 71 from the statute struck down in *Stone*, Defendants argue—despite conceding otherwise below—that *Stone* is no longer good law because the opinion supposedly relies on the abandoned "*Lemon* test." Def.Br.50-52. The Supreme Court, however, has characterized the caselaw at the heart of *Stone* quite differently, explaining in *Van Orden* that *Stone* "almost exclusive[ly] reli[ed] upon

two of our school prayer cases." 545 U.S. at 690-91 (plurality opinion) (citing *Schempp,* 374 U.S. at 203, and *Engel v. Vitale,* 370 U.S. 421, 421 (1963)).

*Kennedy* did not call into question the continuing vitality of *Schempp* or *Engel*, and even if it had, those cases—like *Stone*—would continue to be binding on lower courts until and unless the Supreme Court "see[s] fit to reconsider them." ROA.1706 (quoting *Bosse v. Oklahoma,* 580 U.S. 1 (2016)); *accord Nat'l Coal. for Men v. Selective Serv. Sys.,* 969 F.3d 546, 549-50 (5th Cir. 2020) ("[O]nly the Supreme Court may overrule its precedents even where subsequent decisions or factual developments may appear to have significantly undermined the rationale for [the] earlier holding[.]" (cleaned up)).

*Kennedy* does not, of course, mention *Stone*, let alone overrule it.[4] *Stone* is thus binding, directly applicable, and dispositive. *See Jusino v. Fed'n of Catholic Teachers, Inc.*, 54 F.4th 95, 102 (2d Cir. 2022), *cert. denied*, 143 S. Ct. 1056 (2023) (holding that *NLRB v. Catholic Bishop of*

---

[4] Defendants misleadingly suggest that *Kennedy* overturned *Stone* through its vague references to *Lemon*'s "progeny" and "offshoot[s]." Def.Br.50. The Court was referring to *Lemon*'s "endorsement test offshoot," however, not *Stone*. *Kennedy*, 597 U.S at 534.

*Chicago*, 440 U.S. 490 (1979), "remains good law notwithstanding its reliance . . . on *Lemon* . . . unless and until the Supreme Court sees fit to overrule [it] directly").

   2.   *H.B. 71 is unconstitutionally coercive.*

Defendants' opening brief relies heavily on the fact that there are depictions of Moses and the Ten Commandments in the U.S. Supreme Court and certain other government buildings,[5] but this argument proves too much: None of these displays involves public schools, where students (especially those in classrooms) are a quintessentially captive audience.[6]

Public-school students are at unusual risk of religious coercion because "[t]he State exerts great authority and coercive power through mandatory attendance requirements, and because of the students' emulation of teachers as role models and the children's susceptibility to

---

[5] Defendants fail to mention that none of the allusions to the Ten Commandments in the Supreme Court actually set forth the full scripture. Rather, "[t]o the extent the text of the Ten Commandments appears at all in these representations, it appears in only one, is written in Hebrew, and is only partial—most notably, only the text of Commandments VI through IX (the most clearly secular) appears." *ACLU of Ohio Found., Inc. v. Ashbrook*, 211 F. Supp. 2d 873, 884 n.9 (N.D. Ohio 2002), *aff'd,* 375 F.3d 484 (6th Cir. 2004) .

[6] For the same reason, *Briggs v. Mississippi*, 331 F.3d 499 (5th Cir. 2003), Def.Br.58, is inapposite.

peer pressure." *Edwards*, 482 U.S. at 584; *see also Lee*, 505 U.S. at 592. This Court has exercised the same solicitude for public-school students who are captive to school-sponsored religious messages. *See Ingebretsen*, 88 F.3d at 279-80 (striking down state law that would authorize prayers at public-school events where "attendance is compulsory" because "students will be a captive audience that cannot leave without being punished by the state or School Board for truancy or excessive absences").

It is for this reason that the Supreme Court has recognized "limits to the display of religious messages or symbols" in public schools, including the display of the Ten Commandments. *Van Orden*, 545 U.S. at 690-91 (plurality opinion). As the plurality in *Van Orden* explained, *Stone* "stands as an example of the fact that we have been particularly vigilant in monitoring compliance with the Establishment Clause in elementary and secondary schools." *Id.*; *see also* ROA.1762-63 (distinguishing displays in the school context, "where, given the impressionability of the young, government must exercise particular care in separating church and state" (quoting *Van Orden*, 545 U.S. at 703 (Breyer, J., concurring)).

Accordingly, while this Court's Establishment Clause analysis may properly begin and end with *Stone*, H.B. 71 is also plainly unconstitutional under the Supreme Court's coercion jurisprudence. However else courts may interpret *Kennedy*, there can be no dispute that *Kennedy affirmed* that public schools may not religiously coerce students. *See* 597 U.S. at 537 (noting that coercion "was among the foremost hallmarks of religious establishments the framers sought to prohibit when they adopted the First Amendment"); *accord Lee*, 505 U.S. at 587 ("It is beyond dispute that, at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise[.]"). Pointing to *Lee* and *Santa Fe*, *Kennedy* reiterated that the religious observances challenged in those cases were "problematically coercive"—unlike Coach Kennedy's private-capacity prayers—because they were officially sponsored by the school and delivered to a "captive audience" at school events that students were either required or expected to attend. 597 U.S. at 542. *Lee* and *Santa Fe*, therefore, remain controlling with respect to religious coercion claims asserted by public-school students, and the district court correctly held that the Act is unconstitutionally coercive.

47

Defendants do not dispute the district court's conclusion, ROA.1751, that the child-Plaintiffs will be a captive audience to H.B. 71's displays. Def.Br.58-59 ("[I]t is indisputable that students are required to *go to school*[.]"). They maintain instead that the displays are "passive" and that no religious exercise is at issue. The Supreme Court has already rejected that argument. In *Schempp*, the Court recognized that daily scriptural readings constituted "religious exercise," 374 U.S. at 224-25; and in *Stone*, the Court held that it is not "significant that the Bible verses involved in this case are merely posted on the wall, rather than read aloud as in *Schempp* and *Engel*." 449 U.S. at 42. School-sponsored religious observance (here, daily reading and meditation on scripture) is no less unconstitutional merely because it is silent. *cf. Van Orden* 545 U.S. at 691 (plurality opinion) (distinguishing *Stone* displays, where the religious texts "confronted elementary school students every day," from the "far more passive use of those texts" in the Texas Capitol grounds monument), *quoted in Staley*, 485 F.3d at 308.

Nor are H.B. 71's pervasive and permanent displays any less unconstitutional because students purportedly are not *required* to engage in the state-sponsored religious observance. Def.Br.59 (stating that the

child-Plaintiffs are not "required to do anything *with the Ten Commandments*"). In suggesting otherwise, Defendants neglect the inherently coercive nature of the school environment. As discussed above, the Supreme Court has repeatedly recognized that children are especially predisposed to religious indoctrination at school, both because they are captive audiences to the State's religious messages and because they are vulnerable to the immediate impressions and judgments of their teachers and classmates if they do not fall in line with the State's preferred religious beliefs. *See Lee*, 505 U.S. at 593.

That is the case here. Under H.B. 71, students will be subjected to displays of the Ten Commandments for nearly every hour they are in school, for their entire public education. The displays will unavoidable. No matter the content of any individual display, all of them will have one common denominator, from classroom to classroom and school to school: the State's prescribed, Protestant version of the Ten Commandments. The State has further ensured that students' attention will be drawn to the commandments by mandating a minimum display size and that the commandments be the "central focus" and be "printed in a large, easily readable font." Students cannot help but be acutely aware of the lengths

to which the State has gone to ensure that they encounter these displays, and they will reasonably feel pressured to "read, meditate upon, perhaps to venerate and obey, the Commandments." *See Stone*, 449 U.S at 42; *see also City of Elkhart v. Books*, 532 U.S. 1058, 1061 (2001) (Rehnquist, C.J., dissenting from denial of certiorari) ("In *Stone*, the posting effectively induced schoolchildren to meditate upon the Commandments during the school day.").

"This pressure, though [it may be] subtle and indirect, can be as real as any overt pressure." *Lee*, 505 U.S. at 593; *see also Doe ex rel. Doe v. Elmbrook Sch. Dist.*, 687 F.3d 840, 851 (7th Cir. 2012) (en banc) ("[R]eligious displays in the classroom tend to promote religious beliefs, and students might feel pressure to adopt them. Such concern was front and center in *Stone*[.]"). Lawmakers have effectively conceded that the design and implementation of H.B. 71 will produce this coercive end, characterizing the displays, for example, as "visual aid[s]" that will teach children to follow "what God says is right and what He says is wrong." *See supra* p. 5.

3.    *H.B. 71 discriminates based on religious denomination.*

As *Mack* recognized, coercion is not the only way in which government conduct can infringe the Establishment Clause: The challenged activity may not violate the principle of "denominational nondiscrimination." ROA.1742 (quoting *Mack*, 49 F.4th at 961). Denominational discrimination runs afoul of "[t]he clearest command of the Establishment Clause" that "one religious denomination cannot be officially preferred over another." *Larson v. Valente,* 456 U.S. 228, 244 (1982). That command is deeply rooted in our nation's history—a direct result of the founders' desire to avoid both the coercive ends of such preference and the religious and civic divisiveness it engenders. *See id.* (discussing colonial history); *see also McCreary*, 545 U.S. at 887. Nothing in *Kennedy* abrogated this core principle. *See Carson v. Makin*, 596 U.S. 767, 787 (2022) (noting concern for "denominational favoritism" and citing *Larson*, 456 U.S. at 244, one week before *Kennedy* ruling).

Defendants do not dispute that the Act adopts and mandates one particular version of the Ten Commandments or that this version is Protestant. ROA.1778 n.22 ("[Dr.] Green provided extensive testimony about the ways in which the Ten Commandments as adopted by H.B. 71

are Protestant and religiously exclusive."). They have conceded that it does not comport with the beliefs of many Jewish and Catholic adherents.[7] *Supra* p. 7. While some might view these differences as "trivial or semantic, . . . lurking behind the disparate accounts are deep theological disputes." *Glassroth v. Moore*, 335 F.3d 1282, 1299 n.3 (11th Cir. 2003) (citations omitted).

Defendants' only justification for the state's discriminatory decision to mandate the display of a denominationally preferential version of scripture is that, in a very different context, "this Court and the Supreme Court upheld a Ten Commandments display featuring a 'version' of the Commandments that is identical to that used here." Def.Br.57. But *Van Orden* did not give states carte blanche to adopt the same text in official form. There, the government did not mandate the creation of the display or select and approve its denominationally discriminatory text. Here, the State went out of its way to select, vote on, and officially approve a specific, Protestant text and then mandate the posting of that scripture

---

[7] It is thus irrelevant that the Fraternal Order of Eagles purportedly developed the text of the *Van Orden* monument after consulting with members of several faiths. Def.Br.57 n.7. The evidence here shows that the text is denominational.

in tens of thousands of public-school classrooms. Even Justice Scalia recognized that "[t]he Establishment Clause would prohibit . . . governmental endorsement of a particular version of the Decalogue as authoritative." *McCreary Cnty.*, 545 U.S at 894 n.4 (Scalia, J., dissenting).

    4.    *H.B. 71 does not fit within any historical tradition.*

Even if the historical record could redeem a statute that violates the Establishment Clause's fundamental prohibitions on religious coercion and denominational preference, it does not do so here. After receiving extensive expert evidence and live testimony,[8] and conducting its "own review of the evidence," ROA.1777, the district court found that, as a factual matter, there is "insufficient evidence" of a "broader tradition" of "the use of the Ten Commandments in public education."

---

[8] To the extent that amici supporting Defendants attempt to introduce purported historical evidence not before the district court, it is improper here. *See* 4 West Publ'g Co., *American Jurisprudence* § 8 (2d ed. 2024) ("[A]n amicus curiae will not be permitted to present additional evidence on appeal which was not before the trial court."). Unlike the expert evidence presented by Plaintiffs, such evidence is unsworn and not subject to cross-examination. Defendants had the opportunity to present expert testimony in rebuttal to Dr. Green and declined to do so. They may not now circumvent basic rules of litigation through amici.

ROA.1770. The court credited as "persuasive and well supported" Dr.
Green's conclusion that "there was no longstanding, widespread use of
the Ten Commandments in public education," ROA.1770-71, recounting
the wealth of evidence on which he relied, including the historical rancor
and swift opposition to efforts to use the Bible generally in early public
schools, contemporaneous surveys by federal officials as to religious
matters in public schools, popular contemporaneous treatises, and a
review of any potentially relevant state laws spanning the early public-
education system. ROA.1772.

Defendants, for their part, merely pointed to a handful of early texts
mentioned in H.B. 71—only some of which included the Ten
Commandments and were used in early public schools. ROA.1773.[9] But,
as the district court determined, Dr. Green "systematically dismantled
this purported historical evidence" and H.B. 71's false claim that the Ten

---

[9] One of Defendants' examples, the *New England Primer*, was "used
chiefly, if not exclusively, in *religiously* run schools, and, importantly, it
fell into disuse during the early decades of the nineteenth century, before
the rise of public education." ROA.1769-78 (quoting ROA.868). Further,
sporadic references to the Ten Commandments, to the extent they were
included in some editions of the other texts identified by Defendants,
"were largely eliminated from the Readers in later versions, and reliance
on [the Readers] tapered in the early twentieth century as public schools
looked at other available options." ROA.1719 (quoting ROA.871).

Commandments were a "prominent part of American public education for almost three centuries." ROA.1774-76.[10]

In short, because "the historical records show only 'scattered instances' that are 'too little evidence too thinly spread to conclude that [the practice] occurred regularly[,]'" the district court correctly rejected the "categories" of historical evidence offered by Defendants. ROA.1777-78 ("[T]he limited examples offered by AG Defendants do not show a 'widespread practice' of using the Ten Commandments in public schools that was 'common for [the] Founding-era' or at the time of incorporation." (quoting and contrasting *Mack*, 49 F.4th at 957)). And, it follows that, because the evidence demonstrated that there was no "broader tradition" of "using the Decalogue in public-school education," the court correctly

_____

[10] The district court incorrectly held that Plaintiffs bear the evidentiary burden under the historical analysis. ROA.1743. In *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1, 24-25 (2022), the Supreme Court stated that the *government* bears the burden of producing "*historical* evidence about the reach of the First Amendment's protections" and extended that rule to Second Amendment claims. The Court explained that this "focus on history also comports with how we assess many other constitutional claims[,]" including those brought under the Establishment Clause. *Id.* at 25 (citing *Am. Legion*, 588 U.S. at 60). Even if the district court were correct as to the burden of proof, Plaintiffs have met it here, as the court found. ROA.1770-78.

concluded that the specific "practice at issue (permanently displaying the Ten Commandments in public-school classrooms) does not 'fit[ ] within' and is not 'consistent with historical practice.'" ROA.1778 (quoting and contrasting *Mack*, 49 F.4th at 951); *see also* ROA.1770 (finding that the evidence does not "reflect any sort of tradition of permanently displaying the Decalogue in public-school classrooms at the time of the Founding or of incorporation").[11]

As below, Defendants fail "to seriously challenge any of [Dr.] Green's substantive opinions on the merits." *See* ROA.1770. Instead, they attempt to relitigate the district court's admission of his testimony. They have not cleared the high bar required to do so: "District courts enjoy

---

[11] *Mack'*s observation that *Town of Greece v. Galloway*, 572 U.S. 565 (2014), discussed only three relevant prayers before concluding there was adequate historical evidence does not set a universal standard. *See* Def.Br.56. *Town of Greece* dealt with legislative prayer, and the specific historical question considered by the Court there—as in its predecessor, *Marsh v. Chambers*, 463 U.S. 783 (1983)—was whether the practice was authorized by the First Congress. 572 U.S. at 578-79. The identified prayers were adequate evidence only because of the "unique" and limited inquiry at issue. *See Marsh*, 463 U.S. at 490-91. Scattered references to the Ten Commandments in school texts, some of which were not even used in early public schools, and the overwhelming majority of which were used prior to incorporation of the Establishment Clause to the states, *supra* n.9, do not demonstrate a satisfactory historical tradition here. *Cf. Mack*, 49 F.4th at 956-57.

wide latitude in determining the admissibility of expert testimony, and the discretion of the trial judge and his or her decision will not be disturbed on appeal unless 'manifestly erroneous." *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988 (5th Cir. 1997).

The district court was not persuaded by Defendants' *Daubert* challenge. After rejecting their charge of bias, the court "found Green to be highly qualified and concluded that he utilized an adequate and standard methodology used by historians." ROA.1770; *see also* ROA.1610 ("During oral argument, [Defendants'] counsel . . . conceded that Green utilized the same methodology used by all historians and also acknowledged that Fifth Circuit precedent does not require the same criteria for measuring reliability of expert testimony in the 'soft sciences' as in the 'hard sciences.'").[12]

---

[12] Defendants repeat their claim, made below, that Dr. Green's expert testimony is somehow unreliable because he has purportedly been "on losing side of every case . . . in which he filed an amicus brief over the past 20 years." Def.Br.62. Putting aside that the *McCreary* Court ruled in favor of the respondents, whom Dr. Green's amicus brief supported, these decisions say nothing about the reliability of Dr. Green's historical opinions. A variety of factors may affect the consideration and weight accorded to amicus briefs by the Supreme Court, and the Court's ultimate rulings do not pass judgment on the quality of the arguments or research presented within those amicus briefs.

As to their claim that Dr. Green's testimony is not relevant, Defendants argue that the testimony does not speak to one of the "six hallmarks of establishment" identified by Justice Gorsuch in his concurring opinion in *Shurtleff* and purportedly adopted by *Kennedy* (via footnote) as the new, binding historical test under the Establishment Clause. Def.Br.42-43. The district court correctly rebuffed this proposed standard. ROA.1744 ("*Kennedy* did not limit Establishment Clause claims to Justice Gorsuch's six hallmarks found in his *Shurtleff* concurrence."). "In *Kennedy*, Justice Gorsuch used language indicating that his . . . hallmarks were not an exhaustive list adopted by the Court." ROA.1744 & n.15. The same is true of his *Shurtleff* concurring opinion, which does not purport to set forth the entire universe of permitted or prohibited practices. Rather the opinion identifies "*some* helpful hallmarks [of establishment] that localities and lower courts can rely on." *Shurtleff*, 596 U.S. at 285 (Gorsuch, J., concurring in the judgment) (emphasis added); *see* ROA.1732. Defendants conceded this at oral argument. ROA.1744 ("Defendants acknowledged . . . that Justice Gorsuch's six hallmarks are not an exhaustive set of criteria for determining the viability of an Establishment Clause claim.").

*Kennedy* instructs courts to look to "historical practices and understandings" and advises that the analysis must draw a line "between the permissible and the impermissible" that accords "with history and faithfully reflect[s] the understanding of the Founding Fathers." 597 U.S. at 535-36 (cleaned up). Dr. Green's testimony speaks directly to the founders' understanding of the interplay between religion and government and the relevant historical practices (or lack thereof) pertaining to the use of the Ten Commandments in public education—issues raised by the face of the statute itself. For example, to justify the display of the commandments in public schools, the statute includes a quotation supposedly from James Madson extolling the "moral principles of the Ten Commandments." ROA.2094. Based on his extensive review of all available writings and speeches by Madison, Dr. Green testified that this quote is fabricated. ROA.2357-59; *see also* ROA.1747 n.17 (noting that Green's testimony "was uncontradicted and . . . unchallenged" by Defendants). It is difficult to see how expert testimony here could be more relevant.[13]

---

[13] Defendants' also repeat their claim, made below, that Dr. Green improperly characterized the historical evidence. Def.Br.61 (citing *City of*

Defendants nevertheless warn that "federal courts must particularly assure themselves of the history intertwined with the law rather than outsourcing that job to experts." Def.Br.60. But federal judges are not historians, and there is nothing impermissible or even inadvisable about admitting expert testimony regarding history where a historical inquiry is part of the analysis. On the contrary, as Defendants have acknowledged, courts have routinely done so. ROA.1611. And as the district court noted in denying Defendants' *Daubert* motion, "Defendants have pointed the Court to no rule or case which prevents a Court from hearing and utilizing expert testimony on this subject and have made no effort to refute or distinguish Plaintiffs' cases allowing such expert testimony." ROA.1611.

## B. H.B. 71 Violates the Free Exercise Clause.

Given that the Establishment and Free Exercise Clauses have complementary purposes, *Kennedy*, 597 U.S.at 533, it is not surprising

---

*Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548 (11th Cir. 1998)). *Harcros* does not apply here. There, the proffered testimony was "outside" the expert's "competence as a statistician" and offered legal conclusions regarding collusion and the "existence of a conspiracy." *Id.* at 565. Dr. Green's testimony is well within his expertise and does not opine on ultimate legal conclusions. ROA.1612-14.

that H.B. 71, through its coercive effect on the child-Plaintiffs and its discriminatory denominational preference, also violates the Free Exercise Clause.

The district court correctly concluded that "the mandatory display of the Ten Commandments in H.B. 71 conflicts with and burdens the sincere beliefs of the Unitarian Universalist, Presbyterian, agnostic or atheist, and Reform Jewish Plaintiffs." ROA.1760.  Not only did the court find a burden on the children's free exercise, but also on the parents' "'fundamental interest . . . to guide the religious future and education' and 'to direct the religious upbringing of their children.'" ROA.1760 (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 232 (1972)). Defendants may disagree, Def.Br.64, but they make no argument as to why the court's findings of fact as to Plaintiffs' sincerely held religious beliefs are clearly erroneous. *See Harrison v. Young*, 48 F.4th 331, 339 (5th Cir. 2022) ("[T]he appellate court reviews a district court's grant of a preliminary injunction for an abuse of discretion, reviews factual findings for clear error, and reviews legal conclusions de novo.").[14]

---

[14] *Murray*, 947 F.2d at 152, and *New Doe Child #1 v. United States*, 901 F.3d 1015, 1019, 1026 (8th Cir. 2018), Def.Br.64-65, did not involve

The right to free exercise necessarily includes the right *not* to be pressured into government-sponsored religious observance that violates one's conscience,[15] as well as the right *not* to be coerced by the government to suppress one's own religious beliefs and practices. *See Carson*, 596 U.S. at 778 (reiterating that the Free Exercise Clause bars "indirect coercion or penalties on the free exercise of religion, not just outright prohibitions" (cleaned up)); *Schempp*, 374 U.S. at 222 (holding that the Free Exercise Clause guarantees the "right of every person to freely choose his own course [in matters of faith] . . . free of any compulsion from the state"). Beyond repeating their mischaracterization of H.B. 71 as involving only "passive religious imagery," Def.Br.64, Defendants have no answer for the fact that the Act "effectively

---

the school context, where coercive forces—both direct and indirect—are heightened. *Supra* pp. 45-50. Cases involving free-exercise challenges to evolution lessons or to coursework relating to world affairs, Def.Br.at 65, meanwhile, contest *secular* instruction, not the unyielding inculcation of (the State's approved version of) religious scripture. The latter directly implicates the Free Exercise Clause's core principles.

[15] The Free Exercise Clause protects non-believers in this regard just as surely as it protects people of faith. *See, e.g.*, *Janny v. Gamez*, 8 F.4th 883, 912 (10th Cir. 2021) (atheist on parole asserted a valid free-exercise claim after his parole was revoked because he refused to take part in religious activities).

induce[s] . . . schoolchildren to meditate upon the Commandments during the school-day." *See City of Elkhart*, 532 U.S. a 1061 (2001) (Rehnquist, C.J., dissenting from denial of certiorari) (describing *Stone*).

Furthermore, because Plaintiffs have shown that the Act will "burden[] [their] sincere religious practice pursuant to a policy that is not 'neutral' or 'generally applicable,'" the Act must overcome strict scrutiny. ROA.1759 (quoting *Kennedy*, 597 U.S. at 525). Defendants do not even attempt to argue that it does.[16] Nor could they. As the district court held, "[e]ven assuming that H.B. 71 advanced a compelling interest (e.g., for educational or historical value), the Act is unquestionably not narrowly

---

[16] Defendants suggest that the Act is religiously neutral because it uses the same text as the *Van Orden* monument. Def.Br.67-68. As discussed above, the government's role in *Van Orden* was markedly different than the State's role here, where lawmakers selected the denominationally preferential text for the displays and wrote its mandatory use into state law. *Supra* pp. 52-53. They were also clear about their intent, which the district court properly considered. *See Masterpiece Cakeshop v. Colo. Civ. Rts. Comm'n*, 584 U.S. 617, 639 (2018) ("Factors relevant to the assessment of governmental neutrality include the historical background of the decision under challenge, the specific series of events leading to the enactment or official policy in question, and the legislative or administrative history, including contemporaneous statements made by members of the decisionmaking body." (internal quotation marks omitted)).

tailored in pursuit of those interests" because "[t]here are any number of ways that the State could advance an alleged interest in educating students about the Ten Commandments that would be less burdensome on the First Amendment than the one required by the Act." ROA.1764 (internal citation and quotation marks omitted).

## III. The District Court Properly Granted a Preliminary Injunction.

The district court properly exercised its discretion in issuing a preliminary injunction. *See Harrison*, 48 F.4th at 339 (appellate courts review injunctions for "abuse of discretion"). First, in light of its ruling that the Act facially violates the Establishment and Free Exercise Clauses, the court correctly concluded that Plaintiffs are likely to succeed on their claims. ROA.1779-80.

Second, Defendants complain that the district court's finding on irreparable harm "hinged on [Plaintiffs'] success on the merits," Def.Br.69, but the court did nothing more than straightforwardly apply longstanding Supreme Court and Fifth Circuit precedent affirming that the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Book People*, 91 F.4th at 341 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *see also Opulent*

*Life Church*, 697 F.3d at 295 ("Opulent Life has satisfied the irreparable-harm requirement because it has alleged violations of its First Amendment . . . rights."). As this Court has explained, when "an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." ROA.1779 (quoting *Book People*, 91 F.4th at 341). Yet, even without this precedent, Plaintiffs have amply demonstrated irreparable harm through the uncontroverted record evidence, *supra* pp. 8-9, which identifies the imminent injuries caused by the Act's alleged religious coercion and interference with parental rights. *See Lakedreams v. Taylor*, 932 F.2d 1103, 1107 (5th Cir. 1991) (party seeking preliminary injunction must establish a "substantial threat that failure to grant the injunction will result in irreparable injury")

Finally, the District Court accurately weighed the balance of equities and considered the public interest. ROA.1779. Though Defendants are unable to enforce H.B. 71 due to the injunction, "neither [the State] nor the public has any interest in enforcing a regulation that violates federal law." *Book People*, 91 F.4th at 341 (citations omitted). Consequently, "'[i]njunctions protecting First Amendment freedoms are

*always* in the public interest.'" *Id.* (quoting *Opulent Life Church*, 697 F.3d at 298 (emphasis added)); *see also Ingebretsen*, 88 F.3d at 280. Any harm to the State here is further diminished by the fact that the preliminary injunction merely maintains the status quo pending a final ruling.

## IV.   The District Court's Notice Provision Is Lawful.

Defendants wrongly assert that "Plaintiffs sued for an injunction against only five Louisiana school boards[.]" Def.Br.85. On the contrary, Plaintiffs additionally sued the state Defendants to restrain them from aiding in the unconstitutional implementation of the Act.

Under Louisiana's education code, the state Defendants have statewide duties to "supervise and control" public schools. La. Const. art. VIII, § 3(A); La. R.S. § 17:6(A)(10). In addition, H.B. 71 requires BESE to "adopt rules and regulations . . . to ensure the proper implementation of" the law, and Superintendent Brumley must carry out and enforce those rules and regulations. *Supra* pp. 38-41. Having enjoined the state Defendants from doing so, the Notice Provision is "properly viewed as ancillary to the prospective relief already ordered" by the district court. *Quern v. Jordan*, 440 U.S. 332, 349 (1979). Moreover, the court went out of its way to ensure that the burden "to accomplish this task is minimal,"

holding that the state Defendants must "provide notice" in some form but need not "serve each school with a copy" of the ruling. ROA.1780. The Notice Provision is thus well within the district court's authority and should be affirmed.

## CONCLUSION

For the foregoing reasons, the Court should affirm the decision below.

Respectfully submitted,

Dated: December 30, 2024

*/s/ Jonathan K. Youngwood*

Heather L. Weaver
Daniel Mach
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street, NW, Ste. 600
Washington, DC 20005

Nora Ahmed
Charles Andrew Perry
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF LOUISIANA
PO Box 56157
New Orleans, LA 70156

Jonathan K. Youngwood
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017

Alex J. Luchenitser
AMERICANS UNITED FOR SEPARATION
OF CHURCH & STATE
1310 L Street, NW, Ste. 200
Washington, DC 20005

Patrick C. Elliott
Samuel T. Grover
FREEDOM FROM RELIGION
FOUNDATION
PO Box 750
Madison, WI 53701

## CERTIFICATE OF SERVICE

On December 30, 2024, this document was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court.

/s/ Jonathan K. Youngwood

Jonathan K. Youngwood

## CERTIFICATE OF COMPLIANCE

This document complies with Federal Rule of Appellate Procedure 27(d)(2) because it contains 12,957 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f). This document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 27(d)(1) because it has been prepared in a proportionally spaced, serifed typeface using Microsoft Word in 14-point Century Schoolbook font.

*/s/ Jonathan K. Youngwood*
Jonathan K. Youngwood