No. 24-30706

# In the United States Court of Appeals for the Fifth Circuit

DARCY ROAKE, REVEREND, ON BEHALF THEMSELVES AND ON BEHALF OF THEIR MINOR CHILDREN, REAL PARTY IN INTEREST A.V., REAL PARTY IN INTEREST S.V.; ADRIAN VAN YOUNG, ON BEHALF OF THEMSELVES AND ON BEHALF OF THEIR MINOR CHILDREN, REAL PARTY IN INTEREST A.V., REAL PARTY IN INTEREST S.V.; MAMIE BROADHURST, REVEREND, ON BEHALF OF THEMSELVES AND ON BEHALF OF THEIR MINOR CHILD, REAL PARTY IN INTEREST N.W.; RICHARD WILLIAMS, REVEREND, ON BEHALF OF THEMSELVES AND ON BEHALF OF THEIR MINOR CHILD, REAL PARTY IN INTEREST N.W.; JEFF SIMS, REVEREND, ON BEHALF OF HIMSELF AND ON BEHALF OF HIS MINOR CHILDREN, REAL PARTY IN INTEREST A.S., REAL PARTY IN INTEREST C.S. 1, REAL PARTY IN INTEREST C.S. 2; JENNIFER HARDING, ON BEHALF OF THEMSELVES AND ON BEHALF OF THEIR MINOR CHILD, REAL PARTY IN INTEREST A.O.; BENJAMIN OWENS, ON BEHALF OF THEMSELVES AND ON BEHALF OF THEIR MINOR CHILD, REAL PARTY IN INTEREST A.O.; DAVID HAWLEY, ON BEHALF OF THEMSELVES AND ON BEHALF OF THEIR MINOR CHILDREN REAL PARTY IN INTEREST A.H., REAL PARTY IN INTEREST L.H.; ERIN HAWLEY, ON BEHALF OF THEMSELVES AND ON BEHALF OF THEIR MINOR CHILDREN, REAL PARTY IN INTEREST A.H, REAL PARTY IN INTEREST L.H.; DUSTIN MCCRORY, ON BEHALF OF THEMSELVES AND ON BEHALF OF HIS MINOR CHILDREN, REAL PARTY IN INTEREST E.M. REAL PARTY IN INTEREST P.M., REAL PARTY IN INTEREST L.M.; GARY SERNOVITZ, ON BEHALF OF THEMSELVES AND ON BEHALF OF THEIR MINOR CHILD, REAL PARTY IN INTEREST T.S.; MOLLY PULDA, ON BEHALF OF THEMSELVES AND ON BEHALF OF THEIR MINOR CHILD, REAL PARTY IN INTEREST T.S.; CHRISTY ALKIRE, ON BEHALF OF HERSELF AND ON BEHALF OF HER MINOR CHILD, REAL PARTY IN INTEREST L.A.; JOSHUA HERLANDS, ON BEHALF OF HIMSELF AND ON BEHALF OF HIS MINOR CHILDREN, REAL PARTY IN INTEREST E.H., REAL PARTY IN INTEREST J.H.,

*Plaintiffs-Appellees,*

v.

CADE BRUMLEY, IN HIS OFFICIAL CAPACITY AS THE LOUISIANA STATE SUPERINTENDENT OF EDUCATION; CONRAD APPEL, IN HIS OFFICIAL CAPACITY

AS A MEMBER OF THE LOUISIANA STATE BOARD OF ELEMENTARY AND SECONDARY EDUCATION (LSBESE); JUDY ARMSTRONG, IN HER OFFICIAL CAPACITY AS A MEMBER OF THE LSBESE; KEVIN BERKEN, IN HIS OFFICIAL CAPACITY AS A MEMBER OF THE LSBESE; PRESTON CASTILLE, IN HIS OFFICIAL CAPACITY AS A MEMBER OF THE LSBESE; SIMONE CHAMPAGNE, IN HER OFFICIAL CAPACITY AS A MEMBER OF THE LSBESE; SHARON LATTEN-CLARK, IN HER OFFICIAL CAPACITY AS A MEMBER OF THE LSBESE; LANCE HARRIS, IN HIS OFFICIAL CAPACITY AS A MEMBER OF THE LSBESE; PAUL HOLLIS, IN HIS OFFICIAL CAPACITY AS A MEMBER OF THE LSBESE; SANDY HOLLOWAY, IN HER OFFICIAL CAPACITY AS A MEMBER OF THE LSBESE; STACEY MELERINE, IN HER OFFICIAL CAPACITY AS A MEMBER OF THE LSBESE; RONNIE MORRIS, IN HIS OFFICIAL CAPACITY AS A MEMBER OF THE LSBESE; EAST BATON ROUGE PARISH SCHOOL BOARD; LIVINGSTON PARISH SCHOOL BOARD; VERNON PARISH SCHOOL BOARD; ST. TAMMANY PARISH SCHOOL BOARD,

*Defendants-Appellants.*

---

On Appeal from the United States District Court
for the Middle District of Louisiana
No. 3:24-cv-517, Hon. John W. deGravelles

---

## PLAINTIFFS-APPELLEES' RECORD EXCERPTS

Heather L. Weaver
Daniel Mach
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street, NW, Ste. 600
Washington, DC 20005
(202) 675-2330
hweaver@aclu.org
dmach@aclu.org

Jonathan K. Youngwood
Janet A. Gochman
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
(212) 455-2000
jyoungwood@stblaw.com
jgochman@stblaw.com

*Counsel for Plaintiffs-Appellees*
*(continued on inside cover)*

### *Additional Counsel for Plaintiffs-Appellees*

Nora Ahmed
Charles Andrew Perry
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF LOUISIANA
PO Box 56157
New Orleans, LA 70156
(504) 522-0628
nahmed@laaclu.org
aperry@laaclu.org

Patrick C. Elliott
Samuel T. Grover
FREEDOM FROM RELIGION
FOUNDATION
PO Box 750
Madison, WI 53701
(608) 256-8900
patrick@ffrf.org
sam@ffrf.org

V. Noah Gimbel
Nicholas J. Prendergast
Jordan T. Krieger
SIMPSON THACHER & BARTLETT LLP
900 G Street, NW
Washington, D.C. 20001
(202) 636-5500
noah.gimbel@stblaw.com
nicholas.prendergast@stblaw.com
jordan.krieger@stblaw.com

Alex J. Luchenitser
AMERICANS UNITED FOR
SEPARATION OF CHURCH & STATE
1310 L Street, NW, Ste. 200
Washington, DC 20005
(202) 466-7306
luchenitser@au.org

# **TABLE OF CONTENTS**

La. House Bill No. 71, Act No. 676 (2024)
  (ROA.2093-98) ................................................................Tab 1

Transcript Excerpts from Motion Hearing Before
  the Hon. John W. deGravelles (M.D. La. Oct. 21, 2024),
  (ROA.2325-28, 2519-20) ..............................................Tab 2

Declaration of Reverend Darcy Roake
  In Support Of Plaintiffs' Motion for Preliminary Injunction
  (ROA.278-82) ................................................................Tab 3

Declaration of Reverend Mamie Broadhurst
  In Support Of Plaintiffs' Motion for Preliminary Injunction
  (ROA.287-90) ................................................................Tab 4

Declaration of Reverend Jeff Sims
  In Support Of Plaintiffs' Motion for Preliminary Injunction
  (ROA.295-98) ................................................................Tab 5

Declaration of Gary Sernovitz
  In Support Of Plaintiffs' Motion for Preliminary Injunction
  (ROA.314-18) ................................................................Tab 6

Certificate of Service

# Tab 1

2024 Regular Session

# ACT No. 676

HOUSE BILL NO. 71

BY REPRESENTATIVES HORTON, AMEDEE, BACALA, BAMBURG, BAYHAM, BILLINGS, BOYER, BUTLER, CARLSON, CARRIER, CARVER, CREWS, DEWITT, DICKERSON, ECHOLS, EDMONSTON, EGAN, FIRMENT, GALLE, KERNER, MACK, MELERINE, OWEN, RISER, SCHAMERHORN, TAYLOR, THOMPSON, VENTRELLA, WILDER, AND WILEY AND SENATORS ABRAHAM, BASS, CATHEY, CLOUD, EDMONDS, FESI, HENRY, HENSGENS, HODGES, MCMATH, MIGUEZ, MIZELL, REESE, SEABAUGH, STINE, TALBOT, WHEAT, AND WOMACK

1                                AN ACT

2   To enact R.S. 17:2122 and 3996(B)(82), relative to public elementary, secondary, and

3        postsecondary schools; to provide for the display of certain historical documents; to

4        provide for the display of the Mayflower Compact, the Declaration of Independence,

5        the Northwest Ordinance, and the Ten Commandments; to provide for displays in

6        each classroom; to provide relative to the use of donations or the acceptance of

7        donated displays for this purpose; to provide for applicability; to provide for

8        legislative intent; to provide for historical context; to provide for an effective date;

9        and to provide for related matters.

10   Be it enacted by the Legislature of Louisiana:

11        Section 1. R.S. 17:2122 and 3996(B)(82) are hereby enacted to read as follows:

12        §2122.  Historical documents; displays; legislative intent; historical context;

13            donations

14            A.  The legislature finds and declares all of the following:

15            (1)  In 2005, the Supreme Court of the United States recognized that it is

16    permissible to display the Ten Commandments on government property in *Van*

17    *Orden v. Perry,* 545 U.S. 677, 688 (2005).

18            (2) In 2006, the legislature enacted Act No. 602 of the 2006 Regular Session

19    of the legislature which provided for the secretary of state to publish the Ten

20    Commandments and other historically significant documents for posting in court

21    houses and other public buildings to address "a need to educate and inform the public

22    as to the history and background of American and Louisiana law".

ROAKE-016

CODING: Words in ~~struck through~~ type are deletions from existing law; words underscored are additions.

24-30706.2093

ROAKE-016-000001

1    (3)  In 2019, the Supreme Court of the United States further recognized that

2    the Ten Commandments "have historical significance as one of the foundations of

3    our legal system. . .", in *American Legion v. American Humanists Association,* 588

4    U.S. 29, 53 (2019) and, the court also ruled that the displaying of the Ten

5    Commandments on public property may have "multiple purposes" such as "historical

6    significance" and represent a "common cultural heritage". id, 588 U.S. at 54.

7    (4)  Recognizing the historical role of the Ten Commandments accords with

8    our nation's history and faithfully reflects the understanding of the founders of our

9    nation with respect to the necessity of civic morality to a functional self-government.

10    History records that James Madison, the fourth President of the United States of

11    America, stated that "(w)e have staked the whole future of our new nation . . . upon

12    the capacity of each of ourselves to govern ourselves according to the moral

13    principles of the Ten Commandments."

14    (5)  Including the Ten Commandments in the education of our children is part

15    of our state and national history, culture, and tradition.

16    (6)  The text of the Ten Commandments set forth in Subsection B of this

17    Section is identical to the text of the Ten Commandments monument that was upheld

18    by the Supreme Court of the United States in *Van Orden v. Perry,* 545 U.S. 677, 688

19    (2005).

20    (7)  The Mayflower Compact of 1620 was America's first written constitution

21    and made a Covenant with Almighty God to "form a civil body politic".  This was

22    the first purely American document of self-government and affirmed the link

23    between civil society and God.

24    (8)  The Northwest Ordinance of 1787 provided a method of admitting new

25    states to the Union from the territory as the country expanded to the Pacific. The

26    Ordinance "extended the fundamental principles of civil and religious liberty" to the

27    territories and stated that "(r)eligion, morality, and knowledge, being necessary to

28    good government and the happiness of mankind, schools and the means of education

29    shall forever be encouraged."

30    (9)  It is the Legislature's intent to apply the decision set forth by the

31    Supreme Court of the United States in *Van Orden v. Perry,* id, to continue the rich

CODING:  Words in ~~struck through~~ type are deletions from existing law; words underscored
are additions.

24-30706.2094

ROAKE-016-000002

1    tradition and ensure that the students in our public schools may understand and

2    appreciate the foundational documents of our state and national government.

3         (10)  The Supreme Court of the United States acknowledged that the Ten

4    Commandments may be displayed on local government property when a private

5    donation is made for the purchase of the historical monument. *Pleasant Grove City,*

6    *Utah v. Summan,* 555 U.S. 460 (2006).

7         (11)  It is the intention of the legislature that this Section shall not create an

8    unfunded mandate on any public school governing authority. The school boards are

9    encouraged to use documents that are printed and made available to the schools free

10   of charge.

11        B.(1)  No later than January 1, 2025, each public school governing authority

12   shall display the Ten Commandments in each classroom in each school under its

13   jurisdiction.  The nature of the display shall be determined by each governing

14   authority with a minimum requirement that the Ten Commandments shall be

15   displayed on a poster or framed document that is at least eleven inches by fourteen

16   inches.  The text of the Ten Commandments shall be the central focus of the poster

17   or framed document and shall be printed in a large, easily readable font.

18        (2)  The text shall read as follows:

19                        "The Ten Commandments

20                        I AM the LORD thy God.

21             Thou shalt have no other gods before me.

22           Thou shalt not make to thyself any graven images.

23         Thou shalt not take the Name of the Lord thy God in vain.

24             Remember the Sabbath day, to keep it holy.

25   Honor thy father and thy mother, that thy days may be long upon the land which the Lord

26                        thy God giveth thee.

27                    Thou shalt not kill.

28               Thou shalt not commit adultery.

29                   Thou shalt not steal.

30         Thou shalt not bear false witness against thy neighbor.

31            Thou shalt not covet thy neighbor's house.

CODING:  Words in ~~struck through~~ type are deletions from existing law; words underscored are additions.

ROAKE-016-000003

**ENROLLED**

1     Thou shalt not covet thy neighbor's wife, nor his manservant, nor his maidservant, nor his

2     cattle, nor anything that is thy neighbor's."

3     (3) The Ten Commandments shall be displayed with a context statement as

4     follows:

5     "The History of the Ten Commandments in American Public Education

6     The Ten Commandments were a prominent part of American public

7     education for almost three centuries. Around the year 1688, *The New England*

8     *Primer* became the first published American textbook and was the equivalent of a

9     first grade reader. *The New England Primer* was used in public schools throughout

10     the United States for more than one hundred fifty years to teach Americans to read

11     and contained more than forty questions about the Ten Commandments.

12     The Ten Commandments were also included in public school textbooks

13     published by educator William McGuffey, a noted university president and

14     professor. A version of his famous *McGuffey Readers* was written in the early 1800s

15     and became one of the most popular textbooks in the history of American education,

16     selling more than one hundred million copies. Copies of the *McGuffey Readers* are

17     still available today.

18     The Ten Commandments also appeared in textbooks published by Noah

19     Webster in which were widely used in American public schools along with

20     America's first comprehensive dictionary that Webster also published. His textbook,

21     *The American Spelling Book*, contained the Ten Commandments and sold more than

22     one hundred million copies for use by public school children all across the nation and

23     was still available for use in American public schools in the year 1975."

24     (4)(a) A public school may also display the Mayflower Compact, the

25     Declaration of Independence, and the Northwest Ordinance, as provided in R.S.

26     25:1282, along with the Ten Commandments.

27     (5) This Section shall not require a public school governing authority to

28     spend its funds to purchase displays. In order to fund the displays free of charge, the

29     school public governing authority shall do either of the following:

30     (a) Accept donated funds to purchase the displays.

31     (b) Accept donated displays.

CODING: Words in ~~struck through~~ type are deletions from existing law; words underscored are additions.

ROAKE-016-000004

1     (6)(a)  The State Board of Elementary and Secondary Education shall adopt

2     rules and regulations in accordance with the Administrative Procedure Act to ensure

3     the proper implementation of this Section.

4          (b)  The state Department of Education shall identify appropriate resources

5     to comply with the provisions of this Section that are free of charge. Once identified,

6     the department shall list the free resources on the department's internet website.

7          C.(1)  No later than January 1, 2025, each public postsecondary education

8     management board shall require each institution under its jurisdiction to display the

9     Ten Commandments in each classroom on the institution's campus.  At a minimum,

10    the Ten Commandments shall be displayed on a poster or framed document that is

11    at least eleven inches by fourteen inches.  The text of the Ten Commandments shall

12    be the central focus of the poster or framed document and shall be printed in a large,

13    easily readable font.

14         (2)  The text shall read as provided in Paragraph (A)(2) of this Section.

15         (3)  This Subsection does not require a public postsecondary education

16    management board or any public postsecondary education institution to spend its

17    funds to purchase such displays.  An institution or management board or governing

18    authority may spend donated funds to purchase the Ten Commandments or other

19    historical documents provided for in this Section or may accept donated displays.

20                        *        *        *

21    §3996.  Charter schools; exemptions; requirements

22                        *        *        *

23         B.  Notwithstanding any state law, rule, or regulation to the contrary and

24    except as may be otherwise specifically provided for in an approved charter, a

25    charter school established and operated in accordance with the provisions of this

26    Chapter and its approved charter and the school's officers and employees shall be

27    exempt from all statutory mandates or other statutory requirements that are

28    applicable to public schools and to public school officers and employees except for

29    the following laws otherwise applicable to public schools with the same grades:

30                        *        *        *

31         (82)  Ten Commandments; displays, R.S. 17:2122.

32                        *        *        *

CODING:  Words in ~~struck through~~ type are deletions from existing law; words underscored are additions.

HB NO. 71                                                    **ENROLLED**

1        Section 2. If any provision or item of this Act, or the application thereof, is held

2    invalid, such invalidity shall not affect other provisions, items, or applications of the Act

3    which can be given effect without the invalid provision, item, or application and to this end

4    the provisions of this Act are hereby declared severable.

5        Section 3.  This Act shall become effective upon signature by the governor or, if not

6    signed by the governor, upon expiration of the time for bills to become law without signature

7    by the governor, as provided by Article III, Section 18 of the Constitution of Louisiana.  If

8    vetoed by the governor and subsequently approved by the legislature, this Act shall become

9    effective on the day following such approval.


_____

SPEAKER OF THE HOUSE OF REPRESENTATIVES


_____

PRESIDENT OF THE SENATE


_____

GOVERNOR OF THE STATE OF LOUISIANA


APPROVED: _____

CODING:  Words in ~~struck through~~ type are deletions from existing law; words underscored
are additions.

24-30706.2098

ROAKE-016-000006

# Tab 2

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA


ROAKE, ET AL                    *          CIVIL ACTION
                                *          NO. 3:24-00517
VERSUS                          *
                                *
BRUMLEY, ET AL                  *
                                *          OCTOBER 21, 2024
* * * * * * * * * * * * * * *



MOTION HEARING
BEFORE THE HONORABLE JOHN W. DEGRAVELLES
UNITED STATES DISTRICT JUDGE



APPEARANCES:

FOR THE DAREY ROAKE, ET AL:   ACLU OF LOUISIANA
                              BY:  CHARLES ANDREW PERRY, ESQ
                              1340 POYDRAS STREET
                              SUITE 2160
                              NEW ORLEANS, LOUISIANA  70112

                              ACLU FOUNDATION
                              BY:  DANIEL MACH, ESQ.
                              915 15TH STREET NW
                              SUITE 600
                              WASHINGTON, DC 20005

                              SIMPSON THACHER & BARLETT LLP
                              BY:  JANET A. GOCHMAN, ESQ.
                              425 LEXINGTON AVENUE
                              NEW YORK, NEW YORK 10017

                              SIMPSON THACHER & BARLETT LLP
                              BY:  JONATHAN K. YOUNGWOOD, ESQ.
                              425 LEXINGTON AVENUE
                              NEW YORK, NEW YORK 10017

                              SIMPSON THACHER & BARLETT LLP
                              BY:  NICHOLAS PRENDERGAST, ESQ.
                              900 G ST. NW
                              WASHINGTON, DC  20001

```
 1    APPEARANCES CONTINUED:

 2
                                SIMPSON THACHER & BARLETT LLP
 3                              BY:  V. NOAH GIMBEL, ESQ.
                                425 LEXINGTON AVENUE
 4                              NEW YORK, NEW YORK 10017

 5                              SIMPSON THACHER & BARLETT LLP
                                BY:  HEATHER L. WEAVER, ESQ.
 6                              425 LEXINGTON AVENUE
                                NEW YORK, NEW YORK 10017
 7

 8    FOR CADE BRUMLEY, ET AL:  LOUISIANA DEPARTMENT OF JUSTICE
                                FEDERALISM DIVISION
 9                              BY: ZACHARY FAIRCLOTH, ESQ.
                                1885 N. 3RD STREET
10                              BATON ROUGE, LOUISIANA  70802

11                              LOUISIANA DEPARTMENT OF JUSTICE
                                FEDERALISM DIVISION
12                              BY: CAITLIN A. HUETTEMANN, ESQ.
                                1885 N. 3RD STREET
13                              BATON ROUGE, LOUISIANA  70802

14                              SOLICITOR GENERAL OF THE OFFICE
                                OF THE ATTORNEY GENERAL
15                              BY: J. BENJAMIN AGUINAGA, ESQ.
                                1885 N. 3RD STREET
16                              BATON ROUGE, LOUISIANA  70802

17    FOR ORLEANS PARISH        PHELPS DUNBAR LLP
      SCHOOL BOARD:             BY: REBECCA SHA, ESQ.
18                              365 CANAL STREET
                                SUITE 2000
19                              NEW ORLEANS, LOUISIANA  70130

20                              PHELPS DUNBAR LLP
                                BY: DAN ZIMMERMAN, ESQ.
21                              365 CANAL STREET
                                SUITE 2000
22                              NEW ORLEANS, LOUISIANA  70130

23

24

25
```

```
1
2   OFFICIAL COURT REPORTER:        GINA DELATTE-RICHARD, CCR
                                    UNITED STATES COURTHOUSE
3                                   777 FLORIDA STREET
                                    BATON ROUGE, LOUISIANA  70801
4                                   (225) 389-3564

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY USING
               COMPUTER-AIDED TRANSCRIPTION SOFTWARE
25
```

```
1   WITNESS INDEX:

2   BY THE PLAINTIFFS:

3       STEVEN K. GREEN, J.D.,PH.D.

4           DIRECT EXAMINATION BY MR. YOUNGWOOD........... 8

5           CROSS-EXAMINATION BY MR. FAIRCLOTH............ 71

6           REDIRECT EXAMINATION BY MR. YOUNGWOOD.........129

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1            THE COURT:  ALL RIGHT.  WHAT ABOUT STONE?

2            MR. AGUINAGA:  I'M GLAD MY FRIEND BROUGHT UP STONE,

3    YOUR HONOR, BECAUSE I'M HAPPY TO TALK ABOUT STONE.  I THINK THE

4    BEST REASON WHY WE LOVE TO TALK ABOUT STONE IS THAT STONE, AND

5    THEN THE SUPREME COURT'S FOLLOW-UP DECISION IN MCCREARY COUNTY,

6    RECOGNIZES THAT WE WIN THIS CASE, EVEN IF STONE REMAINED GOOD

7    LAW.  AND LET ME GIVE YOU JUST A FEW DATA POINTS FOR WHY --

8            THE COURT:  BUT DO YOU AGREE WITH HER PREMISE WHICH

9    IS I'M BOUND BY STONE UNTIL THE SUPREME COURT TELLS ME I'M NOT

10   BOUND BY STONE?

11           MR. AGUINAGA:  YOUR HONOR, WE'RE HAPPY FOR -- WE'RE

12   NOT GOING TO DISPUTE THAT, YOUR HONOR.  OBVIOUSLY, IF THIS CASE

13   GETS TO THE SUPREME COURT WE WILL VIGOROUSLY LITIGATE WHETHER

14   STONE REMAINS GOOD LAW.  BUT ASSUMING IT DOES REMAIN GOOD LAW

15   AND BINDING ON THIS COURT, AS WE ACCEPT FOR PURPOSES OF THIS

16   DISCUSSION, YOUR HONOR, LOOK AT WHAT STONE SAYS.  STONE SAYS

17   THIS IS NOT A CASE IN WHICH THE TEN COMMANDMENTS ARE INTEGRATED

18   INTO THE SCHOOL CURRICULUM WHERE THE BIBLE MAY BE

19   CONSTITUTIONALLY USED IN AN APPROPRIATE STUDY OF HISTORY,

20   CIVILIZATION, ETHICS, COMPARATIVE RELIGION, THE LIKE.

21            WHAT VAN ORDEN -- LOOK AT THE VAN ORDEN DISSENT,

22   YOUR HONOR.  WHAT THE VAN ORDEN DISSENTERS -- THIS IS JUSTICE

23   SOUTER AND JUSTICE GINSBURG, WHAT THEY LATER SAID IS THAT THE

24   TEN COMMANDMENTS, QUOTE, COULD, AS STONE SUGGESTED, BE

25   INTEGRATED CONSTITUTIONALLY INTO A COURSE OF STUDY IN PUBLIC
```

1   SCHOOLS.  THAT IS WHAT'S HAPPENING HERE.

2               I'M GOING TO SHOW, YOUR HONOR, THIS -- FOR

3   DEFENDANTS THIS IS PAGE 9 OF DEFENDANTS' EXHIBITS.  THIS IS

4   FULL SIZE, 11 INCHES BY 14 INCHES, MINIMUM SIZE UNDER THE

5   STATUTE.  THIS IS EXACTLY WHAT THE SUPREME COURT DID NOT

6   HAVE --

7           **THE COURT:**  IS THAT READABLE FONT?  IT AIN'T READABLE

8   TO ME --

9           **MR. AGUINAGA:**  YOUR HONOR, THIS IS --

10          **THE COURT:**  -- GRANTED I'M TEN FEET FROM IT.

11          **MR. AGUINAGA:**  AND THAT'S EXACTLY MY POINT, YOUR

12  HONOR.  THIS IS THE SIZE REQUIRED BY THE LAW.

13          **THE COURT:**  BUT IT'S ALSO REQUIRED TO BE READABLE,

14  RIGHT?  CAN YOU HAVE IT 11X13 AND MAKE IT READABLE FONT?

15          **MR. AGUINAGA:**  THIS IS READABLE.  YOUR HONOR, I'D BE

16  HAPPY TO HAND THIS TO YOU.  ANYBODY CAN READ IT IF YOU'RE

17  STANDING RIGHT HERE --

18          **THE COURT:**  IF IT'S ON A BOARD.  IF IT'S ON A BOARD

19  AND YOU'RE SITTING FIVE FEET AWAY YOU CAN'T -- AT LEAST I CAN'T

20  READ IT.  I'VE GOT BAD EYES, OKAY.  TAKE JUDICIAL NOTICE OF

21  THAT.

22          **MR. AGUINAGA:**  I HAVE TERRIBLE EYESIGHT, YOUR HONOR.

23  AND I THINK THAT'S A FEATURE OF THE LAW.  IF WE NEED TO

24  ESTABLISH A MINIMUM REQUIREMENT LIKE 11 INCHES BY 14 INCHES --

25  YOU KNOW, I THINK THE CASE HAS BEEN LITIGATED ON THE ASSUMPTION

# Tab 3

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| REVEREND DARCY ROAKE and ADRIAN VAN YOUNG, on behalf of themselves and on behalf of their minor children, A.V. and S.V., et al.,<br><br>    Plaintiffs,<br><br>        v.<br><br>CADE BRUMLEY, in his official capacity as the Louisiana State Superintendent of Education, et al.,<br><br>    Defendants. | CIVIL ACTION NO.<br>3:24-cv-00517-JWD-SDJ |

**DECLARATION OF REVEREND DARCY ROAKE IN SUPPORT OF
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

I, Reverend Darcy Roake, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I am a Plaintiff in the above-captioned matter, along with my husband Adrian Van Young. I am suing on behalf of myself and on behalf of my minor children, A.V. and S.V.[1]

2.      S.V. is enrolled in a public elementary school in the NOLA Public School System. S.V.'s school is scheduled to begin the upcoming academic year on August 14, 2024. A.V. will attend an elementary school in the same public-school system in 2025.

3.      Our family is domiciled, and our children attend school, in Orleans Parish.

4.      I am an ordained minister in the Unitarian Universalist ("UU") Church. My husband, Plaintiff Adrian Van Young, is Reform Jewish.

---

[1] In accordance with Federal Rule of Civil Procedure 5.2(3), all minor Plaintiffs are identified by their initials.

1

5.      On behalf of myself and my children, I object to, and am offended by, H.B. 71 because the overtly religious classroom displays mandated by the law will promote, and forcibly subject my children to, religious scripture in a manner that violates my family's religious beliefs and practices.

6.      I believe that these displays will religiously coerce my children and usurp my parental role in directing our children's religious education, religious values, and religious upbringing.

7.      My Unitarian Universalist religion counsels me to value everyone's experience and religious background, and to avoid elevating some religions over others. My faith does not endorse specific scripture or dogma, although it does affirm seven principles that help guide one's ethical and moral decision-making. While all these principles are important to me, the fourth UU principle supporting the right to a "free and responsible search for truth and meaning" is especially significant to me. I believe that this spiritual inquiry cannot happen when the government imposes religious doctrine on someone.

8.      My faith teaches, and I believe, that forcing religious beliefs on individuals causes them significant spiritual, psychological, and emotional harm. I also believe that forcing religious beliefs on others conflicts with my commitment to religious tolerance and acceptance, which is fundamental to my practice as a Unitarian Universalist and minister.

9.      As part of an interfaith household, my husband and I navigate a complex and careful path in guiding the spiritual development of our children, who are being raised in both the Jewish and Unitarian Universalist traditions. For example, S.V. previously attended Unitarian Universalist Sunday school and currently attends Jewish youth religious education classes (Chavurah) at our

24-30706.279

family's synagogue, where we are members. Our children also have been welcomed into the UU Church in child-dedication ceremonies.

10. In teaching our children about our faiths and traditions, my husband and I recognize and emphasize to our children that it is ultimately their right to undertake a free and responsible search for truth and meaning and to decide, when they are old enough, what faith system, if any, they will follow.

11. One of the reasons we enrolled our children in public school was to help facilitate their spiritual journey, by ensuring that they receive a secular, religiously unbiased education and have the ability to interact with and get to know peers from a variety of cultural and faith traditions.

12. The ability to direct and guide my children in matters of faith and protect their ability to undertake a free and responsible search for truth and meaning is an essential aspect of my religious exercise. H.B. 71 will significantly interfere with and substantially burden my ability to carry out this religious exercise.

13. The law's mandatory religious displays will conflict with my spiritual beliefs and the spiritual values that my husband and I seek to instill in my children. In particular, the displays will not comport with the Jewish traditions being imparted to S.V. in Chavurah and will not provide the necessary context that would be provided through a Unitarian Universalist reading of the text.

14. For example, I believe that the text of H.B. 71's commandment ordering, "Thou shalt not covet thy neighbor's wife, nor his manservant, nor his maidservant, nor his cattle, nor anything that is thy neighbor's," wrongly centers a heterosexual male perspective and treats women and other individuals ("manservant[s]" and "maidservant[s]") as property. By posting this text without its Jewish context and history—which would include an acknowledgement of Judaism's commitment to equality for all people—and without acknowledging and disputing the

3

text's discriminatory language, the state will send the message to my children that the religious text should be taken literally, which would violate core spiritual values that my husband and I teach our children.

15.     Because H.B. 71 requires that the commandments be permanently posted in every classroom, rendering them unavoidable, and does not require the displays to be connected to the subject matter being taught, I further believe that the religious displays will send the message to my children not only that the posted text is the "correct" or superior version of religious doctrine, but also that the Ten Commandments, as set forth in the display, constitute official rules that they and their peers must follow.

16.     I believe that H.B. 71 and religious displays send a message of religious intolerance to my children, also in conflict with the family's spiritual beliefs, that anyone who does not believe in the state's official religious scripture is an outsider and not fully part of the school community. Indeed, I believe that, because my children are Jewish and Unitarian Universalist and because our family does not subscribe to the version of the Ten Commandments approved by the state, these displays will convey to my children that *they* are outsiders and do not belong in their public school.

17.     As a result of these messages, I believe that my children will be pressured to observe, meditate on, venerate, and obey the state's preferred religious doctrine and to suppress expression of their own religious backgrounds and views at school. This religious coercion will harm my children spiritually and substantially interfere with, impede, and burden their ability to conduct a free and responsible inquiry for truth and meaning and to decide, for themselves, what to believe when it comes to matters of faith.

///

///

I hereby declare under penalty of perjury that the foregoing is true and correct.

Reverend Darcy Roake

Executed on this 5th day of July, 2024

24-30706.282

# Tab 4

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

REVEREND DARCY ROAKE and ADRIAN VAN
YOUNG, on behalf of themselves and on behalf of their
minor children, A.V. and S.V., et al.,

        Plaintiffs,

        v.

CADE BRUMLEY, in his official capacity as the
Louisiana State Superintendent of Education, et al.,

        Defendants.

CIVIL ACTION NO.
3:24-cv-00517-JWD-SDJ

## DECLARATION OF REVEREND MAMIE BROADHURST IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

I, Reverend Mamie Broadhurst, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I am a Plaintiff in the above-captioned matter, along with my husband, Reverend Richard Williams. I am suing on behalf of myself and on behalf of my minor child, N.W.

2.      N.W. is currently enrolled in the East Baton Rouge Parish School System in East Baton Rouge Parish. N.W.'s school is scheduled to begin the upcoming academic year on August 8, 2024.

3.      Our family is domiciled, and our child attends school, in East Baton Rouge Parish.

4.      I am an ordained minister in the Presbyterian Church (U.S.A). My husband and I are raising N.W. in the Presbyterian denomination of the Christian tradition.

5.      On behalf of myself and my child, I object to, and am offended by, H.B. 71 because it will forcibly subject N.W. to school displays of the Ten Commandments in a manner that violates our family's religious beliefs and practice.

1

6.     I also believe that these displays will usurp my parental role in directing N.W.'s religious education, religious values, and religious upbringing.

7.     The ability to direct and guide my child's spiritual development is an essential aspect of my religious exercise. For the reasons discussed below, H.B. 71 will significantly interfere with and substantially burden my ability to carry out this religious exercise.

8.     I strongly believe that scriptural matters and questions, including which version of scripture is correct and what it means, are far too sacred to place in the hands of government officials. I believe that these issues must be reserved for faith communities. This belief is rooted in the Presbyterian understanding that civil magistrates should not interfere with the administration of God's Word or misappropriate God's authority.

9.     I believe that the state has done just that, however, by placing its stamp of approval on one particular version of the Ten Commandments and mandating that this version be posted in every public-school classroom. As a result, H.B. 71 and the displays it requires will send a message to all students, including my child, that the government holds religious authority.

10.     I believe that the reservation of theological matters to faith communities is especially important when it comes to youth religious education, including for my own child. Receiving and navigating scripture, such as the Ten Commandments, within the context of our faith is critical to ensuring that my child's  understanding of the commandments aligns with our Presbyterian teachings and values. For example, as a pastor trained in biblical study and interpretation, I look to the faith tradition out of which scripture was born. The version of the Ten Commandments mandated by H.B. 71 effectively erases that critical context by disregarding and dismissing text that is central to the commandments' Jewish origin.

2

11.     In addition, our family's Presbyterian faith strongly teaches that all people are equal in the eyes of God and should be treated as such. However, the text of the Ten Commandments mandated by H.B. 71 includes language that, on its face, is contrary to this value—effectively treating women and others ("maidservant[s]" and "manservant[s]") as property. I believe that, to avoid this harmful message, it is critical that the Ten Commandments be introduced to N.W. by me and my husband, as well as our church, within the broader framework of our Presbyterian religious doctrine and belief.

12.     Moreover, the state's decision to mandate the display of a specific version of the Ten Commandments in public schools sends the message to N.W. and other students that those who do not believe in this official version are not as worthy as those who do, contrary to our family's religious principles, which value a multicultural and diverse society and do not base the worthiness of people on their faith or lack thereof. Because H.B. 71's displays will be posted permanently in every classroom throughout the rest of N.W.'s public-school education, I believe that this message of inequality, like the other messages discussed above, will be virtually inescapable for N.W.

13.     As a former public high-school teacher, I am well aware that posting anything on the walls of a classroom is done with great intentionality and for the purpose of intensifying students' focus on the subject matter and conveying its importance. This is especially true where the subject matter of the display stands out because it is unrelated to the academic subject being taught, as with the Ten Commandments, which underscores the power of the government to mandate the presence of the commandments and portrays the state as a religious actor.

14.     I further believe that the Ten Commandments displays posted in N.W.'s classrooms will not only interfere with and undermine my ability to guide N.W.'s religious education, but they

3

will also create pressure for N.W. to accept and believe—contrary to our family's Presbyterian faith—the overtly religious messages conveyed by them, including that the state has authority over theological or scriptural questions and that students who do not subscribe to the state's official version of the Ten Commandments are lesser in status.

15.     I believe that this will also create pressure for N.W. to suppress expression, especially in school, of N.W's own religious beliefs on these issues and other religious questions or concerns raised by the religious displays.

16.     Finally, as ministers in the community, my husband and I work ecumenically and in interfaith contexts. In favoring one set of religious language and beliefs over others, H.B. 71 will create a climate in Baton Rouge—and, indeed, across Louisiana—that is hostile to, or dismissive of, people of minority faiths, interfering with the exercise of these pastoral responsibilities.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Reverend Mamie Broadhurst
Executed on this 3rd day of July, 2024

4

# Tab 5

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

REVEREND DARCY ROAKE and ADRIAN VAN
YOUNG, on behalf of themselves and on behalf of their
minor children, A.V. and S.V., et al.,

      Plaintiffs,

      v.

CADE BRUMLEY, in his official capacity as the
Louisiana State Superintendent of Education, et al.,

      Defendants.

CIVIL ACTION NO.
3:24-cv-00517-JWD-SDJ

## DECLARATION OF REVEREND JEFF SIMS IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

I, Reverend Jeff Sims, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I am a Plaintiff in the above-captioned matter. I am suing on behalf of myself and on behalf of my three minor children, A.S., C.S. 1, and C.S. 2.[1]

2.      A.S., C.S. 1, and C.S. 2, are enrolled in public schools in the St. Tammany Parish Public School System in St. Tammany Parish. Their schools are scheduled to begin the upcoming academic year on August 12, 2024.

3.      I am domiciled, and my children attend school, in St. Tammany Parish.

4.      I am an ordained minister in the Presbyterian Church (U.S.A). I am raising A.S., C.S. 1, and C.S. 2 in the Presbyterian Christian tradition.

---

[1] In accordance with Federal Rule of Civil Procedure 5.2(3), all minor Plaintiffs are identified by their initials.

1

24-30706.295

5.      On behalf of myself and my children, I object to, and am offended by, H.B. 71 because it promotes, and will forcibly subject my children to, overtly religious classroom displays in a manner that violates my family's religious beliefs and practices.

6.      I believe that these displays will also usurp my parental role in directing my children's religious education, religious values, and religious upbringing.

7.      The ability to direct and guide my children's spiritual development is an essential aspect of my religious exercise. For the reasons discussed below, H.B. 71 will significantly interfere with and substantially burden my ability to carry out this religious exercise.

8.      As a minister and parent, I believe that scripture, including the Ten Commandments, is best understood—especially by children—when presented within the context of a family's church and particular faith tradition. This ensures that a child's introduction to the religious text and comprehension of it aligns with the family's religious beliefs.

9.      My family's Presbyterian beliefs strongly value the equality of all people, including women and people of color. I believe that scripture, such as the Ten Commandments, must be navigated through the lens of this core religious principle. However, the text of the Ten Commandments mandated by H.B. 71, even though Christian-centric, presents language that runs counter to this important Presbyterian value. For example, the state's approved version of the Ten Commandments treats some people as chattel. Thus, as a spiritual matter, I believe it is critical that this text be presented to my children by me or through my family's church, to avoid my children receiving this harmful message. Instead, H.B. 71 will impose the state's version of the Ten Commandments on my children every day, in every classroom.

10.      I also believe that H.B. 71's stamp of approval for a particular version of the Ten Commandments and its mandate that this scripture be displayed in my children's classrooms

24-30706.296

improperly sends the message to me, my children, and our community that people of some religious denominations or faith systems are superior to others and that there is an official religious hierarchy featuring the state's officially favored "in" group and the state's officially disfavored "out" group. This religious favoritism violates my family's Presbyterian beliefs, which prioritize inclusiveness and the dignity of all people, honor God's gift of diversity, and are firmly opposed to the notion that there is any pecking order of faithful or non-faithful people.

11.     I further believe that H.B. 71 represents an intrusion of civil authority into matters of faith, sending the message to me, my children, and our community that the public-school system and the government more generally not only possess religious authority, but that this authority is greater than God's, in direct contradiction to the Presbyterian tradition. Presbyterianism was strongly influenced by the beliefs and writing of theologian John Calvin, who posited that civil authority exists only as a result of God's divine law of love and that civil magistrates should not interfere with the administration of God's Word, co-opt the Word for their own purposes, or otherwise arrogate to themselves God's authority. I believe that H.B. 71 does all three.

12.     I believe that the displays of the Ten Commandments posted in my children's classrooms will not only interfere with and undermine my ability to guide their spiritual development, but that they will also pressure my children to accept and believe—contrary to the family's Presbyterian faith—the overtly religious messages conveyed by the displays, including (1) that the state has authority over theological questions and scripture and that this authority is greater than God's, (2) that one denomination or faith system is preferable to others, and (3) that those who do not adhere to the state's preferred version of the Ten Commandments are lesser in worth and status.

3

13.     I believe that my children will also be pressured to suppress expression, especially in school, of their own religious beliefs on these issues and other religious questions or concerns raised by the religious displays.

I hereby declare under penalty of perjury that the foregoing is true and correct.

_____

Jeff Sims

Executed on this 2nd day of July, 2024

4

# Tab 6

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

REVEREND DARCY ROAKE and ADRIAN VAN YOUNG, on behalf of themselves and on behalf of their minor children, A.V. and S.V., et al.,

        Plaintiffs,

        v.

CADE BRUMLEY, in his official capacity as the Louisiana State Superintendent of Education, et al.,

        Defendants.

CIVIL ACTION NO.
3:24-cv-00517-JWD-SDJ

## <u>DECLARATION OF GARY SERNOVITZ IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION</u>

I, Gary Sernovitz, pursuant to <u>28 U.S.C. § 1746</u>, declare as follows:

1.      I am a Plaintiff in the above-captioned matter, along with my wife, Molly Pulda. I am suing on behalf of myself and on behalf of my minor child, T.S.[1]

2.      T.S. is currently enrolled in the NOLA Public School System in Orleans Parish. T.S.'s school is scheduled to begin the upcoming academic year on August 14, 2024.

3.      Our family is domiciled, and our child attends school, in Orleans Parish.

4.      I am Reform Jewish, as is my wife. We regularly attend synagogue, where I am a member of the board. My wife is on the board of a local Jewish community center.

5.      We are intentionally and actively raising our child, T.S., in the Reform Jewish tradition. T.S. attends synagogue with us as well as weekly (and, in the coming academic year,

---

[1] In accordance with <u>Federal Rule of Civil Procedure 5.2(3)</u>, all minor Plaintiffs are identified by their initials.

1

twice-weekly) religious education classes at the synagogue. T.S. also has attended overnight Jewish summer camp.

6.      My wife and I have chosen to educate T.S. in the public-school system because of our strong desire to separate T.S.'s secular education from T.S.'s religious education. We want to be able to oversee the latter and ensure that it is consistent with our Jewish belief and practice.

7.      On behalf of myself and my child, I object to, and am offended by, H.B. 71 because, among other reasons, it forcibly imposes on T.S. overtly religious classroom displays that are, in many ways, contrary to our family's Jewish faith. I believe that H.B. 71 (1) misappropriates a Jewish text, ripping it from its Jewish context, (2) selectively edits that text by altering its meaning and obscuring or erasing its Jewish significance, and (3) then mandates the display of the altered text to non-Jews, in violation of core Jewish tenets that oppose proselytizing.

8.      I believe that these displays are likely to result in religious coercion of T.S. and usurp my parental role in directing T.S.'s religious education, religious values, and religious upbringing.

9.      I find the official version of the Ten Commandments set forth in H.B. 71 and displays of this state-selected religious scripture religiously offensive. This version does not comport with my view and understanding of the Ten Commandments. H.B. 71's characterization of the Ten Commandments as merely a "historically significant document" that reflects nothing more than the "necessity of civic morality to the functioning of self-government" improperly denies the sacred significance of the Ten Commandments to my Jewish faith. This official version of the Ten Commandments obscures, and conflicts with, the Reform Jewish tradition on the history and meaning of the commandments.

10.     I do not believe that the Ten Commandments are a universal benign ethical guide. The language of H.B. 71 omits key biblical text after the first commandment that, I believe, makes this clear: In the book of Exodus, chapter 20, in the Torah, the words "I am the Lord Your God" are followed by "who brought you out of the land of Egypt, out of the house of bondage." This clause is an important part of my Jewish understanding of the origins and purpose of the Ten Commandments, and omission of this text denies the commandments' specific meaning in my Jewish faith. I believe that this omission is tantamount to an official, governmental erasure of the Jewish significance of the Ten Commandments.

11.     As Reform Jews, my wife and I also believe that introducing the Ten Commandments to T.S., and any action that could be construed as attempting to convey their proper religious meaning and interpretation, must occur in the context of the broader Reform Jewish tradition. In the modern Jewish tradition, the Ten Commandments would rarely, if ever, be displayed on the walls of a *religious* classroom at synagogue, as the commandments must be interpreted and reconciled with many other parts of the Torah and the interpretative body of work that has emerged over millennia to understand the Torah. In mandating such displays in the secular classroom, H.B. 71 interferes with my parental ability and right to address this religious doctrine with T.S. in a manner that complies with our faith.

12.     For example, the official text mandated by H.B. 71 states: "Thou shalt not covet thy neighbor's wife, nor his manservant, nor his maidservant, nor his cattle, nor anything that is thy neighbor's." Torn from its Jewish context and presented to students like T.S. in the manner required under H.B. 71, I believe that this language endorses a point of view of God's commandments that specifically addresses property-owning men and implicitly denigrates women as equal adults.  In fact, as a Reform Jew, the equality of men and women is a fundamental faith

3

tenet for me. It is a principle that is central to how my wife and I teach T.S. to read, abide by, and criticize Jewish texts and traditions. H.B. 71's required displays undermine my ability to do so.

13.     The ability to direct and guide my child in matters of faith is an essential aspect of my religious exercise. H.B. 71 will significantly interfere with and substantially burden my ability to carry out this religious exercise.

14.     I further believe, for the reasons above, that forcibly subjecting T.S. to the displays mandated by H.B. 71 will undermine and interfere with my and my wife's ability to instill in T.S. what it means to be specifically Jewish and our ability to introduce and teach the Ten Commandments to T.S. in a manner that comports with other important Jewish tenets. The displays will create confusion for T.S. by wrongly suggesting that the state-selected version of the Ten Commandments is the "correct" or authoritative version of scripture—even though it conflicts with our family's Jewish teachings—and will pressure T.S. to observe, meditate on, venerate, and obey the state's preferred religious beliefs and practices.

15.     I also believe that because of the displays, T.S.—whom I believe to have been just one of a few Jewish students in T.S.'s class last year—will likely face situations in which T.S. feels pressured to suppress expression of T.S.'s own Jewish background and beliefs, including the fundamental Jewish belief in tolerating and supporting the expression of all faiths.

16.     Finally, I strongly object to H.B. 71's religious displays because they would violate Jewish tenets that oppose proselytizing. In text and tradition, the Jewish faith teaches that proselytizing our religion to people of other faiths, trying to convert people to Judaism, or pressuring them to accept Jewish beliefs is wrong. These are religious values that my wife and I instill in T.S. I believe that school displays of the Ten Commandments will interfere with our ability to do so and may place T.S., as one of the few Jewish students in T.S.'s class, in the position

4

of being questioned by T.S.'s peers and being asked to defend or condemn this sacrilegious proselytizing.

I hereby declare under penalty of perjury that the foregoing is true and correct.

_____

Gary Sernovitz

Executed on this 2nd day of July, 2024

5

## CERTIFICATE OF SERVICE

On December 30, 2024, this document was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court.

*/s/ Jonathan K. Youngwood*

Jonathan K. Youngwood