# In the United States Court of Appeals for the Fifth Circuit

DARCY ROAKE, REVEREND, ON BEHALF THEMSELVES AND ON BEHALF OF THEIR MINOR CHILDREN, REAL PARTY IN INTEREST A.V., REAL PARTY IN INTEREST S.V.; ADRIAN VAN YOUNG, ON BEHALF OF THEMSELVES AND ON BEHALF OF THEIR MINOR CHILDREN, REAL PARTY IN INTEREST A.V., REAL PARTY IN INTEREST S.V.; MAMIE BROADHURST, REVEREND, ON BEHALF OF THEMSELVES AND ON BEHALF OF THEIR MINOR CHILD, REAL PARTY IN INTEREST N.W.; RICHARD WILLIAMS, REVEREND, ON BEHALF OF THEMSELVES AND ON BEHALF OF THEIR MINOR CHILD, REAL PARTY IN INTEREST N.W.; JEFF SIMS, REVEREND, ON BEHALF OF HIMSELF AND ON BEHALF OF HIS MINOR CHILDREN, REAL PARTY IN INTEREST A.S., REAL PARTY IN INTEREST C.S. 1, REAL PARTY IN INTEREST C.S. 2; JENNIFER HARDING, ON BEHALF OF THEMSELVES AND ON BEHALF OF THEIR MINOR CHILD, REAL PARTY IN INTEREST A.O.; BENJAMIN OWENS, ON BEHALF OF THEMSELVES AND ON BEHALF OF THEIR MINOR CHILD, REAL PARTY IN INTEREST A.O.; DAVID HAWLEY, ON BEHALF OF THEMSELVES AND ON BEHALF OF THEIR MINOR CHILDREN REAL PARTY IN INTEREST A.H., REAL PARTY IN INTEREST L.H.; ERIN HAWLEY, ON BEHALF OF THEMSELVES AND ON BEHALF OF THEIR MINOR CHILDREN, REAL PARTY IN INTEREST A.H, REAL PARTY IN INTEREST L.H.; DUSTIN MCCRORY, ON BEHALF OF THEMSELVES AND ON BEHALF OF HIS MINOR CHILDREN, REAL PARTY IN INTEREST E.M.; REAL PARTY IN INTEREST P.M., REAL PARTY IN INTEREST L.M.; GARY SERNOVITZ, ON BEHALF OF THEMSELVES AND ON BEHALF OF THEIR MINOR CHILD, REAL PARTY IN INTEREST T.S.; MOLLY PULDA, ON BEHALF OF THEMSELVES AND ON BEHALF OF THEIR MINOR CHILD. REAL PARTY IN INTEREST T.S.; CHRISTY ALKIRE, ON BEHALF OF HERSELF AND ON HEHALF OF HER MINOR CHILD, REAL PARTY IN INTEREST L.A.; JOSHUA HERLANDS, ON BEHALF OF HIMSELF AND ON BEHALF OF HIS MINOR CHILDREN, REAL PARTY IN INTEREST E.H., REAL PARTY IN INTEREST J.H.,

*Plaintiffs-Appellees,*

v.

CADE BRUMLEY, IN HIS OFFICIAL CAPACITY AS THE LOUISIANA STATE SUPERINTENDENT OF EDUCATION; CONRAD APPEL, IN HIS OFFICIAL CAPACITY AS A MEMBER OF THE LOUISIANA STATE BOARD OF ELEMENTARY AND SECONDARY EDUCATION (LSBESE); JUDY ARMSTRONG, IN HER OFFICIAL CAPACITY AS A

MEMBER OF THE LSBESE; KEVIN BERKEN, IN HIS OFFICIAL CAPACITY AS A MEMBER OF THE LSBESE; PRESTON CASTILLE, IN HIS OFFICIAL CAPACITY AS A MEMBER OF LSBESE; SIMONE CHAMPAGNE, IN HER OFFICIAL CAPACITY AS A MEMBER OF THE LSBESE; SHARON LATTEN-CLARK, IN HER OFFICIAL CAPACITY AS A MEMBER OF THE LSBESE; LANCE HARRIS, IN HIS OFFICIAL CAPACITY AS A MEMBER OF LSBESE; PAUL HOLLIS, LOUISIANA STATE BOARD OF ELEMENTARY AND SECONDARY EDUCATION; SANDY HOLLOWAY, IN HER OFFICIAL CAPACITY AS A MEMBER OF THE LSBESE; STACEY MELERINE, IN HER OFFICIAL CAPACITY AS A MEMBER OF THE LSBESE; RONNIE MORRIS, IN HIS OFFICIAL CAPACITY AS A MEMBER OF THE LSBESE; EAST BATON ROUGE PARISH SCHOOL BOARD; LIVINGSTON PARISH SCHOOL BOARD; VERNON PARISH SCHOOL BOARD; ST. TAMMANY PARISH SCHOOL BOARD,

*Defendants-Appellants.*

———————————————

On Appeal from the United States District Court
for the Middle District of Louisiana
No. 3:24-cv-517, Hon. John W. deGravelles

———————————————

**APPELLANTS' REPLY BRIEF**

———————————————

ERIC C. RASSBACH
JOSEPH C. DAVIS
BENJAMIN A. FLESHMAN
AMANDA L. SALZ
KELSEY BAER FLORES
THE BECKET FUND FOR
    RELIGIOUS LIBERTY
1919 Pennsylvania Ave. NW
    Suite 400
Washington, D.C. 20006

*Counsel for Appellants Brumley
and LSBESE Officials*

ELIZABETH B. MURRILL
Attorney General of Louisiana

J. BENJAMIN AGUIÑAGA
Solicitor General

ZACHARY FAIRCLOTH
Principal Deputy Solicitor General

OFFICE OF THE ATTORNEY GENERAL
1885 N. 3rd St.
Baton Rouge, LA 70802
(225) 506-3746
AguinagaB@ag.louisiana.gov

*Counsel for Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ........................................................................ 1

ARGUMENT ............................................................................ 1

    I.  THE DISTRICT COURT LACKS SUBJECT MATTER JURISDICTION. ...... 1

        A.  This Case Is Not Ripe. ............................................ 1

        B.  Plaintiffs Lack Article III Standing. ..................................... 5

            1.    Plaintiffs' theory of imaginary offended-observer standing is not viable. ..................................... 5

            2.    The Court's offended-observer precedents are wrong and should be reconsidered. ............................... 7

        C.  Defendants Brumley and BESE Members Have Sovereign Immunity. ............................................ 12

    II.  PLAINTIFFS FAIL TO STATE A CLAIM. ........................................... 14

        A.  H.B. 71 Does Not Facially Violate the Establishment Clause. ................................................... 14

            1.    The facial standard is outcome-determinative. ........... 14

            2.    H.B. 71 implicates none of the historical hallmarks of an establishment. .................................. 17

            3.    H.B. 71 fits within longstanding tradition. ................. 25

        B.  H.B. 71 Does Not Facially Violate the Free Exercise Clause. ................................................... 28

III. THE DISTRICT COURT ERRED BY ENTERING A PRELIMINARY INJUNCTION. ................................................................ 31

IV. AT MINIMUM, THE INJUNCTION IS OVERBROAD. ........................... 32

CONCLUSION .......................................................................... 33

CERTIFICATE OF SERVICE ................................................... 35

CERTIFICATE OF COMPLIANCE ......................................... 36

# TABLE OF AUTHORITIES

**Cases**

*Am. Legion v. Am. Humanist Ass'n,*
   588 U.S. 29 (2019) ....................................... 7, 8, 9, 10, 11, 22, 27, 30, 31

*Barber v. Bryant,*
   860 F.3d 345 (5th Cir. 2017) ......................................... 5, 6, 7

*Books v. Elkhart County,*
   401 F.3d 857 (7th Cir. 2005) ............................................... 25

*Bowen v. Roy,*
   476 U.S. 693 (1986) ............................................................ 29

*Briggs v. Mississippi,*
   331 F.3d 499 (5th Cir. 2003) .............................................. 19

*City of Austin v. Paxton,*
   943 F.3d 993 (5th Cir. 2019) .............................................. 14

*Colorado Repub. Fed. Campaign Comm. v. FEC,*
   518 U.S. 604 (1996) ............................................................ 23

*Croft v. Perry,*
   624 F.3d 157 (5th Cir. 2010) .......................................... 20, 29

*Daves v. Dallas County,*
   64 F.4th 616 (5th Cir. 2023) .............................................. 16

*Doe v. Beaumont Indep. Sch. Dist.,*
   240 F.3d 462 (5th Cir. 2001) .............................................. 20

*Doe v. Tangipahoa Par. Sch. Bd.,*
   494 F.3d 494 (5th Cir. 2007) ................................... 1, 4, 5, 6, 10

*E.T. v. Paxton,*
   19 F.4th 760 (5th Cir. 2021) .............................................. 32

*El Paso County v. Trump,*
  982 F.3d 332 (5th Cir. 2020) ................................................................. 11

*Ex parte Young,*
  209 U.S. 123 (1908) .............................................................................. 12

*FDA v. All. for Hippocratic Med.,*
  602 U.S. 367 (2024) ................................................................................ 9

*Firewalker-Fields v. Lee,*
  58 F.4th 104 (4th Cir. 2023) ................................................................. 18

*Flast v. Cohen,*
  392 U.S. 83 (1968) ................................................................................ 10

*Freedom From Religion Foundation, Inc. v. Mack*'s
  49 F.4th 941 (5th Cir. 2022) ............................................................. 6, 7

*Glassroth v. Moore,*
  335 F.3d 1282 (11th Cir. 2003) ............................................................ 22

*Haverkamp v. Linthicum,*
  6 F.4th 662 (5th Cir. 2021) .................................................................. 14

*Ingebretsen v. Jackson Pub. Sch. Dist.,*
  88 F.3d 274 (5th Cir. 1996) ................................................................... 5

*Jackson v. Wright,*
  82 F.4th 362 (5th Cir. 2023) ........................................................... 13, 14

*Kennedy v. Bremerton Sch. Dist.,*
  597 U.S. 507 (2022) ........................................................................ 18, 23

*Lee v. Weisman,*
  505 U.S. 577 (1992) ............................................................... 4, 5, 9, 20

*Marsh v. Chambers,*
  463 U.S. 783 (1983) ...................................................26, 27

*Masterpiece Cakeshop v. Colorado Civil Rights Commission,*
  584 U.S. 617 (2018) ...............................................................31

*Mayle v. United States,*
  891 F.3d 680 (7th Cir. 2018) .................................................19

*McCreary County v. ACLU of Ky.,*
  545 U.S. 844 (2005) ...............................2, 3, 15, 24, 25

*McGowan v. Maryland,*
  366 U.S. 420 (1961) .................................................................27

*Moody v. NetChoice, LLC,*
  603 U.S. 707 (2024) .................................................................14

*Murray v. City of Austin,*
  947 F.2d 147 (5th Cir. 1991) ...........................................19, 29

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen,*
  597 U.S. 1 (2022) .............................................................18, 26

*New Doe Child #1 v. Congress of U.S.,*
  891 F.3d 578 (6th Cir. 2018) .................................................28

*Pleasant Grove City v. Summum,*
  555 U.S. 460 (2009) .................................................................22

*Quern v. Jordan,*
  440 U.S. 332 (1979) .........................................................32, 33

*Ramirez v. Collier,*
  595 U.S. 411 (2022) .................................................................26

*Santa Fe Independent School District v. Doe,*
  530 U.S. 290 (2000) ...........................................................4, 5

*School District of Abington Township v. Schempp,*
    374 U.S. 203 (1963) ................................................................... 9

*Shurtleff v. City of Boston,*
    596 U.S. 243 (2022) ......................................................... 19, 27

*Staley v. Harris County,*
    461 F.3d 504 (5th Cir. 2006) ................................................. 8

*Staley v. Harris County,*
    485 F.3d 305 (5th Cir. 2007) ..................................... 2, 3, 4, 7

*Steel Co. v. Citizens for Better Env't,*
    523 U.S. 83 (1998) ................................................................. 10

*Stone v. Graham,*
    449 U.S. 39 (1980) ......................................... 3, 10, 15, 23, 24

*Stone v. Graham,*
    599 S.W.2d 157 (Ky. 1980) ................................................. 24

*Summit Med. Assocs., P.C. v. Pryor,*
    180 F.3d 1326 (11th Cir. 1999) ......................................... 12

*Tex. All. for Retired Ams. v. Scott,*
    28 F.4th 669 (5th Cir. 2022) .............................................. 13

*Town of Greece v. Galloway,*
    572 U.S. 565 (2014) ....................................................... 27, 28

*Turtle Island Foods, S.P.C. v. Strain,*
    65 F.4th 211 (5th Cir. 2023) .............................................. 16

*United States v. L.A. Tucker Truck Lines, Inc.,*
    344 U.S. 33 (1952) ................................................................... 4

*United States v. Navarro,*
54 F.4th 268 (5th Cir. 2022) ................................................................ 23

*Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.,*
454 U.S. 464 (1982) .............................................................................. 8

*Van Orden v. Perry,*
2002 WL 32737462 (W.D. Tex. Oct. 2, 2002) ................................. 8, 24

*Van Orden v. Perry,*
545 U.S. 677 (2005) ......................................... 2, 11, 22, 23, 24, 30, 31

*W. Va. State Bd. of Educ. v. Barnette,*
319 U.S. 624 (1943) ............................................................................ 21

*Wallace v. Jaffree,*
472 U.S. 38 (1985) .............................................................................. 25

*Wash. State Grange v. Wash. State Repub. Party,*
552 U.S. 442 (2008) ....................................................................... 15, 17

*Whole Woman's Health v. Jackson,*
595 U.S. 30 (2021) .............................................................................. 12

*Wisconsin v. Yoder,*
406 U.S. 205 (1972) ............................................................................ 28

**Statutes**

La. R.S. § 17:22 .................................................................................... 13

La. R.S. § 17:2124 ..................................................................... 14, 24, 30

La. R.S. § 17:21244 .............................................................................. 22

**Other Authorities**

ACLU Letter (Jan. 6, 2025),
    https://tinyurl.com/32hzhmsx ................................................................ 32

*H.B. 71 Guidance for Louisiana Schools*,
    Office of the Attorney General (Jan. 3, 2025),
    https://tinyurl.com/bdd3sutd ................................................................ 1

**INTRODUCTION**

Plaintiffs do not dispute that no court has ever expressly found Article III jurisdiction to adjudicate a First Amendment challenge to religious displays no plaintiff has seen. There is no reason or need for this Court to be the first, particularly now that the Attorney General has issued guidance,[1] which schools are poised to implement. "[A] more concrete controversy" will soon arise and allow the courts to resolve "issues of broad importance" presented by H.B. 71 in a real case. *Doe v. Tangipahoa Par. Sch. Bd.*, 494 F.3d 494, 499 (5th Cir. 2007) (en banc). That thus "spares this court from issuing a largely hypothetically-based ruling." *Id.* That threshold issue requires reversal and dismissal of this lawsuit. And although Defendants are happy to win on the merits, too, jurisdiction is all the Court need address.

**ARGUMENT**

**I.  THE DISTRICT COURT LACKS SUBJECT MATTER JURISDICTION.**

**A. This Case Is Not Ripe.**

Plaintiffs' claims are unripe because no H.B. 71 display exists in Plaintiffs' schools, no Plaintiff has seen one there, and no Plaintiff has

---

[1] *H.B. 71 Guidance for Louisiana Schools*, Office of the Attorney General (Jan. 3, 2025), https://tinyurl.com/bdd3sutd.

any way of knowing when and how a display might appear. Because "detail is key" in Establishment Clause cases, *McCreary County v. ACLU of Ky.*, 545 U.S. 844, 867–68 (2005), display challenges require a "fact-intensive and context-specific analysis" that cannot be conducted without evidence regarding the display's location and context. *Staley v. Harris County*, 485 F.3d 305, 309 (5th Cir. 2007) (en banc). That is why the en banc Court has already found a challenge to a future display unripe. *Id.* Plaintiffs cite no contrary case.

Instead, Plaintiffs insist no facts are needed because H.B. 71 requires that the Ten Commandments be displayed on school walls. Resp.24–25. In other words, *all* Ten Commandments displays are unconstitutional, regardless of context.

But "Supreme Court decisions addressing the constitutionality of Ten Commandments displays" *require* information about "context." *Staley*, 485 F.3d at 308–09. Context is why the Court reached different results in two Ten Commandments cases decided the same day. *Compare McCreary*, 545 U.S. at 868, 870 (striking down Ten Commandments display standing first "alone" and then as part of a religiously-focused display), *with Van Orden v. Perry*, 545 U.S. 677, 691 (2005) (upholding Ten

Commandments display with same text as H.B. 71 when placed alongside other monuments "representing the several Strands in [Texas'] political and legal history"). And context is how the Court has explained its only other Ten Commandments case, which likewise involved schools. *See Stone v. Graham*, 449 U.S. 39, 41–42 (1980). As *McCreary* recounts, "*Stone* stressed the significance of integrating the Commandments into a secular scheme to forestall the broadcast of an otherwise clearly religious message." 545 U.S. at 868. That is, the *Stone* displays' "isolated exhibition did not leave room even for an argument that secular education explained their being there." *Id.* at 867. Here, whether the displays will be "isolated" or "integrat[ed] … into a secular scheme" is precisely what Plaintiffs do not yet know.

Plaintiffs insist *Staley* is inapplicable because they know more about H.B. 71 displays than the *Staley* plaintiff knew about the *Staley* monument. *See* Resp.27–28. But the *Staley* Court knew everything about the appearance and contents of the monument. Br.27–28. And the County specifically "pledged to display the monument again after the renovations." *Staley*, 485 F.3d at 313. Only the display's *context* had yet to be decided when the case was heard. *See id.* at 309. That inability to

evaluate context made any challenge to the future redisplay of the monument unripe. *Id.* That is even truer here.

Unable to distinguish *Staley*, Plaintiffs suggest that two *Lemon*-era cases support finding ripeness. Resp.29. But neither case addressed Article III or religious displays, and this Court "is not bound by a prior exercise of jurisdiction in a case where [jurisdiction] was not questioned and it was passed sub silentio." *Doe*, 494 F.3d at 498 (quoting *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952)). Moreover, in *Lee*, the plaintiff had *already encountered* prayer at a prior ceremony and was all but "certain," based on stipulated facts, to encounter it again. *Lee v. Weisman*, 505 U.S. 577, 584 (1992). So *Lee* cannot support ripeness here where Plaintiffs have never confronted an H.B. 71 display. *See Doe*, 494 F.3d at 498 & n.7.

Meanwhile, in *Santa Fe Independent School District v. Doe*, the Court acknowledged "that until a student actually delivers a solemnizing message under the latest version of the policy, there can be no certainty" that any invocation would be constitutionally problematic. 530 U.S. 290, 313 (2000). The Court allowed the facial challenge only because the policy had "an unconstitutional purpose" to advance religion under *Lemon. Id.*

at 314–15. Thus, it was the policy's failure under the now-abandoned *Lemon* test—not the eventuality of encountering prayer—that conceivably made the case ripe. *See id.* at 316. With *Lemon* now abrogated, *Santa Fe* cannot support ripeness here. *Cf. Barber v. Bryant*, 860 F.3d 345, 354 (5th Cir. 2017) ("Neither the religious-exercise cases generally, nor *Santa Fe* specifically, provides support for these plaintiffs' standing.").

## B. Plaintiffs Lack Article III Standing.

### 1. Plaintiffs' theory of imaginary offended-observer standing is not viable.

For the same reasons, Br.30–34—*i.e.*, having never confronted an H.B. 71 display—Plaintiffs lack standing.

Plaintiffs cite imaginary injury from future confrontation, but their position finds no support besides *Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274 (5th Cir. 1996)—an opinion that did not address displays and that has been repudiated by this Court's *en banc* precedents. *See* Br.31–32. So Plaintiffs invoke *Lee*—which (again) not only "did not reach" standing, *Doe*, 494 F.3d at 498 n.7, but also (unlike here) involved actual, ongoing encounters.

Plaintiffs' other cited cases supply out-of-context quotes. Although *Doe* acknowledged the general rule that standing may be based on a

"threatened injury," this Court unequivocally required "proof" that the plaintiffs "were exposed to" religious exercise to establish standing. *Id.* at 496–97. Because the *Doe* plaintiffs, like Plaintiffs here, had not actually encountered anything, they lacked standing. *See id.* at 497.

Similarly, *Barber* acknowledged the possibility of standing based on impending future injuries in other contexts. *See* 860 F.3d at 356–57. But its *Establishment Clause* standing analysis explains that "[i]n cases involving religious displays and exercises, we have required an encounter with the offending item or action to confer standing." *Id.* at 353. The reason is that, unlike other cognizable injuries, merely encountering something offensive already "represent[s] the outer limits" of Article III, *id.*— so merely being worried about a *future* encounter surpasses those limits.

Finally, *Freedom From Religion Foundation, Inc. v. Mack*'s statement that a plaintiff seeking prospective relief "must show that future confrontation is substantially likely" arises in the Court's discussion of an "ongoing confrontation" with the challenged prayer practice. 49 F.4th 941, 949 (5th Cir. 2022). In other words, although the *Mack* plaintiff had repeatedly confronted the prayer practice ("about ten times"), he needed to show he would *continue* to confront it; otherwise, "his claim may be

moot." *Id.* at 947, 949 (citing *Staley*). It is thus perplexing for Plaintiffs to appropriate this quote to claim standing to challenge a display they have not seen and whose contours they cannot know. Indeed, far from sanctioning *future*-offended-observer standing, *Mack* reiterates *Barber*'s hesitations about the propriety of *current*-offended-observer standing. *Id.*

Plaintiffs' lack of a concrete injury now does "not foreclose the possibility that" they may "be able to" satisfy that requirement in the future. *Barber*, 860 F.3d at 358. The Attorney General issued H.B. 71 guidance, and displays will soon be placed on school walls around the State. *Supra* n.1. Once Plaintiffs actually encounter an H.B. 71 display, they can try to satisfy standing. "[B]ut the federal courts must withhold judgment unless and until" that happens. *Barber*, 860 F.3d at 358.

### 2. The Court's offended-observer precedents are wrong and should be reconsidered.

As explained in Defendants' opening brief, Br.34–37, post-*Lemon*, the already-unprincipled "'offended observer' theory of standing has no basis in law." *Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 29, 80 (2019) (Gorsuch, J., concurring). The district court's standing analysis rests on this theory. ROA.1624 ("Plaintiffs face an *imminent*" "encounter with the offending display" and "this encounter is real and not hypothetical or

speculative."); ROA.1651 ("risk of a future encounter by the Plaintiff children … is 'certainly impending'").

Plaintiffs distance themselves from the district court, claiming they "do not depend on this form of standing" because their alleged injuries "go far beyond the right of 'observers' to be free from 'offense.'" Resp.33–34.

This is a typical offended-observer word game. By replacing "offense" with "coercive injury" to a "captive audience," Resp.34, Plaintiffs are attempting to re-label the "psychological consequence presumably produced by observation of conduct with which one disagrees," *Am. Legion*, 588 U.S. at 82 (Gorsuch, J.) (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 485 (1982)). *See, e.g.*, *Staley v. Harris County*, 461 F.3d 504, 507 (5th Cir. 2006) (alleging injury stemmed from encountering the Bible display's "advance[ment of] Christianity"); *Van Orden v. Perry*, 2002 WL 32737462, at *2 (W.D. Tex. Oct. 2, 2002) (alleging injury stemmed from observing a Ten Commandments monument "symboliz[ing] a state policy to favor the Jewish and Christian religions over other religions and over non-believers"). Whatever one calls it, psychological harm like Plaintiffs

allege is simply "not an injury-in-fact sufficient to confer standing under Art. III." *Am. Legion*, 588 U.S. at 82 (Gorsuch, J.); *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) ("Nor may citizens sue merely because their legal objection is accompanied by a strong moral, ideological, or policy objection to a government action.").

Plaintiffs accordingly pivot to a half-hearted defense of offended-observer standing. But they do not address the doctrine's rotted roots in the *Lemon* test. Br.34–35. They do not address its inconsistency with "first principles" of standing. Br.35–37. They do not address its "pernicious" and "bizarre" effects. Br.36–37. And they do not address the fact that the Supreme Court has "never endorsed" the doctrine, nor that judges on this Court have "long criticized" it. Br.37.

Instead, Plaintiffs invoke *Lee* and *School District of Abington Township v. Schempp*, 374 U.S. 203 (1963), claiming that their psychological injuries are "the very sort of injury" recognized there. Resp.34–35. But unlike this case, *Lee* and *Schempp* did not involve anticipated future harms, did not address religious displays, and were not brought by offended observers. They thus have nothing to say about alleged harms in-

flicted on those who observe (or expect to observe) passive religious displays—which explains why the district court included neither case in its standing analysis.

Nor can they rely on *Stone* or *American Legion* to justify offended-observer standing. *Contra* Resp.35–36. The parties in those cases did not raise standing, and the Court did not analyze standing before addressing the merits.[2] Both the Supreme Court and this Court recognize such "drive-by jurisdictional rulings" as nonprecedential. *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 91 (1998); *accord Doe*, 494 F.3d at 498. That is why—in *American Legion* itself—Justices reminded "lower courts" that the Supreme Court had "never" "approv[ed]" offended-observer standing and urged them to "dispose of" offended-observer cases "on a motion to dismiss." 588 U.S. at 84, 88 (Gorsuch, J., joined by Thomas, J.).

Plaintiffs suggest the Establishment Clause's "purposes" of "prevent[ing] religious coercion and religious divisiveness" warrant an Article III carve-out for offended observers. Resp.36. Eliminating offended-

---

[2] The parties in *American Legion*, moreover, appear to have asserted additional potential bases for standing. *See* 588 U.S. at 37 (noting "the expenditure of public funds" to maintain the monument). *Compare Flast v. Cohen*, 392 U.S. 83 (1968).

observer standing, they say, will "open the flood gates to government sponsored religious displays and messages." Resp.36.

Not so. Article III is independent of the merits, and courts cannot disregard its limits and "usurp the powers of the political branches" simply because they believe the cause sufficiently worthy. *El Paso County v. Trump*, 982 F.3d 332, 341 (5th Cir. 2020). The argument also fails on its own terms. Indeed, the "business of [courts] having to pass aesthetic judgment, one by one, on every public display in this country for its perceived capacity to give offense … [has] fomented 'the very kind of religiously based divisiveness that the Establishment Clause seeks to avoid.'" *Am. Legion*, 588 U.S. at 87 (Gorsuch, J.) (quoting *Van Orden*, 545 U.S. at 704 (Breyer, J., concurring)).

Plaintiffs' parade of horribles is likewise imaginary. "Abandoning offended observer standing" will not cause "colorable Establishment Clause violations" to "lack for proper plaintiffs." *Am. Legion*, 588 U.S. at 87 (Gorsuch, J.) (providing examples). It "will mean only a return to the usual demands of Article III, requiring a real controversy with real impact on real persons to make a federal case out of it." *Id.*

## C. Defendants Brumley and BESE Members Have Sovereign Immunity.

In all events, Plaintiffs cannot overcome Brumley and BESE members' immunity. Br.38–40. Responding to Defendants' point that there is no ongoing violation of federal law, Plaintiffs claim the *Ex parte Young* exception must be available for pre-enforcement challenges and cite a case challenging a statute that would punish those who perform certain abortions. Resp.37–38 (citing *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1338 (11th Cir. 1999)). But, unlike the plaintiffs and statute at issue in *Summit Medical*, Plaintiffs are not subject to H.B. 71: It does not prohibit them from doing anything; it does not require them to do anything; and it does not allow any action to be taken against them. That means that neither Brumley nor BESE members can *ever* enforce H.B. 71 *against Plaintiffs. See Whole Woman's Health v. Jackson*, 595 U.S. 30, 45–46 (2021) (discussing "official[s] who may or must take enforcement actions *against the petitioners* if they violate [Texas law]") (emphasis added)); *Ex parte Young*, 209 U.S. 123, 155–56 (1908) (allowing suits against state officials "who threaten … proceedings … *to enforce against parties affected* an unconstitutional act" (emphasis added)). The *Ex parte Young* exception thus does not apply.

Even if that were not so, Brumley and BESE members lack the requisite enforcement authority under H.B. 71. Br.39–40. Plaintiffs attempt to dispute this (for Brumley) by pointing to an entirely separate chapter of the Education Code that describes Brumley's general duty to "implement the policies and programs of the board and the laws affecting schools under the jurisdiction of the board." Resp.40 (quoting La. R.S. § 17:22(3)). But this Court has already rejected such a maneuver. *See Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669, 673–74 (5th Cir. 2022). The *Scott* plaintiffs argued that the Texas Secretary of State's "'expansive duties' in enforcing election laws" generally gave him the requisite authority to enforce a Texas straight-ticket voting law. *Id.* at 674. But the Court held that "[m]ore is needed—namely, a 'connection to the enforcement of the particular statutory provision that is the subject of the litigation.'" *Id.* So too here: Brumley's "general duties under the [Louisiana Education] Code fail to make [him] the enforcer of specific [education] code provisions." *Id.*

As to BESE members, Plaintiffs invoke *Jackson v. Wright*, 82 F.4th 362 (5th Cir. 2023), arguing that H.B.71's mention of BESE members' duties provides the needed "scintilla of enforcement." Resp.38–39. But

*Jackson* recognizes that this scintilla must be more than an official's "general duty to see that the laws of the state are implemented." 82 F.4th at 367. BESE members' only task in H.B. 71 is to "adopt rules and regulations … to ensure the proper implementation" of H.B. 71. La. R.S. § 17:2124 (B)(6)(a). And the "authority to promulgate" a policy "is not the power to enforce that policy." *Haverkamp v. Linthicum*, 6 F.4th 662, 670 (5th Cir. 2021) (per curiam). The key element—"compulsion or constraint"—is entirely missing. *City of Austin v. Paxton*, 943 F.3d 993, 1001–02 (5th Cir. 2019).

## II. PLAINTIFFS FAIL TO STATE A CLAIM.

### A. H.B. 71 Does Not Facially Violate the Establishment Clause.

#### 1. The facial standard is outcome-determinative.

If the Court reaches the merits, the "rigorous" standard for facial challenges resolves this case. *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024). As Plaintiffs now concede, success on their facial challenge requires demonstrating that "every hypothetical application of" H.B. 71 violates the Establishment Clause. Resp.41–42. *Compare* Br.44–45. But "[i]t is not difficult to conceive of" H.B. 71 displays that fully satisfy the Establishment Clause. *Wash. State Grange v. Wash. State Repub. Party*,

552 U.S. 442, 456 (2008). Even standing alone, that is "fatal to [Plaintiffs'] facial challenge." *Id.* at 456–57 (rejecting facial challenge because "the ballot could conceivably be printed in such a way as to eliminate the … perceived threat to the First Amendment").

Indeed, the State's illustrations defeat each of Plaintiffs' theories. Plaintiffs say *Stone* is "controlling," Resp.42—but the *Stone* displays, unlike the illustrations, "stood alone, not part of an arguably secular display." *McCreary*, 545 U.S. at 868. Plaintiffs fear H.B. 71 displays will be religiously "coercive," Resp.47—but no one feels compelled to venerate or obey, say, descriptions of government architecture. Br.58. And while Plaintiffs say H.B. 71 "adopts and mandates" a "Protestant text," Resp.51–53, no displays the State has offered claim H.B. 71's version is uniquely authoritative; indeed, one expressly notes that "different faith traditions adopt different versions." Br.13; *see Wash. State Grange*, 552 U.S. at 456 (facial challenge defeated because as-printed "ballot could include prominent disclaimers" "that would eliminate any real threat of voter confusion").

Plaintiffs embrace the district court's assertion that Defendants' illustrations do not comply with H.B. 71 because "the Decalogue was not

'printed in a large, easily readable font.'" ROA.1714–15; Resp.21. But this conclusion is simply wrong: The Commandments *are* easily readable. This Court can see as much simply by looking at the record on appeal, ROA.480–94, bearing in mind that the minimum size of an H.B. 71 display ("eleven inches by fourteen inches") is *larger* than these proposals printed on letter-size paper. And the Attorney General has recommended that displays appear as large as 18 inches by 24 inches. *Supra* n.1.

More importantly, a poster's "compliance" is, of course, a question of Louisiana law—and under the Supreme Court's well-established *Pennhurst* decision, courts "may not grant injunctive relief against [state] defendants on the basis of state law." *Daves v. Dallas County*, 64 F.4th 616, 635 n.40 (5th Cir. 2023). Indeed, in adjudicating a facial challenge, courts must "lend … weight to the State's interpretation of the statute," even (if necessary) "accept[ing]" a "narrowing construction" that would "preserve its constitutionality" provided an alternative reading is not "the *only* way to read the Act." *Turtle Island Foods, S.P.C. v. Strain*, 65 F.4th 211, 220–21 (5th Cir. 2023).

At minimum, the district court's interpretation of the "large, easily readable" requirement is not the "*only* way" to read it. *Id.* The district

court seemed to take "easily readable" to mean "easily readable" to a judge with "bad eyes" who, "granted," is sitting "ten feet" away. *See* ROA.2520:7–21. It is difficult to understand the district court's reading as an especially likely reading of H.B. 71, much less as the only plausible one. So "in fairness to the voters of the State of [Louisiana] and in deference to the executive and judicial officials who are charged with implementing" H.B. 71, this Court must consider the State's illustrative displays, *Wash. State Grange*, 552 U.S. at 456—which require reversal.

### 2. H.B. 71 implicates none of the historical hallmarks of an establishment.

As explained in the opening brief, H.B. 71 displays do not run afoul of the Establishment Clause because they implicate none of the historical hallmarks of a religious establishment. Br.41–45; Eagles Br.4–19.

That is likely why Plaintiffs attempt to flip the burden of proof when addressing history. Rather than acknowledge Plaintiffs' burden to show that H.B. 71 displays resemble a historical establishment, they insist that Defendants must identify a deeply rooted tradition of analogous displays. Resp.55 n.10. Plaintiffs' theory is nonsensical. It cannot be that *every* government practice is presumptively unlawful unless affirmatively supported by a deeply rooted tradition. The Establishment Clause

prohibits *religious establishments*; it does not prohibit doing anything new that touches religion. *Cf. N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 32–34 (2022) (shifting burden of showing consistency with regulatory tradition to government only *after* concluding that "the plain text of the Second Amendment protects [plaintiffs'] proposed course of conduct"). It is therefore unsurprising that even the district court did not buy this argument. ROA.1743–44 (citing *Firewalker-Fields v. Lee*, 58 F.4th 104, 123 n.7 (4th Cir. 2023)); *see* Br.43 (same).

Plaintiffs' other efforts to evade the result required by the hallmarks fare no better.

**Coercion.** Plaintiffs claim H.B. 71 is "unconstitutionally coercive" because "students will be subjected to displays of the Ten Commandments." Resp.45–50. Defendants agree that (consistent with the hallmarks) certain forms of "coercion" are prohibited by the Establishment Clause. Br.42–43. The trouble for Plaintiffs is that the relevant coercion is coercion "to *attend church*" or otherwise "to engage in 'a *formal religious exercise*.'" *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 537 (2022) (emphases added). And as this Court has already held, "the mere display on public property of [a religious symbol] is in no meaningful sense either

a religious activity or coercive." *Briggs v. Mississippi*, 331 F.3d 499, 505 (5th Cir. 2003); *see Shurtleff v. City of Boston*, 596 U.S. 243, 286–87 (2022) (Gorsuch, J., concurring) ("hallmarks reflect forms of coercion," but "[n]o one at the time of the founding is recorded as arguing that the use of religious symbols in public contexts was a form of establishment" (cleaned up)).

Plaintiffs say the difference here is that students are a "captive audience." Resp.45. But merely being in the vicinity of a religious symbol is not *ipso facto* a formal religious exercise, whether one is a passer-by, tourist, commuter, or student. Indeed, passive religious imagery is frequently upheld despite "captive audiences" like those Plaintiffs invoke. Litigants, witnesses, and government employees are frequently compelled to appear in government buildings featuring the Ten Commandments. Br.7–9. The plaintiff in *Murray v. City of Austin* had to "confront[]" a cross if he wanted to visit municipal buildings or pay his "utility bills." 947 F.2d 147, 150 (5th Cir. 1991). And citizens must be open to seeing "In God We Trust" if they want to engage in the "essentially obligatory" task of "using currency." *Mayle v. United States*, 891 F.3d 680, 685 (7th Cir. 2018).

Moreover, Plaintiffs' effort (at 48) to collapse any distinction between "silent" and verbal "reading and meditation on scripture" is a red herring; the issue is that H.B. 71 displays will simply hang on a wall, compelling no one to attend to them at all, silently or otherwise.

Plaintiffs say that even if they are not actually "*required* to engage in" religious exercise, "children" are especially "vulnerable" to "subtle and indirect" "pressure." Resp.45–50 (quoting *Lee*, 505 U.S. at 593). But this argument does no additional work because "the [Supreme] Court has limited its concern about psychological coercion to religious exercises, specifically prayer." *Croft v. Perry*, 624 F.3d 157, 169 (5th Cir. 2010) (discussing *Lee*); *Doe v. Beaumont Indep. Sch. Dist.*, 240 F.3d 462, 470 (5th Cir. 2001) ("If no religious *activity* is at issue, any speculation as to whether students might feel pressured to participate is irrelevant." (emphasis added)). Plaintiffs simply ignore these dispositive cases—even as they parrot language about "peer pressure" and "emulation of teachers" that on its face presupposes a challenge to some *activity* in which peers and teachers are engaging. *Cf.* Resp.45–46. Unsurprisingly, none of Plaintiffs' cases find impermissible coercion arising from passive religious displays.

In short: Plaintiffs' argument is like saying that because the Jehovah's Witnesses in *Barnette* could not be coerced to pledge allegiance to the flag, they also had a First Amendment right to demand that the flag be taken down from the classroom. *See W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 629 (1943) (explaining that Witnesses "consider that the flag is an 'image'" violating the Ten Commandments). But nothing in *Barnette* "interfere[s] with or den[ies] rights of others" to salute the flag. *Id.* at 630. Observance of a passive display—be it an American flag or an H.B. 71 display—is thus not coercive.

**Discrimination.** Next, Plaintiffs claim that H.B. 71 violates "the principle of 'denominational nondiscrimination'" by "mandat[ing]" a "particular version of the Ten Commandments" that is "Protestant." Resp.51–53. But even if this characterization of H.B. 71's text were accurate,[3] the Supreme Court has explicitly held that a religious display is permissible even if it consists of one religion's "preeminent" symbol. *Am.*

---

[3] It is not; as Defendants have explained, H.B. 71's Commandments language was designed to be "nonsectarian." Br.57 n.7. Meanwhile, Plaintiffs' theory that H.B. 71's text is "Protestant" relies largely on their expert's blatantly anti-Catholic view that "the Catholic version [of the Ten Commandments] omits the graven images aspect" because "in Catholicism … you do have idols." ROA.2394:7–23; *but see* Conscience Project Br.16 (explaining that the "Catholic Douay-Rheims version," which "would have been readily available to drafters of the text in question," *does* "warn against making 'graven images'").

*Legion*, 588 U.S. at 38. Meanwhile, Plaintiffs fail to cite a single case in which this "denominational nondiscrimination" principle provided the basis for striking down a passive religious display. *Cf. Glassroth v. Moore*, 335 F.3d 1282, 1299 n.3 (11th Cir. 2003) (suggesting that denominational differences "can have … implications" under the now-abandoned *Lemon* test).

Indeed, the text of the Commandments in H.B. 71 is *identical* to that of the monument already upheld by the Supreme Court in *Van Orden*. Br.57. Plaintiffs try to downplay this by noting the *Van Orden* monument was created and donated by a private organization. Resp.52–53. But the same will likely be true of any H.B. 71 display. La. R.S. § 17:21244(B)(5). Moreover, Plaintiffs offer no doctrinal reason why this distinction could theoretically matter. And under binding precedent, it does not matter: "Just as government-commissioned and government-financed monuments speak for the government, so do privately financed and donated monuments that the government accepts and displays to the public on government land"; both "must comport with the Establishment Clause." *Pleasant Grove City v. Summum*, 555 U.S. 460, 468, 470–71 (2009). Here—as *Van Orden* demonstrates—both do.

**Stone**. Finally, Plaintiffs wrongly insist that *Stone* remains "binding" even after *Kennedy*. Resp.44.[4] But even if that were so, *Kennedy*'s definitive abandonment of *Lemon* at minimum means this Court still could not *extend Stone*'s reasoning to other facts. Br.50–51; Kentucky Br.14–15. And as Defendants have explained, this case is factually distinct. Br.51–53.

In response, Plaintiffs try to recharacterize *Stone* as not a *Lemon* case after all, claiming it only "supposedly relies on" the *Lemon* test. Resp.43. But "*Stone* was all about—and only about—*Lemon*"; it "can be read no other way." Kentucky Br.5. *Stone* gave exactly one doctrinal reason why the Kentucky law at issue was unconstitutional: because it "had no secular legislative purpose" under the first part of the "three-part test" "announced" in *Lemon*. 449 U.S. at 40–41. And while *Stone* may have also "relied" on earlier "school prayer cases," Resp.43–44 (quoting *Van Orden*, 545 U.S. at 690–91 (plurality)), it did so to *support* its application of

---

[4] Plaintiffs insist that Defendants conceded that *Stone* binds this Court. Resp.11–12 n.2. As Defendants explained, Br.50, that is not true. Moreover, Plaintiffs twist the transcript below, which makes clear that its counsel was willing to assume "for purposes of this discussion," ROA.2519—*i.e.*, with a district judge who indicated he would follow *Stone*—that *Stone* remained good law. In all events, it is well-settled that this Court is not bound by concessions or stipulations on matters of law. *E.g.*, *Colorado Repub. Fed. Campaign Comm. v. FEC*, 518 U.S. 604, 622 (1996) (plurality op.) (collecting cases); *United States v. Navarro*, 54 F.4th 268, 274 n.3 (5th Cir. 2022).

*Lemon*'s purpose prong. Neither *Stone* nor the *Van Orden* plurality re-motely suggests that those cases provided an extra-*Lemon* basis requir-ing *Stone*'s result. In fact, the *Van Orden* plurality says the opposite: "Nor does anything suggest that *Stone* would extend to displays of the Ten Commandments that lack a 'plainly religious,' 'pre-eminent purpose.'" *Van Orden*, 545 U.S. at 691 n.11.

Plaintiffs also insist that this case and *Stone* are alike because the Kentucky statute in *Stone* did not "require[]" the Ten Commandments to be displayed alone. Resp.43. But the *Stone* statute certainly *contemplated* such displays. In fact, that was exactly how it had been implemented—through "15,000 framed copies" (*see* Br.51) placed in classrooms across the State with standalone displays. *Stone v. Graham*, 599 S.W.2d 157, 159 (Ky. 1980) (opinion of Lukowsky, J.); Kentucky Br.3–4; *compare* La. R.S. § 17:2124(B)(4). That is why the Supreme Court and other circuits have repeatedly understood *Stone* as a case about the "isolated exhibi-tion" of the Ten Commandments. *McCreary*, 545 U.S. at 867; Kentucky Br.9–10.

As for H.B. 71's context statement, Plaintiffs say it is "inaccurate" and "serves no edifying purpose." Resp.42–43. But the law "does not require [courts] to evaluate the quality or sufficiency of the historical analysis embodied in [the] display." *Books v. Elkhart County*, 401 F.3d 857, 866 (7th Cir. 2005). Whether Plaintiffs find it edifying or not, H.B. 71 (unlike the *Stone* law) actually and plausibly asserts that the Legislature had secular historical and educational purposes. Br.52. And even in the *Lemon* era, "[i]f a legislature expresse[d] a plausible secular purpose," "courts" were to "generally defer to that stated intent." *Wallace v. Jaffree*, 472 U.S. 38, 74–75 (1985) (O'Connor, J., concurring); *see McCreary*, 545 U.S. at 871 (rejecting "statements of purpose … presented only as a litigating position," with no "authorizing action by the Counties' governing boards").

### 3. H.B. 71 fits within longstanding tradition.

Even if H.B. 71 implicated the hallmarks (it does not), it would nonetheless be constitutional because it fits within longstanding tradition. That is so in light of (1) the "'broader tradition' of "'graphic manifestations' of 'our religious heritage'" on public property and (2) the lengthy tradition of using the Ten Commandments in public schools in

particular. Br.45–49; *see* Eagles Br.20–41; America First Policy Inst. Br.12–19.

Plaintiffs' response wrongly ignores the broader tradition. Plaintiffs instead focus entirely on "the use of the Ten Commandments in public education," claiming this is a "factual matter" resolved by their putative expert's testimony. Resp.53–54. Indeed, Plaintiffs say it is "improper" for the Court to look beyond Professor Green to consider historical materials cited by Defendants' *amici*. Resp.59 n.13.

But Plaintiffs have it exactly backwards. A practice's fit with history is a "legal inquiry" involving the sort of "reasoning by analogy" that is "a commonplace task for any lawyer or judge"—not a fact question for experts. *Bruen*, 597 U.S. at 25 n.6, 28–29. And the Supreme Court's history-focused opinions frequently invoke *amicus* briefs—*not* experts. *E.g.*, *id.* at 27 (parsing "historical materials" invoked by "respondents and their *amici*"); *Ramirez v. Collier*, 595 U.S. 411, 427 (2022) (finding "rich history" of relevant practice, citing *amicus* brief); *Marsh v. Chambers*, 463 U.S. 783, 789 n.11 (1983) (similar).

To be clear, Defendants' position is that, by identifying the hallmarks, the Supreme Court has already done the relevant historical

work—such that this Court need go no further to resolve this case. *See Shurtleff*, 596 U.S. at 285 (Gorsuch, J.) (hallmarks meant to guide "busy local officials and lower courts"). But if the Court found it necessary to look beyond the hallmarks, it could rely on Defendants' *amici*—especially since Plaintiffs' expert should have been excluded in the first place as unhelpful and unreliable. Br.59–62.

Plaintiffs also complain that some historical textbooks including the Commandments "were used prior to incorporation of the Establishment Clause to the states." Resp.56 n.11. But the Court's tradition-focused Establishment Clause cases have routinely looked to pre-incorporation practices to illuminate the Clause's scope. *See*, *e.g.*, *Am. Legion*, 588 U.S. at 55–56 (state motto and flag adopted in 1864 and 1904); *Marsh*, 463 U.S. at 789–90 (state prayer practice begun in 1855); *McGowan v. Maryland*, 366 U.S. 420, 437–38 (1961) (state Sunday closure law from "early in the seventeenth century"). That is because the relevant question is whether a practice can "coexist with the principles of disestablishment and religious freedom," *Town of Greece v. Galloway*, 572 U.S. 565, 578 (2014) (cleaned up)—and the process of disestablishment in the States was completed not at the Supreme Court's recognition

of incorporation (*i.e.*, 1947) but over a century before (in 1833), *see id.* at 606 (Thomas, J., concurring in part and concurring in the judgment). As all here agree, that is exactly when *McGuffey's Readers* rose to prominence. *See* Br.47–48.

### B. H.B. 71 Does Not Facially Violate the Free Exercise Clause.

Plaintiffs' novel free-exercise claim is even weaker. As Plaintiffs do not dispute, *no court* has ever found that a passive religious display violates the Free Exercise Clause. Br.63. For good reason: Passive displays do not burden religious exercise.

Whether a law burdens religious exercise is a question of law—not fact.[5] *See New Doe Child #1 v. Congress of U.S.*, 891 F.3d 578, 589–90 (6th Cir. 2018). *Non-religious* individuals' religious exercise is, of course, never burdened—because they do not exercise a religion. *See Wisconsin v. Yoder*, 406 U.S. 205, 215 (1972) ("[T]o have the protection of the Religion Clauses, the claims must be rooted in religious belief.").

---

[5] Plaintiffs' critique that Defendants "make no argument as to why the court's findings of fact as to Plaintiffs' *sincerely held religious beliefs* are clearly erroneous" is puzzling. Resp.61 (emphasis added). Defendants have never challenged the sincerity of the religious Plaintiffs' beliefs. Their point is that, no matter how sincere, those beliefs are not burdened by H.B. 71.

*Religious* individuals' religious exercise is burdened when the government "places any restriction on what [individuals] may believe or what [they] may do." *Bowen v. Roy*, 476 U.S. 693, 699 (1986). Here, however, Plaintiffs do not (and cannot) argue that the State has placed a restriction on what students or parents may believe or do. Instead, they say that, by requiring schools to post the Ten Commandments, H.B. 71 "pressure[s]" and "coerce[s]" students to violate their consciences and suppress their religious beliefs and practices. Resp.62. But as this Court held in *Murray*, mere non-participatory exposure to religious imagery is not coercive or otherwise burdensome. 947 F.2d at 152 (rejecting alleged "subtle coercion" of a passive display as distinct from "actual interference" or "actual compulsion").

Plaintiffs brush *Murray* off because it does "not involve the school context." Resp.61 n.14. But plenty of school-context cases apply the same non-participatory exposure principles. *Croft* rejected parents' claim that recitation of the Pledge "exert[ed] psychological coercion on dissenting students to participate." 624 F.3d at 169. And Plaintiffs' attempt to distinguish this case from parents' free-exercise challenges to what Plain-

tiffs consider "*secular* instruction" is unavailing. Resp.62 n.14. A free-exercise violation does not depend on whether *the State's* action is religious; it depends on whether *the plaintiffs'* religious conduct is impermissibly burdened.

Moreover, Plaintiffs could not possibly show that *all* of Defendants' hypothetical H.B. 71 displays, not to mention others, burden their religious exercise. Nor can Plaintiffs point to a single illustration that "induce[s] … schoolchildren to meditate upon the Commandments during the schoolday." Resp.63 (quotation omitted).

Plaintiffs also assert that H.B. 71 is "not neutral or generally applicable." Resp.63. But Plaintiffs make no argument regarding general applicability. And their invocation of legislative history does not undermine H.B. 71's neutrality. H.B. 71 codifies "the Legislature's intent to apply the decision set forth by the Supreme Court of the United States in *Van Orden v. Perry* … to continue the rich tradition and ensure that the students in our public schools may understand and appreciate the foundational documents of our state and national government." La. R.S. § 17:2124(A)(9). To advance this "secular motivation" of "shaping civic morality," *Am. Legion*, 588 U.S. at 53 (discussing *Van Orden*) (quotation

omitted), H.B. 71 uses the exact version of the Commandments approved in *Van Orden*. To the extent one legislator may *also* have been "interested in the religious aspect of the Ten Commandments," *Am. Legion*, 588 U.S. at 53; *see* Resp.5, that does not make her comments anything like the commission's "disparag[ing]" statements about an individual claimant's religion in *Masterpiece Cakeshop v. Colorado Civil Rights Commission*, 584 U.S. 617, 634–38 (2018) (cited at Resp.63 n.16).

## III. THE DISTRICT COURT ERRED BY ENTERING A PRELIMINARY INJUNCTION.

Plaintiffs' briefing also confirms that the four preliminary injunction factors collapse into the likelihood of success on the merits.

Plaintiffs' only claimed irreparable injury is the "loss of First Amendment freedoms" they allegedly suffer. Resp.64–65. Therefore, Plaintiffs concede that they experience no irreparable harm absent any First Amendment violation. No likelihood of success on the merits thus means no irreparable harm.

So too for the public-interest and balancing-of-the-equities factors: As Plaintiffs do not dispute, the public and the State have a shared interest in the enforcement of valid state laws. Br.69 (citing *E.T. v. Paxton*,

19 F.4th 760, 770 (5th Cir. 2021)). And without irreparable harm, the equities are all on Defendants' side of the balance.

## IV.  AT MINIMUM, THE INJUNCTION IS OVERBROAD.

Plaintiffs sued only the school boards governing schools that their children attend. So requiring Brumley and BESE members to provide notice of the injunction to "*all* Louisiana public elementary, secondary, and charter schools, and *all* public post-secondary education institutions," ROA.1794 (emphases added), is definitionally overbroad and an effort to achieve by other means an improper statewide injunction. Br.70–72.[6]

Plaintiffs argue the Notice Provision was just "ancillary to the prospective relief already ordered." Resp.66 (citing *Quern v. Jordan*, 440 U.S. 332, 349 (1979)). But the only relief Plaintiffs needed (and received) was an injunction against implementation in their schools—no "ancillary" relief was warranted. Moreover, unlike here, *Quern* involved a class

---

[6] So, too, with Plaintiffs' counsel's letter to non-party schools, which misleadingly tells them that (somehow) the Supremacy Clause, together with the injunction below, requires them to effectively comply with the injunction. *See* ACLU Letter (Jan. 6, 2025), https://tinyurl.com/32hzhmsx ("Because the U.S. Constitution supersedes state law, and because a federal district court has held H.B. 71 to be facially unconstitutional under the First Amendment, public-school officials may not comply with it.").

action, where notice is typically required, *see* Fed. R. Civ. P. 23(c), and an injunction requiring notice to *class* members. 440 U.S. at 349.

## CONCLUSION

The Court should reverse.

Respectfully submitted,

ERIC C. RASSBACH
JOSEPH C. DAVIS
BENJAMIN A. FLESHMAN
AMANDA L. SALZ
KELSEY BAER FLORES
THE BECKET FUND FOR
  RELIGIOUS LIBERTY
1919 Pennsylvania Ave. NW
  Suite 400
Washington, D.C. 20006

*Counsel for Appellants*
*Brumley and LSBESE Officials*

Dated:   January 10, 2025

ELIZABETH B. MURRILL
Attorney General of Louisiana

*s/Jorge Benjamin Aguiñaga*
JORGE BENJAMIN AGUIÑAGA
Solicitor General

ZACHARY FAIRCLOTH
Principal Deputy Solicitor General

OFFICE OF THE ATTORNEY GENERAL
1885 N. 3rd St.
Baton Rouge, LA 70802
(225) 506-3746
AguinagaB@ag.louisiana.gov

*Counsel for Appellants*

## CERTIFICATE OF SERVICE

I certify that on January 10, 2024, I filed the foregoing brief with the Court's CM/ECF system, which will automatically send an electronic notice of filing to all counsel of record.


/s/ J. Benjamin Aguiñaga
J. BENJAMIN AGUIÑAGA

# CERTIFICATE OF COMPLIANCE

Pursuant to Fifth Circuit Rule 32.3, the undersigned certifies that this motion complies with:

(1) the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7) because it contains 6,500 words; and

(2) the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word 2016 (the same program used to calculate the word count).

*/s/ J. Benjamin Aguiñaga*
J. BENJAMIN AGUIÑAGA

Dated:    January 10, 2024