No. 24-30706

In the United States Court of Appeals for the Fifth Circuit

DARCY ROAKE, REVEREND, ON BEHALF THEMSELVES AND ON BEHALF OF THEIR MINOR CHILDREN, REAL PARTY IN INTEREST A.V., REAL PARTY IN INTEREST S.V.; ADRIAN VAN YOUNG, ON BEHALF OF THEMSELVES AND ON BEHALF OF THEIR MINOR CHILDREN, REAL PARTY IN INTEREST A.V., REAL PARTY IN INTEREST S.V.; MAMIE BROADHURST, REVEREND, ON BEHALF OF THEMSELVES AND ON BEHALF OF THEIR MINOR CHILD, REAL PARTY IN INTEREST N.W.; RICHARD WILLIAMS, REVEREND, ON BEHALF OF THEMSELVES AND ON BEHALF OF THEIR MINOR CHILD, REAL PARTY IN INTEREST N.W.; JEFF SIMS, REVEREND, ON BEHALF OF HIMSELF AND ON BEHALF OF HIS MINOR CHILDREN, REAL PARTY IN INTEREST A.S., REAL PARTY IN INTEREST C.S. 1, REAL PARTY IN INTEREST C.S. 2; JENNIFER HARDING, ON BEHALF OF THEMSELVES AND ON BEHALF OF THEIR MINOR CHILD, REAL PARTY IN INTEREST A.O.; BENJAMIN OWENS, ON BEHALF OF THEMSELVES AND ON BEHALF OF THEIR MINOR CHILD, REAL PARTY IN INTEREST A.O.; DAVID HAWLEY, ON BEHALF OF THEMSELVES AND ON BEHALF OF THEIR MINOR CHILDREN, REAL PARTY IN INTEREST A.H., REAL PARTY IN INTEREST L.H.; ERIN HAWLEY, ON BEHALF OF THEMSELVES AND ON BEHALF OF THEIR MINOR CHILDREN, REAL PARTY IN INTEREST A.H, REAL PARTY IN INTEREST L.H.; DUSTIN MCCRORY, ON BEHALF OF THEMSELVES AND ON BEHALF OF HIS MINOR CHILDREN, REAL PARTY IN INTEREST E.M.; REAL PARTY IN INTEREST P.M., REAL PARTY IN INTEREST L.M.; GARY SERNOVITZ, ON BEHALF OF THEMSELVES AND ON BEHALF OF THEIR MINOR CHILD, REAL PARTY IN INTEREST T.S.; MOLLY PULDA, ON BEHALF OF THEMSELVES AND ON BEHALF OF THEIR MINOR CHILD, REAL PARTY IN INTEREST T.S.; CHRISTY ALKIRE, ON BEHALF OF HERSELF AND ON BEHALF OF HER MINOR CHILD, REAL PARTY IN INTEREST L.A.; JOSHUA HERLANDS, ON BEHALF OF HIMSELF AND ON BEHALF OF HIS MINOR CHILDREN, REAL PARTY IN INTEREST E.H., REAL PARTY IN INTEREST J.H.,

*Plaintiffs-Appellees,*

v.

CADE BRUMLEY, IN HIS OFFICIAL CAPACITY AS THE LOUISIANA STATE SUPERINTENDENT OF EDUCATION; CONRAD APPEL, IN HIS OFFICIAL CAPACITY

AS A MEMBER OF THE LOUISIANA STATE BOARD OF ELEMENTARY AND SECONDARY EDUCATION (LSBESE); JUDY ARMSTRONG, IN HER OFFICIAL CAPACITY AS A MEMBER OF THE LSBESE; KEVIN BERKEN, IN HIS OFFICIAL CAPACITY AS A MEMBER OF THE LSBESE; PRESTON CASTILLE, IN HIS OFFICIAL CAPACITY AS A MEMBER OF THE LSBESE; SIMONE CHAMPAGNE, IN HER OFFICIAL CAPACITY AS A MEMBER OF THE LSBESE; SHARON LATTEN-CLARK, IN HER OFFICIAL CAPACITY AS A MEMBER OF THE LSBESE; LANCE HARRIS, IN HIS OFFICIAL CAPACITY AS A MEMBER OF THE LSBESE; PAUL HOLLIS, LOUISIANA STATE BOARD OF ELEMENTARY AND SECONDARY EDUCATION; SANDY HOLLOWAY, IN HER OFFICIAL CAPACITY AS A MEMBER OF THE LSBESE; STACEY MELERINE, IN HER OFFICIAL CAPACITY AS A MEMBER OF THE LSBESE; RONNIE MORRIS, IN HIS OFFICIAL CAPACITY AS A MEMBER OF THE LSBESE; EAST BATON ROUGE PARISH SCHOOL BOARD; LIVINGSTON PARISH SCHOOL BOARD; VERNON PARISH SCHOOL BOARD; ST. TAMMANY PARISH SCHOOL BOARD,

*Defendants-Appellants.*

---

On Appeal from the United States District Court
for the Middle District of Louisiana
No. 3:24-cv-517, Hon. John W. deGravelles

---

## PLAINTIFFS-APPELLEES' SUPPLEMENTAL BRIEF FOR REHEARING EN BANC

Daniel Mach
Arijeet Sensharma
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
915 15th Street, NW, Ste. 600
Washington, D.C. 20005
(202) 675-2330
dmach@aclu.org
cl_asensharma@aclu.org

Jonathan K. Youngwood
Janet A. Gochman
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
(212) 455-2000
jyoungwood@stblaw.com
jgochman@stblaw.com

*Counsel for Plaintiffs-Appellees*
*(continued on inside cover)*

## *Additional Counsel for Plaintiffs-Appellees*

Nora Ahmed
Charles Andrew Perry
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF LOUISIANA
PO Box 56157
New Orleans, LA 70156
(504) 522-0628
nahmed@laaclu.org
aperry@laaclu.org

V. Noah Gimbel
Jordan T. Krieger
SIMPSON THACHER & BARTLETT
LLP
900 G Street, NW
Washington, D.C. 20001
(202) 636-5500
noah.gimbel@stblaw.com
jordan.krieger@stblaw.com

Patrick C. Elliott
Samuel T. Grover
FREEDOM FROM RELIGION
FOUNDATION
PO Box 750
Madison, WI 53701
(608) 256-8900
patrick@ffrf.org
sam@ffrf.org

Alex J. Luchenitser
Amy Tai
AMERICANS UNITED FOR
SEPARATION OF CHURCH & STATE
1310 L Street, NW, Ste. 200
Washington, D.C. 20005
(202) 466-3234
luchenitser@au.org
tai@au.org

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

*Roake, et al. v. Brumley, et al.*, No. 24-30706

The undersigned counsel of record certifies pursuant to Fifth Circuit Rule 27.4 and Rule 28.2.1 that the following listed persons and private entities have an interest in the outcome of this case, including all private practice lawyers and private law firms currently engaged in this litigation.

**Plaintiffs-Appellees**: Darcy Roake, Reverend, and Adrian Van Young, on behalf of themselves and their minor children, real parties in interest A.V. and S.V.; Mamie Broadhurst, Reverend, and Richard Williams, Reverend, on behalf of themselves and their minor child, real party in interest N.W.; Jeff Sims, Reverend, on behalf of himself and on behalf of his minor children, real parties in interest A.S., C.S. 1, and C.S. 2.; Jennifer Harding and Benjamin Owens, on behalf of themselves and on behalf of their minor child, real party in interest A.O.; David and Erin Hawley, on behalf of themselves and on behalf of their minor children real parties in interest A.H. and L.H.; Dustin McCrory, on behalf of himself and on behalf of his minor children, real parties in interest E.M., P.M., and L.M.; Gary Sernovitz and Molly Pulda, on behalf of themselves

i

and on behalf of their minor child, real party in interest T.S.; Christy Alkire, on behalf of herself and on behalf of her minor child, real party in interest L.A.; and Joshua Herlands, on behalf of himself and on behalf of his minor children, real parties in interest E.H. and J.H., represented by American Civil Liberties Union Foundation attorneys Daniel Mach and Arijeet Sensharma; American Civil Liberties Union Foundation of Louisiana attorneys Nora Ahmed and Charles Andrew Perry; Americans United for Separation of Church & State attorneys Alex J. Luchenitser and Amy Tai; Freedom From Religion Foundation attorneys Patrick C. Elliott and Samuel T. Grover; and Simpson Thacher & Bartlett LLP attorneys Jonathan K. Youngwood, Janet A. Gochman, V. Noah Gimbel, and Jordan T. Krieger.

**Amici**: The States of Alabama, Alaska, Arkansas, Florida, Idaho, Indiana, Iowa, Kansas, Kentucky, Mississippi, Missouri, Nebraska, Ohio, South Carolina, South Dakota, Tennessee, Utah, and West Virginia are represented by Office of the Kentucky Attorney General attorneys Russell Coleman, Matthew F. Kuhn, John H. Heyburn, and Caleb B. Childers. The Conscience Project and Professor Mark David Hall are represented by attorney Andrea Picciotti-Bayer. The America

First Policy Institute and Pastor Lorenzo Sewell are represented by attorneys Garrett Greene, Leigh Ann O'Neill, Nick Wanic, and Tyler Cochran. The Fraternal Order of Eagles is represented by Schaerr Jaffe LLP attorneys Gene C. Schaerr and Justin A. Miller, and attorney Creighton A. Thurman. The Foundation for Moral Law is represented by attorneys John Eidsmoe and Talmadge Butts. The Family Research Council is represented by Spero Law LLC attorney Christopher Mills. The Robertson Center for Constitutional Law is represented by attorneys Laura B. Hernandez and Christian B. Edmonds. America's Future, the Restoring Liberty Action Committee, the LONANG Institute, and the Conservative Legal Defense and Education Fund are represented by attorneys J. Mark Brewer, Law Offices of Joseph Miller, LLC attorney Joseph W. Miller, Pentiuk, Couvreur, & Kobiljak, P.C. attorney Kerry L. Morgan, William J. Olson, P.C. attorneys William J. Olson and Jeremiah L. Morgan, and Integrity Law Firm attorney Rick Boyer. The Louisiana State Legislators Michael Johnson, Dodie Horton, and Adam Bass are represented by Consovoy McCarthy PLLC attorneys Thomas R. McCarthy and Tiffany H. Bates and the Antonin Scalia Law School Supreme Court Clinic.

Date: December 5, 2025

/s/ Jonathan K. Youngwood

*Counsel for Plaintiffs-Appellees*

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is scheduled for January 20, 2026. Plaintiffs-Appellees agree that oral argument is warranted.

# **TABLE OF CONTENTS**

Page

CERTIFICATE OF INTERESTED PERSONS ..........................................i

STATEMENT REGARDING ORAL ARGUMENT ..................................v

INTRODUCTION.....................................................................................1

COUNTER-STATEMENT ON JURISDICTION.....................................3

COUNTER-STATEMENT OF THE ISSUES ...........................................3

COUNTER-STATEMENT OF THE CASE................................................4

I.    FACTUAL BACKGROUND...............................................................4

II.   PROCEDURAL BACKGROUND ......................................................7

III.  THE DISTRICT COURT DECISION ...............................................9

IV.   THE PANEL DECISION ................................................................11

STANDARD OF REVIEW.....................................................................12

SUMMARY OF THE ARGUMENT .......................................................13

ARGUMENT ..........................................................................................18

I.    THE DISTRICT COURT PROPERLY EXERCISED ITS
      JURISDICTION. .............................................................................18

      A.    Plaintiffs' Claims Are Ripe. ................................................20

      B.    Plaintiffs Have Standing......................................................24

            1.    Plaintiffs' asserted injuries are certainly
                  impending and sufficient to confer standing. ..............25

            2.    *Ingebretsen* remains good law and reflects long-
                  recognized standing principles permitting pre-
                  enforcement challenges to unconstitutional laws. ......27

3.   There is no need to revisit so-called "offended-observer standing." ...................................... 30

a.   Plaintiffs' injuries surpass "mere offense." ........ 30

b.   Spiritual offense from government-sponsored religious imagery or practices constitutes injury-in-fact. ................................. 33

II.   H.B. 71 IS FACIALLY UNCONSTITUTIONAL. .......................... 35

A.   HB. 71 Violates the Establishment Clause. ........................ 36

1.   *Stone* is good law. ........................................................ 36

2.   *Stone* controls. ............................................................. 37

a.   Defendants' context-based "distinctions" fail ............................................................................. 38

b.   Defendants' "distinction" based on H.B. 71's applicability to post-secondary institutions is waived and irrelevant. ................................... 43

3.   H.B. 71 is unconstitutionally coercive. ........................ 44

4.   H.B. 71 discriminates based on religious denomination ................................................................. 51

5.   Defendants' proposed "hallmarks test" is not the law and is irrelevant here. ........................................... 56

6.   H.B. 71 does not fit within any historical tradition ....................................................................... 59

B.   H.B. 71 Violates the Free Exercise Clause. .......................... 64

III.   THE DISTRICT COURT'S PRELIMINARY INJUNCTION IS CORRECT. ................................................................................ 69

CONCLUSION ...................................................................................... 71

# TABLE OF AUTHORITIES

**Cases**

*ACLU Neb. Found. v. City of Plattsmouth,*
  419 F.3d 772 (8th Cir. 2005)................................................54

*ACLU of Ohio Found., Inc. v. Ashbrook,*
  211 F. Supp. 2d 873 (N.D. Ohio Jun. 11, 2002),
  *aff'd,* 375 F.3d 484 (6th Cir. 2004) ......................................61

*ACLU v. Mercer Cnty.,*
  219 F. Supp. 2d 777 (E.D. Ky. 2002) ......................................39

*ACLU v. Mercer Cnty.,*
  432 F.3d 624 (6th Cir. 2005) ..............................................39

*Am. Legion v. Am. Humanist Ass'n,*
  588 U.S. 29 (2019)........................................................34

*Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.,*
  627 F.3d 547 (5th Cir. 2010)..............................................29

*Barber v. Bryant,*
  860 F.3d 345 (5th Cir. 2017)..........................................26, 27

*Book People, Inc. v. Wong,*
  91 F.4th 318 (5th Cir. 2024) .............................................24

*Books v. City of Elkhart,*
  235 F.3d 292 (7th Cir. 2000)..............................................54

*Boos v. Barry,*
  485 U.S. 312 (1988).......................................................49

*Bosse v. Oklahoma,*
  580 U.S. 1 (2016).....................................................12, 37

*Braidwood Mgmt., Inc. v. EEOC,*
  70 F.4th 914 (5th Cir. 2023) .............................................20

*Carson v. Makin*,
  596 U.S. 767 (2022)..........................................................56, 64

*Cath. Charities Bur., Inc. v. Wis. Lab. & Indus. Rev. Comm'n*,
  605 U.S. 238 (2025)......................................................51, 52, 56

*City of Elkhart v. Books*,
  532 U.S. 1058 (2001).............................................................50

*City of Ocala v. Rojas*,
  143 S. Ct. 764 (2023).............................................................34

*Coke v. Gen. Adjustment Bureau, Inc.*,
  640 F.2d 584 (5th Cir. 1981)..............................................18, 19

*Collins v. Yellen*,
  594 U.S. 220 (2021).............................................................24

*Cribbs Ringer v. Comal Indep. Sch. Dist.*,
  2025 WL 3227708 (W.D. Tex. Nov. 18, 2025) ...................18, 20, 21, 70

*Croft v. Perry*,
  624 F.3d 157 (5th Cir. 2010)..............................................35, 42

*Doe ex rel. Doe v. Elmbrook Sch. Dist.*,
  687 F.3d 840 (7th Cir. 2012)..............................................50, 51

*Doe v. Sch. Bd. of Ouachita Par.*,
  274 F.3d 289 (5th Cir. 2001)..............................................31, 46

*Doe v. Tangipahoa Parish Sch. Bd.*,
  494 F.3d 494 (5th Cir. 2007)..............................................25, 26

*Edwards v. Aguillard*,
  482 U.S. 578 (1987).............................................................45

*Engel v. Vitale*,
  370 U.S. 421 (1963).............................................................36

*Epperson v. Arkansas*,
  393 U.S. 97 (1968)...............................................................45

*Firewalker-Fields v. Lee,*
    58 F.4th 104 (4th Cir. 2023) ................................................................. 58

*Freedom from Religion Found., Inc. v. New Kensington Arnold Sch. Dist.,*
    832 F.3d 469 (3d Cir. 2016) .................................................................. 33

*Freedom From Religion Found., Inc. v. Mack,*
    49 F.4th 941 (5th Cir. 2022) ................................................................. 63

*Harrison v. Young,*
    48 F.4th 331 (5th Cir. 2022) ................................................................. 69

*Hilsenrath v. Sch. Dist. of the Chathams,*
    136 F.4th 484 (3d Cir. 2025) ........................................................... 57, 58

*Ingebretsen v. Jackson Pub. Sch. Dist.,*
    88 F.3d 274 (5th Cir. 1996) ............................................................ passim

*Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson Parish Gov't,*
    849 F.3d 615 (5th Cir. 2017) ........................................................... 12, 13

*Jusino v. Fed'n of Cath. Teachers, Inc.,*
    54 F.4th 95 (2d Cir. 2022), *cert. denied,* 143 S. Ct. 1056 (2023) .......... 37

*Karen B. v. Treen,*
    653 F.2d 897 (5th Cir. 1981), *aff'd mem.,* 455 U.S. 913 (1982) ............. 28

*Kennedy v. Bremerton Sch. Dist.,*
    597 U.S. 507 (2022) ........................................................................ passim

*Larson v. Valente,*
    456 U.S. 228 (1982) .............................................................................. 56

*Lee v. Weisman,*
    505 U.S. 577 (1992) ........................................................................ passim

*Lemon v. Kurtzman,*
    403 U.S. 602 (1971) .............................................................................. 14

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) .............................................................................. 24

*Lynch v. Donnelly*,
    465 U.S. 668 (1984)............................................................63

*Mahmoud v. Taylor*,
    606 U.S. 522 (2025)..................................................... passim

*Marsh v. Chambers*,
    463 U.S. 783 (1983)...................................................62, 63

*Murray v. City of Austin*,
    947 F.2d 147 (5th Cir. 1991)............................................33

*Nat'l Coal. for Men v. Selective Serv. Sys.*,
    969 F.3d 546 (5th Cir. 2020)............................................37

*Nathan v. Alamo Heights Indep. Sch. Dist.*,
    795 F.Supp.3d 910 (W.D. Tex. Aug. 20, 2025) ..............18, 49

*NLRB v. Cath. Bishop of Chi.*,
    440 U.S. 490 (1979...........................................................37

*Opulent Life Church v. City of Holly Springs*,
    697 F.3d 279 (5th Cir. 2012)............................................24

*Santa Fe Indep. Sch. Dist. v. Doe*,
    530 U.S. 290 (2000)......................................... 14, 23, 46, 57

*Sch. Dist. of Abington Twp. v. Schempp*,
    374 U.S. 203 (1963)..................................................... passim

*Shurtleff v. City of Boston*,
    596 U.S. 243 (2022)......................................... 15, 56, 57, 58

*Staley v. Harris Cnty.*,
    485 F.3d 305 (5th Cir. 2007)........................................ passim

*State v. Freedom from Religion Found., Inc.*,
    898 P.2d 1013 (Colo. 1995) .............................................54

*Stinson v. Fayetteville Sch. Dist. No. 1*,
    2025 WL 2231053 (W.D. Ark. Aug. 4, 2025) ................. passim

*Stone v. Graham*,
   449 U.S. 39 (1980)........................................................... passim

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014)............................................................ 19, 25

*Texas v. United States*,
   497 F.3d 491 (5th Cir. 2007)................................................ 20

*Thomas v. Union Carbide Agr. Prods. Co.*,
   473 U.S. 568 (1985)............................................................ 19, 20

*Town of Greece v. Galloway*,
   572 U.S. 565 (2014)............................................................ 52, 61

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021)............................................................ 16

*United States v. Runnels*,
   2022 WL 1010695 (5th Cir. Apr. 5, 2022) .......................... 68

*United States v. Vargas-Duran*,
   356 F.3d 598 (5th Cir. 2004)............................................... 69

*Valley Forge Christian College v. Americans United for
   Separation of Church & State*,
   454 U.S. 464 (1982)............................................................ 34

*Van Orden v. Perry*,
   545 U.S. 677 (2005)........................................................ passim

*Wallace v. Jaffree*,
   472 U.S. 38 (1985)............................................................. 41, 49

*Washegesic v. Bloomingdale Pub. Sch.*,
   813 F. Supp. 559 (W.D. Mich. 1993),
   *aff'd*, 33 F.3d 679 (6th Cir. 1994) .................................... 48

*Webster v. Kijakazi*,
   19 F.4th 715 (5th Cir. 2021) ............................................... 43, 44

*Whole Women's Health v. Cole*,
  790 F.3d 563 (5th Cir. 2015) ............................................................ 20

*Wisconsin v. Yoder*,
  406 U.S. 205 (1972) ................................................................ 64, 65

**Statutes**

28 U.S.C. § 1292(a)(1) .......................................................................... 3

28 U.S.C. § 1331 .................................................................................... 3

28 U.S.C. § 1343(a)(3) .......................................................................... 3

D.C. Code § 22-1115 ........................................................................... 49

La. Const. 1974, art. VIII, § 1 ............................................................. 4

La. House Bill No. 71, Act No. 676 (2024) ................................... passim

La. R.S. § 17.2124(B)(2) ...................................................................... 6

La. R.S. § 17:2124(A)(5) ...................................................................... 5

La. R.S. § 17:2124(B)(1) ...................................................................... 5

La. R.S. §§ 17:221 ............................................................................ 4, 5

La. R.S. §§ 17:233 ............................................................................ 4, 5

**Secondary Sources**

Bill Murphy, *Bible Monument's Removal Adds Twist to Appeal*,
  Hou. Chron. (Jan. 22, 2007), https://bit.ly/3AVSkdQ ......................... 21

Erik Ortiz, *Louisiana governor tells parents against Ten
  Commandments in classrooms: "Tell your child not to look"*,
  NBC News (Aug. 5, 2024), https://shorturl.at/xrM2d ......................... 49

Oxford English Dictionary (2024) ...................................................... 27

**INTRODUCTION**

The Supreme Court has long expressed "heightened concerns with protecting freedom of conscience" in public-school settings, wherein "[t]he State exerts great authority and coercive power." *Mahmoud v. Taylor*, 606 U.S. 522, 554-55 (2025) (citations omitted). Louisiana's House Bill 71, Act No. 676 ("H.B. 71" or the "Act"), exceeds the constitutional limits on that power by imposing a state-selected version of the Ten Commandments on schoolchildren for nearly every hour of every day of their public-school education. As such, the Act is both a "law respecting an establishment of religion," and "prohibiting the free exercise thereof"—precisely what the First Amendment prohibits.

First, the Act violates the Establishment Clause. In *Stone v. Graham*, 449 U.S. 39 (1980), the Supreme Court struck down a Kentucky statute substantively identical to the Act under the Establishment Clause in a pre-enforcement facial challenge. *Stone* remains the law and requires that the district court's decision invalidating H.B. 71 be affirmed.

H.B. 71 is not unconstitutional just because *Stone* controls. It is unconstitutional because it will inscribe every Louisiana teaching space,

1

K-12, with scripture commanding public-school children to revere and obey "the LORD thy GOD." Louisiana lawmakers even dictate the version of the Ten Commandments to be displayed—a Protestant rendition incompatible with Jewish and Catholic versions, as well as with the beliefs of non-Judeo-Christian families. The omnipresence of H.B. 71's religious displays will unlawfully coerce children into religious observance, and violate the Establishment Clause's prohibition against denominational preference.

Second, the Act violates the Free Exercise Clause by burdening the religious beliefs of students who may not conform to the state's preferred religious doctrine, and by usurping parents' First Amendment right to guide their children's religious development. Plaintiffs' undisputed testimony makes this clear. Yet tellingly, Defendants' Supplemental Brief scarcely addresses the merits of Plaintiffs' free-exercise claims, centering Defendants' argument on the remedy thereto instead.

As for standing and ripeness, Defendants contend that Plaintiffs cannot sue to protect their First Amendment rights until they have already been violated. That is not the law. The district court and a panel of this Court correctly decided that Plaintiffs had standing and their

claims were ripe based on the Act's extensive minimum requirements. *Mahmoud* bolstered these earlier decisions, holding that "when a deprivation of First Amendment rights is at stake, a plaintiff need not wait for the damage to occur before filing suit." 606 U.S. at 559-60.

If implemented, H.B. 71 will cause Plaintiffs irreparable harm. The rights to decide which religion, if any, to follow and which religious beliefs, if any, to adopt and practice are constitutionally reserved to individuals, parents, and families—not government officials.

## COUNTER-STATEMENT ON JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3). This Court has jurisdiction under 28 U.S.C. § 1292(a)(1).

## COUNTER-STATEMENT OF THE ISSUES

1.     Whether the district court correctly held that Plaintiffs need not await violation of their constitutional rights before their claims ripen and standing accrues.

2.     Whether the district court correctly concluded that this case is controlled by *Stone v. Graham* and that the Act is facially unconstitutional under *Stone*.

3

3.      Whether the district court correctly concluded that the Act's minimum requirements would coerce K-12 students into religious observance and reflect denominational preference in facial violation of the Establishment Clause.

4.      Whether the district court clearly erred in its factual finding that there is no longstanding history and tradition of the government permanently displaying the Ten Commandments in public schools.

5.      Whether the district court correctly concluded that displaying the Ten Commandments in all public-school classrooms burdens Plaintiffs' religious beliefs and interferes with and usurps parent-Plaintiffs' right to direct their children's spiritual development in violation of the Free Exercise Clause.

6.      Whether the district court abused its discretion in granting preliminary injunctive relief.

## COUNTER-STATEMENT OF THE CASE

## I.      FACTUAL BACKGROUND

Louisiana's Constitution directs the legislature to "establish and maintain a public educational system," La. Const. 1974, art. VIII, § 1, and the legislature has made universal participation in education

compulsory, *see* La. R.S. §§ 17:221, 17:233. Parents who do not send their children to school may be fined, imprisoned, or both. *Id.*

On June 19, 2024, Louisiana Governor Jeff Landry signed H.B. 71 into law to "includ[e] the Ten Commandments in the education of our children." La. R.S. § 17:2124(A)(5). Under the Act, "each public[-]school governing authority shall display the Ten Commandments in each classroom in each school under its jurisdiction" as of January 1, 2025. La. R.S. § 17:2124(B)(1).

The Act mandates the display of a "poster or framed document that is at least eleven inches by fourteen inches," displaying "[t]he text of the Ten Commandments" in "large, easily readable font" as its "central focus." La. R.S. § 17:2124(B)(1). The Act contains the language of the Protestant Ten Commandments, adapted from Exodus 20 of the King James Bible:

The Ten Commandments

I AM the LORD thy God.

Thou shalt have no other gods before me.

Thou shalt not make to thyself any graven images.

Thou shalt not take the Name of the Lord thy God in vain.

Remember the Sabbath day, to keep it holy.

Honor thy father and thy mother, that thy days may be long upon the

land which the Lord thy God giveth thee.

Thou shalt not kill.

Thou shalt not commit adultery.

Thou shalt not steal.

Thou shalt not bear false witness against thy neighbor.

Thou shalt not covet thy neighbor's house.

Thou shalt not covet thy neighbor's wife, nor his manservant,

nor his maidservant, nor his cattle,

nor anything that is thy neighbor's.

La. R.S. § 17.2124(B)(2). As Defendants concede, this version of the Ten Commandments is not observed by most adherents of the Catholic and Jewish faiths, ROA.458, much less by those who adhere to other faiths or no faith at all.

The Act further imposes duties upon the Louisiana Board of Elementary and Secondary Education, the Department of Education, and the Superintendent of Education. ROA.1661-62; ROA.1672.

## II.     PROCEDURAL BACKGROUND

Plaintiffs are fourteen parents and their combined sixteen minor children enrolled in Louisiana's public schools. ROA.39. Plaintiffs include ordained ministers and reverends, practicing Christians and Jews, atheists, and agnostics. All of them want to instill in their children their families' sincerely held religious and moral beliefs and protect their children from government coercion, and all of them believe that, through H.B. 71, the government is impermissibly intruding upon their ability to guide their children's spiritual development.

Accordingly, Plaintiffs filed suit, ROA.39, and sought to preliminarily enjoin H.B. 71 from taking effect. ROA.239. Plaintiffs assert that the Act will harm them in violation of the Establishment and Free Exercise Clauses of the First Amendment, including by (1) religiously coercing child-Plaintiffs by pressuring them to observe, meditate on, venerate, and follow the state's favored religious text, and by pressuring the children to suppress expression of their own religious beliefs and backgrounds at school; and (2) substantially burdening the parent-Plaintiffs' religious exercise by usurping their parental authority

to direct their children's religious upbringing and education. ROA.55-76; ROA.256-57; ROA.278-329.

In support, Plaintiffs proffered the expert report of Dr. Steven Green, a historian with expertise in the intersection of law, religion, and history, and the history of public education. ROA.848-76. Defendants moved to dismiss on August 5, 2024, proffering no expert testimony of their own. ROA.413.

On October 21, 2024, the district court held a full-day evidentiary hearing and oral argument. The court accepted as evidence the testimony (by declaration) of Plaintiffs and representatives of Defendants, and over thirty additional exhibits. Further, the court accepted live testimony by Dr. Green, whom Defendants cross-examined. Dr. Green's testimony covered the topics in his expert report, focusing on (among other topics) the founders' concerns about religious coercion and denominational preference, and the absence of any historical tradition of propagating or displaying the Ten Commandments in American public schools. ROA.1770-77.

## III.   THE DISTRICT COURT DECISION

On November 12, 2024, the district court granted Plaintiffs' request for preliminary injunction, denying Defendants' motion to dismiss. ROA.1793-94. The court held:

(1) Plaintiffs' claims are ripe because there is "sufficient information about what the Ten Commandment displays will look like from the Act itself to determine whether the display is constitutional," ROA.1623, ROA.1645-52;

(2) Plaintiffs have standing because they "have a personal stake in the outcome of the litigation," ROA.1624, ROA.1658-65;

(3) Plaintiffs' Establishment Clause claims are controlled by *Stone*, which dispositively renders the Act unconstitutional, ROA.1626-27, ROA.1703-15;

(4) the Act is also unconstitutional under *Kennedy v. Bremerton School District*, 597 U.S. 507 (2022), and other Establishment Clause jurisprudence because "the Act and its requirements are coercive and inconsistent with the history of First Amendment and public education," ROA.1751;

(5) the Act is unconstitutionally discriminatory because it "requires a version of the Ten Commandments that many Protestants use[,]…inconsistent with versions recognized by Jews or Catholics," as well as the beliefs of families who "are not religious and do not agree with any version of the Decalogue; or [] believe in other religions (such as Hinduism, Buddhism, and Taoism)," ROA.1748; and

(6) the Act is unconstitutional under the Free Exercise Clause because it "conflicts with and burdens the [Plaintiffs'] sincere beliefs" and "substantially interferes with and burdens the right of parents to direct their children's religious education and upbringing." ROA.1760-61 (cleaned up). Meanwhile, Plaintiffs "cannot opt out of viewing the Ten Commandments when they are displayed in every classroom, every day of the year, every year of their education." ROA.1765.

The court found Plaintiffs' expert, Dr. Green, to be "exceptionally well-credentialed and knowledgeable on the issues under consideration." ROA.1609. The court relied on his testimony and its "own review of the evidence," ROA.1777, to find there is no tradition of using or displaying the Ten Commandments in public-school education as the Act requires. ROA.1769-78.

10

Determining that the preliminary-injunction factors weighed in Plaintiffs' favor, ROA.1768, the court issued an order prohibiting Defendants from "(a) enforcing H.B. 71; (b) adopting rules or regulations for the enforcement of H.B. 71; and (c) requiring that the Ten Commandments be posted in every public-school classroom in Louisiana in accordance with H.B. 71." ROA.1793-94.

## IV.   THE PANEL DECISION

On June 20, 2025, a unanimous panel of this Court (the "Panel") affirmed the decision below. The Panel agreed that Plaintiffs' claims were ripe because H.B. 71's minimum requirements "reflect 'when, where, or under what circumstance[s]' the Ten Commandments are to be displayed," ECF No. 219 ("Op.") at 9 (citing *Staley v. Harris Cnty.*, 485 F.3d 305 (5th Cir. 2007) (en banc)), and because withholding judicial consideration "inflicts significant practical harm on Plaintiffs' First Amendment rights." Op.11 (citation omitted).

The Panel found that Plaintiffs had standing, among other reasons because "a plaintiff need not wait for 'actual implementation of [a] statute' or an 'actual violation[] of his rights' to seek relief." Op.16

11

(quoting *Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 278 (5th Cir. 1996)).

On the merits, the Panel found that *Stone* remains binding and controls the outcome of this case because "[i]t is the Supreme Court's 'prerogative alone to overrule one of its precedents.'" Op.31 (quoting *Bosse v. Oklahoma*, 580 U.S. 1, 3 (2016) (per curiam)). The Panel further held that even without *Stone*, H.B. 71 violates the Establishment Clause prohibition on coercion under *Kennedy*, and is unsupported by any "broader tradition of using the Ten Commandments in public education." Op.38.

Since the "district court did not abuse its discretion by finding that Plaintiffs satisfied the preliminary injunction elements[,]" the Panel affirmed. Op.43. Defendants petitioned for rehearing en banc on June 26, 2025, ECF. No. 226, which, this Court granted on October 10. ECF No. 250.

## STANDARD OF REVIEW

"This court reviews a district court's ultimate decision to grant a preliminary injunction for abuse of discretion, but the district court's findings of fact are reviewed for clear error and its conclusions of law are

reviewed de novo." *Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson Parish Gov't*, 849 F.3d 615, 624 (5th Cir. 2017) (citation omitted).

## SUMMARY OF THE ARGUMENT

Forty-five years ago, the Supreme Court upheld a facial challenge to a Kentucky statute materially indistinguishable from H.B. 71, recognizing that posting the Ten Commandments in every public-school classroom would unconstitutionally "induce the schoolchildren to read, meditate upon, perhaps to venerate and obey, the Commandments." *Stone*, 449 U.S. at 42. The same is true here.

Louisiana children attend public school pursuant to compulsory-education laws. Absent an injunction, Louisiana will subject those children to unavoidable displays of a state-prescribed, Protestant version of the Ten Commandments *for nearly every hour of every school day of their public education*. Defendants' insistence that H.B. 71 displays are merely passive rings hollow. The Ten Commandments are, after all, commandments. They comprise religious directives like "I am the LORD thy GOD[;] Thou shalt have no other gods before me." Those religious dictates, backed up by the implicit threat of eternal punishment, will "confront[] elementary school students every day." *See Van Orden v.*

*Perry*, 545 U.S. 677, 691 (2005) (plurality opinion). H.B. 71 is thus irreconcilable with *Stone*, which remains binding on lower courts, as Defendants have conceded. Defendants' assertion now that "*Stone* is dead," ROA.1699, is untenable under the black-letter rule vesting the Supreme Court alone with the prerogative to overrule its precedents.

That should end the inquiry. But H.B. 71 is also unconstitutional under broader Establishment Clause jurisprudence prohibiting the government from religiously coercing public-school students and from enacting denominationally preferential laws. Decades after *Stone*, and notwithstanding its abandonment of the test set forth in *Lemon v. Kurtzman*, 403 U.S. 602 (1971), the Supreme Court continues to recognize the long line of First Amendment cases finding prayer and scripture at mandatory-attendance public-school events "problematically coercive." *See Kennedy*, 597 U.S. at 541-42 (citing *Lee v. Weisman*, 505 U.S. 577 (1992), and *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290 (2000)). Faithfully applying this precedent, the district court concluded—and the Panel agreed—that H.B. 71 coerces religious observance. These decisions also rejected Defendants' argument that the Act's adoption of the version of the Ten Commandments upheld in *Van Orden* cannot be

14

denominationally preferential, for good reason. Displaying a single donated monument with text chosen by a private party in an inconspicuous public place (that no one is required to visit) is wholly different from affirmatively selecting and mandating—in every classroom across the state—scriptural text exclusionary to students and families who do not follow the Protestant King James Bible.

Furthermore, the district court correctly found that the historical record does not evince any tradition consistent with the Act. Defendants do not argue that the court's factual historical findings are clearly erroneous. Instead, they attempt to minimize Plaintiffs' expert's well-substantiated testimony and create a rigid new legal standard for Establishment Clause claims, based on a single footnote in *Kennedy* and Justice Gorsuch's concurring opinion in *Shurtleff v. City of Boston*, 596 U.S. 243 (2022), neither of which says what Defendants claim.

The Act is also unconstitutional under the Free Exercise Clause because it burdens Plaintiffs' religious freedom and usurps parent-Plaintiffs' rights to guide their children's spiritual development. ROA.1760-61. Defendants' Supplemental Brief all but ignores this argument, likely because the Supreme Court's subsequent decision in

*Mahmoud* effectively endorses the district court's ruling in Plaintiffs' favor. That alone provides grounds to affirm the decision below.

Attempting to sidestep the merits, Defendants argue that Plaintiffs' claims are unripe and that Plaintiffs lack standing because they have yet to see H.B. 71 displays in their classrooms. But, as the district court held, Plaintiffs' pre-enforcement claims are ripe because the Act's statutory minimum requirements render this case fit for decision. Defendants' reliance on *Staley* is misplaced. Unlike in *Staley*, where "no decision ha[d] been made regarding *any aspect* of the future display of the monument," the Act makes it clear "when, where, [and] under what circumstance" the Ten Commandments will be displayed in public schools." ROA.1648-49.

Further, it is well-settled that, "exposed to a risk of future harm[,]" Plaintiffs "may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021). It is undisputed that child-Plaintiffs will be confronted with H.B. 71 displays absent an injunction. "[W]hen a deprivation of First Amendment rights is at stake, a plaintiff need not wait for the damage to occur before filing suit." *Mahmoud*, 606 U.S. at 559-60. Defendants

ignore well-established standing precedent, asking this Court to adopt a rule requiring plaintiffs to "actually encounter" coercive religious material in school before standing accrues. Such a rule directly conflicts with caselaw long recognizing pre-enforcement standing to prevent imminent harm before it happens. And the record is clear that the harm Plaintiffs will suffer goes far beyond mere "offense" as Defendants insist: Child-Plaintiffs will be coerced to participate in religious observance, and their parents' right to guide their religious upbringing will be usurped by the state.

Throughout their Supplemental Brief, Defendants return to hypothetical "illustrations" as both a shield against litigation and a panacea for the Act's constitutional infirmities. But in trying (unsuccessfully) to make the Ten Commandments less prominent, many of the illustrations end up not complying with the minimum requirements of the Act. ROA.1698-99, ROA.2519-21. Even if they did, this case is not about the content of any individual display. Whatever else may be included in or around any particular display, the minimum requirements of the Act will impose the state's preferred scripture on every student continuously throughout their educational journeys.

As the district court observed, the central question here "is not whether the Biblical laws can ever be put on a poster; the issue is whether, as a matter of law, there is any constitutional way to display the Ten Commandments *in accordance with the minimum requirements of the Act.*" ROA.1699. There is not.

Every court post-*Stone* to consider a state law mandating the display of the Ten Commandments in public-school classrooms has found such laws unconstitutional. *See Stinson v. Fayetteville Sch. Dist. No. 1*, 2025 WL 2231053 (W.D. Ark. Aug. 4, 2025); *Nathan v. Alamo Heights Indep. Sch. Dist.*, 795 F.Supp.3d 910 (W.D. Tex. Aug. 20, 2025); *Cribbs Ringer v. Comal Indep. Sch. Dist.*, 2025 WL 3227708 (W.D. Tex. Nov. 18, 2025). The Court should affirm the decision below.

## ARGUMENT

## I.    THE DISTRICT COURT PROPERLY EXERCISED ITS JURISDICTION.

As the district court found, Plaintiffs have standing to pursue both their Establishment and Free Exercise Clause claims, and their claims are ripe.[1]

---

[1] Defendants abandon their earlier sovereign immunity arguments by failing to raise them before the en banc court. *See Coke v. Gen.*

18

Defendants' justiciability arguments distort the nature of Plaintiffs' asserted injuries and conflict with binding precedent. The recent *Mahmoud* decision, which Defendants' justiciability arguments entirely ignore, unequivocally reaffirmed plaintiffs' right to bring pre-enforcement challenges like this one:

> [W]hen a deprivation of First Amendment rights is at stake, a plaintiff need not wait for the damage to occur before filing suit…. Instead, to pursue a pre-enforcement challenge, a plaintiff must show that the threatened injury is certainly impending, or there is a substantial risk that the harm will occur.

606 U.S. at 559-60 (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). Plaintiffs easily satisfy this standard.

In sharp contrast, Defendants' proposed approach would force all First Amendment plaintiffs to suffer violations of their rights before bringing suit. Neither ripeness nor standing doctrine requires a plaintiff "to await the consummation of threatened injury to obtain preventive

---

*Adjustment Bureau, Inc.*, 640 F.2d 584, 586 n.2 (5th Cir. 1981) (en banc) ("[The party] has not renewed this argument in his briefs to the en banc court, and we therefore consider the argument to have been abandoned.").

relief." *Thomas v. Union Carbide Agr. Prods. Co.*, 473 U.S. 568, 581 (1985). This Court should reject Defendants' invitation to change the law.

## A.   Plaintiffs' Claims Are Ripe.

The two-prong ripeness analysis examines and balances "the fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration." *Texas v. United States*, 497 F.3d 491, 498 (5th Cir. 2007). Relying on *Staley*, Defendants' Supplemental Brief attacks only the first prong (conceding the second aspect of the test), but as both the district court and the Panel found, *Staley* by no means defeats ripeness here.

The issue of whether H.B. 71 violates the Establishment and Free Exercise Clauses is a "pure question of law." *See Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914, 930 (5th Cir. 2023). This is to be expected where, as here, Plaintiffs' facial challenge "asserts that a law *always* operates unconstitutionally." *Whole Women's Health v. Cole*, 790 F.3d 563, 591 (5th Cir. 2015) (quotation and subsequent history omitted). Under such circumstances, this Court has found that adjudication "does not require a developed factual record." *Id.*; *see also Cribbs Ringer*, 2025 WL 3227708

at *4 (Texas's Ten Commandments law "is facially unconstitutional or it is not").

*Staley*, by contrast, was not a facial challenge to a statute, but an individual challenge to a specific Bible monument near the entrance of a courthouse, which a panel of this Court found violated the Establishment Clause. Before oral argument en banc, the monument was placed in storage indefinitely to facilitate extensive renovations to the courthouse. 485 F.3d at 307, 309. Those renovations included restoring a stone staircase where the monument had stood, meaning the county could not re-display it in the same location. *See* Bill Murphy, *Bible Monument's Removal Adds Twist to Appeal*, Hou. Chron. (Jan. 22, 2007), https://bit.ly/3AVSkdQ. Consequently, the en banc Court deemed the appeal moot and "any dispute over a probable redisplay" unripe, explaining, "it is not known when, where, or under what circumstance the monument and Bible will be restored on the Courthouse grounds." 485 F.3d at 307. Indeed, "no decision ha[d] been made regarding *any aspect* of the future display of the monument." *Id.* at 309 (emphasis added). Therefore, "the monument's future [was] too speculative to

determine whether the monument will violate the Establishment Clause in the future." *Id.* at 308.

Unlike H.B. 71, *Staley* did not involve a statutory mandate. There was no legal obligation to re-display the Bible monument in accordance with any particular requirements by a certain date, or at all. And there was no guarantee that the plaintiff would be harmed absent an injunction—indeed, undersigned counsel has not been able to find any evidence that the Bible monument in *Staley* was *ever* redisplayed.

Here, if the district court's injunction were lifted, H.B. 71 displays would go up immediately. H.B. 71 makes plain *exactly* "when, where, [and] under what circumstance[s]" the Ten Commandments displays will be posted. ROA.1649. And the Act dictates exactly what will be on each H.B. 71-compliant display. Despite Defendants' illustrations, H.B. 71 requires that the Ten Commandments be the "central focus of the poster or framed document," in a "large, easily readable font." Any additional "context" is irrelevant. ROA.1645-46 ("[R]egardless of what iterations of the displays AG Defendants are able to conjure up for purposes of their briefing, the fundamental requirements of the Act mandate that the displays occur in a specific time, place, and manner[,]" and no public-

school governing authority may deviate from those minimum requirements).

*Mahmoud* is again on point: There, the parent-plaintiffs were entitled to a preliminary injunction despite their pre-enforcement inability to allege "how a particular book was used or [was] planned for use at a particular time." 606 U.S. at 560. The Court held that parents need not "'wait and see' how a particular book is used in a particular classroom on a particular day," because the "clear and undisputed instructions of the Board" regarding the challenged materials in public schools were sufficient to determine whether those materials' anticipated use would violate the plaintiffs' First Amendment rights. *Id.* H.B. 71's minimum requirements are at least as "clear and undisputed" as the Board's instructions in *Mahmoud*, as well as the policies at issue in other Supreme Court precedents. *See Santa Fe*, 530 U.S. at 313 (rejecting argument that plaintiffs filed "premature facial challenge" to football-game prayer policy even though "there [could] be no certainty" that pregame invocations "w[ould] be religious"); *Lee*, 505 U.S. at 583 (affirming jurisdiction although "[t]he record…is sparse" and "assum[ing]

the clergy's participation in any high school graduation exercise would be about what it was at [plaintiff's] middle school ceremony").

The second ripeness prong underscores the need to adjudicate Plaintiffs' claims now, before the Act is implemented. "[T]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Book People, Inc. v. Wong*, 91 F.4th 318, 341 (5th Cir. 2024) (quotation omitted). Such harms, which are present here, constitute serious hardship for ripeness purposes. *See Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 288 (5th Cir. 2012).

## B.    Plaintiffs Have Standing.

"To establish Article III standing, a plaintiff must show that [he or she] has suffered an 'injury in fact' that is 'fairly traceable' to the defendant's conduct and would likely be 'redressed by a favorable decision.'" *Collins v. Yellen*, 594 U.S. 220, 242 (2021) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). The district court correctly held that Plaintiffs have standing. ROA.1658. Defendants' arguments to the contrary—like their ripeness challenge—fail as a matter of law.[2]

---

[2] Defendants' challenge again attacks Plaintiffs' standing only under the Establishment Clause; Plaintiffs separately have standing to pursue their free-exercise claims, which suffices to survive dismissal.

### 1. Plaintiffs' asserted injuries are certainly impending and sufficient to confer standing.

Plaintiffs will imminently encounter H.B. 71 displays absent an injunction, satisfying Article III's injury-in-fact requirement. *See Driehaus*, 573 U.S. at 158 (a plaintiff has standing to prevent future threatened injury that is "certainly impending"). Largely rehashing their ripeness challenge, Defendants argue that Plaintiffs do not have standing because they have not yet seen an H.B. 71 display in their schools, ECF No. 271 ("Defs.Br.") at 21, insisting that *Doe v. Tangipahoa Parish School Board*, 494 F.3d 494 (5th Cir. 2007) (en banc), requires an "actual encounter" with a challenged state-sponsored religious practice to confer standing. Defs.Br.24.

Defendants misrepresent the holding of *Doe*. There, the plaintiff lacked standing because the plaintiff's alleged injuries were "based solely on injury arising from mere abstract knowledge that invocations were said." 494 F.3d at 497. Unlike the record here, the record in *Doe* did not evince past *or future* harm: There was no evidence that the plaintiffs had attended previous meetings at which prayers were delivered, *or that they would attend future meetings* where they would be subjected to such prayers. *See id.* at 498-99; *see also* Op.18 ("[T]he [*Doe*] plaintiffs had not

25

proven that they had ever witnessed [invocations] or would in the future."
(citing *Doe*, 494 F.3d at 497-98)). Indeed, *Doe* expressly acknowledged
that "[c]onstitutional standing" may be based on "threatened injury." 494
F.3d at 496. *Doe* thus *affirms* that past exposure is *not* required to confer
standing.

Defendants' reliance on *Barber v. Bryant*, 860 F.3d 345 (5th Cir.
2017), for their imagined "actual encounter" rule also fails. Like *Doe*,
*Barber* affirmed that standing may be based on threatened injury. *Id.* at
357 ("Future injuries can provide the basis for standing, but they 'must
be *certainly impending* to constitute injury in fact.'"); *see also* Op.17. As
the Panel cautioned Defendants, their "quoted language [from *Barber*]
cannot be divorced from its accompanying context," wherein the *Barber*
Court explicitly "distinguished the plaintiffs' injuries"—based solely on
their objection to religious beliefs listed in a statute—"from those alleged
in religious display cases." Op.17 n.8.

Again, encounters with H.B. 71 displays were (and are) imminent.
"No later than January 1, 2025, each public[-]school governing authority
shall *display* the Ten Commandments in each classroom in each school
under its jurisdiction." ROA.1621 (quoting H.B. 71(B)(1)) (emphasis

added). To "display" means "to put (something) in a prominent place in order that it may readily be seen." *Display*, Oxford English Dictionary (2024); *see* Op.10 n.6. In accordance with H.B. 71, these displays must be posted in places where schoolchildren will inevitably encounter them.

Neither *Doe* nor *Barber* suggests that an imminent encounter with material likely to cause First Amendment harm while in school is insufficient to confer standing.

> **2.** ***Ingebretsen* remains good law and reflects long-recognized standing principles permitting pre-enforcement challenges to unconstitutional laws.**

This Court held in *Ingebretsen* that a plaintiff had standing to challenge a Mississippi school-prayer statute pre-enforcement because "the statute ma[de] inappropriate government involvement in religious affairs inevitable." 88 F.3d at 278 (quotation omitted). Defendants contend that *Ingebretsen* was "wrong the day it was decided" and that it has either been abrogated by *Doe* and *Staley* (it has not), or that it should be overruled (it should not, and cannot under binding Supreme Court precedent). Defs.Br.23-24.

As discussed above, neither *Staley* (not a standing case) nor *Doe* requires that a plaintiff suffer constitutional injury before suing.

*Ingebretsen* straightforwardly applies standing law that conforms—
rather than conflicts—with Fifth Circuit and Supreme Court caselaw.
*See* Op.16-18 (reasoning that *Ingebretsen* reflects longstanding precedent
recognizing a plaintiff does not have to "wait for…actual violations of his
rights under the Efirst Amendment"); *Karen B. v. Treen*, 653 F.2d 897,
902 (5th Cir. 1981) (holding school-prayer statute facially
unconstitutional, even though the "program ha[d] yet to be put into
effect" and "the nature and extent of state involvement in religious
activity [was] in some measure speculative"), *aff'd mem.*, 455 U.S. 913
(1982). *Mahmoud* removes any residual doubt. 606 U.S. 559-60.

Defendants ignore *Ingebretsen*'s sound foundation and attempt to
distinguish it from other cases enjoining future, state-imposed religious
observance. For example, Defendants contend that *Lee* does not apply
here because it "involved past and ongoing personal interactions with
religious exercises." Defs.Br.22. But standing in *Lee* was not based on
past exposure. Instead, the Court focused on the plaintiff's alleged future
injuries, enjoining prayers at "future graduations," finding "a live and
justiciable controversy" where "it appear[ed] likely, if not certain, that an
invocation and benediction [would] be conducted at [student-plaintiff's]

high school graduation." 505 U.S. at 584. That there had been similar invocations at past graduation ceremonies simply bolstered the plaintiff's allegation that future harm would occur absent an injunction; here, the statute *mandates* that the future harm Plaintiffs allege *will* occur.

Defendants further attempt to distinguish *Ingebretsen* by arguing that it only confers standing to plaintiffs challenging "inappropriate" displays, asserting that "an unconstitutional encounter is not 'inevitable'" here because "[t]here are innumerable displays that would satisfy the Establishment Clause[.]" Defs.Br.26. This argument confuses standing with the merits and assumes that Defendants' illustrative displays are permissible under the First Amendment—but that is for this Court to decide. The Court cannot assume that Plaintiffs' claims will fail on the merits to defeat standing; it "must accept as true all material allegations of the complaint and…construe the complaint in favor of the complaining party" when assessing whether the plaintiff has alleged a sufficiently concrete and imminent injury. *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010) (quotation omitted).

Plaintiffs have further established, through unrebutted sworn

testimony, that the minimum requirements of H.B. 71, if implemented, will coerce child-Plaintiffs into religious observance and burden parent-Plaintiffs' ability to shape their children's religious development. ROA.1750-51. Even if Defendants' illustrations could somehow render the statutory scheme constitutional *on the merits* (they cannot), they do nothing to undermine Plaintiffs' asserted impending injuries or otherwise deprive the Court of jurisdiction over the constitutional question at issue: whether the Act's minimum requirements violate the First Amendment.

> ### 3. There is no need to revisit so-called "offended-observer standing."

Defendants argue that this Court should use this case to "lay offended-observer standing to rest." Defs.Br.27. Their argument mischaracterizes both Plaintiffs' claimed injuries and standing jurisprudence.

> ### a. Plaintiffs' injuries surpass "mere offense."

As demonstrated by their unrebutted sworn testimony, Plaintiffs seek to prevent (1) the coercive injury that state-sponsored religious observance in public schools inflicts on child-Plaintiffs and (2) the harm that such coerced observance causes parent-Plaintiffs by interfering with

their right to direct their children's religious education. *See* ROA.278-329.

Where, as here, government policies forcibly subject children to school-sponsored religious observance, the First Amendment interests of "children and their parents, who are directly affected by the laws and practices against which their complaints are directed[]...suffice to give the parties standing to complain." *Sch. Dist. of Abington Twp. v. Schempp*, 374 U.S. 203, 224 n.9 (1963); *accord Doe v. Sch. Bd. of Ouachita Par.*, 274 F.3d 289, 292 (5th Cir. 2001) ("The case for standing is made stronger when the plaintiffs are students and parents of students attending public schools, who enjoy a cluster of rights vis-a-vis their schools, and thus are not merely 'concerned bystanders.'"). Defendants overlook this long line of religion-in-school cases and wrongly conflate Plaintiffs' claims with those directed against government-sponsored religious displays in the generic "public square."

Louisiana's compulsory education laws and the pervasive nature of the displays render the students a captive audience. *See infra* Section II.A.3. Plaintiffs will be forcibly exposed not only to one H.B. 71 display, but to countless displays, in every classroom, every day, for the entirety

of their public-school careers. Among other harmful effects, the Act will thereby "send the message…not only that the posted text is the 'correct' or superior version of religious doctrine, but also that the Ten Commandments, as set forth in the display, constitute official rules that they and their peers must follow," in "conflict with [Plaintiffs'] spiritual beliefs and the spiritual values that [Plaintiffs] seek to instill in [their] children." ROA.280-81 (Rev. Roake Decl.). This and other record testimony belie Defendants' dismissive depiction of Plaintiffs' claimed injuries as mere "psychological consequence[s] presumably produced by observation of conduct with which one disagrees." Defs.Br.33 (citation omitted).

Considering the school-specific nature of the harms the Act inflicts, this case is unlike those where the government has permitted or erected a display in a public park, roadside median, courthouse lawn, or other area where individuals may come and go—or *not* go, avoiding the display altogether. *See Van Orden*, 545 U.S. at 691 (plurality opinion) ("The placement of the Ten Commandments monument on the Texas State Capitol grounds is a far more passive use of those texts than was the case in *Stone*, where the text confronted elementary school students every

32

day."). Defendants' attempt to minimize this distinction as "semantic hairsplitting," or "slapping a different label" on the same thing, fails.

> **b.** **Spiritual offense from government-sponsored religious imagery or practices constitutes injury-in-fact.**

Even if Plaintiffs' claims were premised on spiritual offenses resulting from H.B. 71 displays (though they are not), Plaintiffs would still have standing to pursue them. It is settled law that spiritual offense resulting from direct and unwelcome contact with, or exposure to, a governmental religious display or practice is a sufficient basis for standing. *See, e.g.*, *Murray v. City of Austin*, 947 F.2d 147, 151-52 (5th Cir. 1991); *Freedom from Religion Found., Inc. v. New Kensington Arnold Sch. Dist.*, 832 F.3d 469, 476-77 (3d Cir. 2016) (collecting cases).

Defendants' cited authorities do not support the radical departure from binding authority they ask this Court to endorse. Their appeal to "[m]embers of the Supreme Court" who have purportedly "long echoed" criticisms of standing premised on spiritual offense at governmental sponsorship of religious messaging cites non-binding opinions in two

cases, by two Justices, joined by no others.[3] Certainly, Justice Gorsuch's statement regarding the denial of certiorari in *City of Ocala v. Rojas*, 143 S. Ct. 764 (2023), and Justice Thomas's dissent from the denial in the same case, do not bind this Court.

Nor does Justice Gorsuch's concurring opinion in *American Legion v. American Humanist Association*, 588 U.S. 29 (2019), support Defendants' argument. *See* Defs.Br.28-31. *American Legion* undermines Defendants' position that the demise of the *Lemon* test also ended "offended-observer standing." There, despite declining to apply *Lemon*, and notwithstanding Justice Gorsuch's concurring opinion, the Court adjudicated the merits of the plaintiffs' claims, which they brought because they were "offended by the sight of the memorial on public land." 588 U.S. at 37.

*     *     *     *     *

This Court should reject Defendants' attempt to manufacture an appellate issue over standing where none exists. Defendants' "offended-

---

[3] *Valley Forge Christian College v. Americans United for Separation of Church & State*, 454 U.S. 464 (1982), is not an "offended observer" case at all and offers no support to Defendants' position.

observer standing" argument is inapposite and meritless; the overturning of *Lemon* has nothing to do with Plaintiffs' standing in this case. The Establishment Clause forbids religious coercion and denominational preference, and the Free Exercise Clause bars the burdening of sincerely held religious beliefs by the state, including by usurping parents' rights to guide their children's religious development. The record more than adequately shows how H.B. 71 runs afoul of both, and substantiates Plaintiffs' impending injuries that would result from its implementation, satisfying Article III's injury-in-fact requirement.

## II.    H.B. 71 IS FACIALLY UNCONSTITUTIONAL.

Both the Panel and the district court properly held that H.B. 71 is facially unconstitutional. Based on the Act's extensive minimum requirements, "there is no set of circumstances under which [the implementation of H.B. 71] is constitutional." *Croft v. Perry*, 624 F.3d 157, 164 (5th Cir. 2010).

Defendants' assertion that, "even in the *Lemon* era, the Supreme Court never purport[ed] to decide the constitutionality of every possible way the Commandments might be set out by the government" misses the point. Defs.Br.36 (quotation omitted). Plaintiffs are not seeking a ruling

covering "every possible way the Commandments might be set out by the government"; they are challenging the implementation of a statute that specifies the exact way the Commandments will be imposed upon their children. For the following reasons, Plaintiffs' claims are likely to prevail on the merits, entitling Plaintiffs to the preliminary injunction granted below.

## A.    HB. 71 Violates the Establishment Clause.

### 1.    *Stone* is good law.

As the district court noted, Defendants conceded at oral argument that "*Stone* remains binding on this Court," even as "they attempted to downplay and distinguish it[.]" ROA.1714; ROA.2519 (counsel agreeing with the district judge's proffered "premise" that "I'm bound by *Stone* until the Supreme Court [t]ells me I'm not[,]" stating "we're not going to dispute that"). Yet Defendants now argue that *Stone* is "ignoble" and nonbinding because (1) it relied on *Lemon*, and (2) was overruled by *Kennedy*. Defs.Br.57-59. Both points fail.

*Stone* is not "*Lemon* to its core." *Id.* at 57. Rather, *Stone* "almost exclusive[ly] reli[ed] upon two [Supreme Court] school prayer cases." *Van Orden*, 545 U.S. at 690-91 (plurality opinion) (citing *Schempp*, 374 U.S. at 203, and *Engel v. Vitale*, 370 U.S. 421, 421 (1963)). Defendants'

insistence that *Stone* cannot survive *Kennedy*'s repudiation of *Lemon* ignores this fact.

*Kennedy* did not mention *Stone*, let alone question the continuing vitality of *Schempp* or *Engel*, on which *Stone* was based. Those cases—like *Stone*—continue to bind lower courts unless and until the Supreme Court "see[s] fit to reconsider them." ROA.1706 (quoting *Bosse*, 580 U.S. at 3); *accord Nat'l Coal. for Men v. Selective Serv. Sys.*, 969 F.3d 546, 549-50 (5th Cir. 2020) ("[O]nly the Supreme Court may overrule its precedents even where subsequent decisions or factual developments may appear to have significantly undermined the rationale for [the] earlier holding[.]" (cleaned up)). *Stone* remains binding, directly applicable, and dispositive. *See Jusino v. Fed'n of Cath. Teachers, Inc.*, 54 F.4th 95, 102 (2d Cir. 2022) (holding *NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490 (1979), "remains good law notwithstanding its reliance...on *Lemon*...unless and until the Supreme Court sees fit to overrule [it] directly"), *cert. denied*, 143 S. Ct. 1056 (2023).

## 2.   *Stone* controls.

Defendants hedge their evasion of *Stone* by attempting to distinguish it on the facts. Here, again, they fail to mark any meaningful

distinction between H.B. 71 and the statute struck down in *Stone*. *See* ROA.1707-09.

### a.    Defendants' context-based "distinctions" fail.

Defendants attempt to distinguish *Stone* on the basis of H.B. 71's (i) "contemplat[ion] that other documents 'may also' be displayed 'along with the Ten Commandments,'" (ii) "three-paragraph 'context statement,'" and (iii) statement of legislative intent. None of these "distinctions" withstands inspection.

*First*, nothing in the Kentucky law required that the commandments be displayed standing alone. *See Stone*, 449 U.S. at 39 n.1; ROA.1701. Nevertheless, the Supreme Court held the statute facially unconstitutional. *Stone*, 449 U.S. at 42-43. And as the district court held here, "the Louisiana and Kentucky laws both single out the Decalogue for *central* display...while declining to give preferential treatment to foundational documents like the U.S. Constitution, the Declaration of Independence, or the Magna Carta." ROA.1708 (emphasis in original). The *option* to display other secular documents alongside the commandments is thus irrelevant and does not fit H.B. 71 into *Stone*'s

contemplated exemption of curricular materials that integrate the Ten Commandments into historical or cultural studies.

Defendants' citation to *ACLU v. Mercer County*, 432 F.3d 624 (6th Cir. 2005), is inapposite. That case involved a *single* courthouse display including the Ten Commandments "on a level with [eight] other documents" with "unquestioned civil, legal, and political influence[.]" *Id.* at 637-38. The display also included a "commentary page" explaining the relevance of each exhibit. *Id.* Each frame in the display was "the same size" and no one item was "displayed more prominently than the other." *Id.* at 627 (citing *ACLU v. Mercer Cnty.*, 219 F. Supp. 2d 777, 779-80 (E.D. Ky. 2002)). That case did not involve a school setting (or a captive audience of children), nor privilege the Ten Commandments as its "central focus" as does H.B. 71.

*Second*, Defendants attempt to distinguish H.B. 71's three-paragraph "context statement" from Kentucky's "one-sentence 'notation' untethered to the educational context," which was dismissed as a sham in *Stone*. Defs.Br.63-64.[4] For one, H.B. 71's context statement serves no

---

[4] Defendants incorrectly suggest H.B. 71's context statement is distinguishable because it reflects "the Legislature's intent." Defs.Br.64. But in *Stone*, the Kentucky legislature *did* claim the context statement

edifying purpose whatsoever next to the commandments: It is not the "central focus" or "printed in a large, easily readable font," and—given its three-paragraph length—must be printed in illegibly small print to fit on posters at all, as demonstrated in Defendants' own "illustrations." ROA.1680-94, 1804. Moreover, both statements purport to set forth secular, (inaccurate)[5] historical justifications for displaying the Ten Commandments in schools, and neither lessens the statute's coercive effects. *See* ROA.1626.

*Finally*, Defendants attempt to distinguish *Stone* by directing the Court to H.B. 71's purportedly "secular historical and educational legislative purposes[.]" Defs.Br.64. As the district court exhaustively explained, though, H.B. 71's purpose is plainly religious. *See* ROA.1704-14. "[T]he primary author and sponsor of the bill," multiple "co-author[s] and co-sponsor[s]," and Governor Landry, who signed H.B. 71 into law,

---

as its own. *See* ROA.1704 ("[T]he state pointed to the fact 'that *the legislature required* the…notation in small print at the bottom of each display of the Ten Commandments.'" (quoting *Stone*, 449 U.S. at 41) (emphasis added)).

[5] The Act's "historical" justification even includes a "fabricated" quote about the Ten Commandments misattributed to James Madison—the falsity of which "was uncontradicted and, indeed, unchallenged by AG Defendants." ROA.1747.

all issued statements which "Defendants do not dispute" exposing the Act's religious purpose.[6] Some of these same lawmakers, in an amicus brief, are now attempting to walk back their prior statements. *See* ECF No. 312. But their earlier statements speak for themselves.

Even Defendants acknowledge that deference is only afforded to a "plausible secular purpose," Defs.Br.64 (quoting *Wallace v. Jaffree*, 472 U.S. 38, 74-75 (1985) (O'Connor, J., concurring in the judgment)). But H.B. 71's proffered secular purpose is simply not plausible. As the district court reasoned, "in light of the requirements of H.B. 71 itself and the

---

[6] These statements include, among others:

- Lead sponsor, Rep. Dodie Horton: "It is so important that our children learn what God says is right and what He says is wrong, and to allow [the Ten Commandments] to be displayed in our classrooms as a visual aid, I believe, especially in this day and time is so important."

- Co-sponsor Rep. Sylvia Taylor: "I really believe that we are lacking in direction. A lot of people, their children, are not attending churches...[s]o what I'm saying is, we need to do something in the schools to bring people back to where they need to be."

- Gov. Landry, in "a fundraising email to supporters in response to the filing of this challenge to H.B. 71[,] urg[ed] them to help him 'ADVANCE [] the Judeo-Christian values that this nation was built upon.'"

ROA.1712 (citations omitted).

undisputed statements of its proponents as to its purpose, the Act's alleged secular purposes are 'so implausible [and] inadequate that they ought not be credited.'" ROA.1713-14 (quoting *Croft v. Perry*, 624 F.3d 157, 167 (5th Cir. 2010)). Defendants offer their illustrations to demonstrate how the displays *could* allegedly promote a secular purpose, but those illustrations do not comply with the minimum requirements of the Act. ROA.1698-99, 2519-21.

Remarkably, despite affirmatively raising legislative purpose to *defend* the Act, Defendants take issue with the fact that the district court discussed legislative purpose at all. Contrary to Defendants' contention, neither the Panel nor the district court "applied *Lemon*" by analyzing the Act's legislative purpose. Defs.Br.66. The district court explicitly explained that it was *not* applying *Lemon*, but instead adducing "support [for] the conclusions that (1) here, any purported secular purpose was not sincere but rather a sham; (2) that, under *Stone*, H.B. 71 is 'plainly religious in nature[;]' and (3) that, consequently, *Stone* is directly on point and controlling." ROA.1714. The Panel (and the district court) merely addressed *Defendants*' argument that "Louisiana has a valid 'secular historical and educational purpose' for displaying the Ten

Commandments[.]" Op.30 (quoting Defs.' Opening Br., ECF No. 92, at 52). This Court should not countenance Defendants' internally inconsistent argument—first arguing that H.B. 71 is constitutionally permissible because it has a secular purpose, then faulting Plaintiffs, the Panel, and the district court for analyzing and rejecting that assertion.

Neither the district court nor the Panel "extended" *Stone*; they applied it, just as this Court must.

> **b.    Defendants' "distinction" based on H.B. 71's applicability to postsecondary institutions is waived and irrelevant.**

Defendants further attempt to distinguish *Stone* on the grounds that Kentucky's statute applied only to primary and secondary schools, while H.B. 71 also applies in postsecondary settings where the displays allegedly may be less coercive; they accuse the Panel of "ignor[ing]" this fact. Defs.Br.60. But the Panel did not "ignore" anything: Defendants waived this argument by failing to raise it below. Not once did Defendants argue in their district court briefing, nor at the hearing, nor even before the Panel, that Plaintiffs' challenge fails because the Act requires university displays. This Court "adheres to the general rule that arguments not raised before the district court are waived and cannot be

raised for the first time on appeal." *Webster v. Kijakazi*, 19 F.4th 715, 720 (5th Cir. 2021) (citation modified).

Regardless, Defendants' argument is irrelevant: Plaintiffs did not seek—and the district court did not issue—relief against any higher-education institution or authority. *See* ROA.2097-98 (*compare* H.B. 71 § 1(B)(6)(a) *with* H.B. 71 § 1(C)(1)). In any event, H.B. 71 includes a severability clause. H.B. 71 § 2. Thus, even if this Court agreed with Defendants that H.B. 71 is constitutional as to postsecondary students, that would not be grounds to reverse the decision below.

### 3.    H.B. 71 is unconstitutionally coercive.

*Stone* does not stand alone—it reflects longstanding coercion doctrine which has since been reaffirmed in *Kennedy* and other Establishment Clause cases. The Court in *Kennedy* called religious coercion "among the foremost hallmarks of religious establishments the framers sought to prohibit when they adopted the First Amendment." 597 U.S. at 537. The district court correctly held H.B. 71 unconstitutionally coercive.

The special religious-coercion concerns applicable to schoolchildren, which Defendants entirely ignore, continue to animate First Amendment

jurisprudence. As *Mahmoud* emphasized, the "'[s]tate exerts great authority and coercive power through' public schools 'because of the students' emulation of teachers as role models and the children's susceptibility to peer pressure.'" 606 U.S. at 554-55 (quoting *Edwards v. Aguillard*, 482 U.S. 578, 584 (1987)); *see also Lee*, 505 U.S. at 592. Accordingly, the Court has recognized "limits to the display of religious messages or symbols" in public schools, holding up *Stone* "as an example of the fact that we have been particularly vigilant in monitoring compliance with the Establishment Clause in elementary and secondary schools." *Van Orden*, 545 U.S. at 690-91 (plurality opinion) (quotation omitted); *see also* ROA.1762-63 (distinguishing displays in the school context, "where, given the impressionability of the young, government must exercise particular care in separating church and state" (quoting *Van Orden*, 545 U.S. at 703 (Breyer, J., concurring in the judgment))).

This Court has extended the same solicitude to public-school students who are captive to school-sponsored religious messages. *See, e.g.*, *Ingebretsen*, 88 F.3d at 279-80 (striking down state law that would authorize prayers at public-school events where "attendance is compulsory" because "students will be a captive audience that cannot

leave without being punished by the state or School Board for truancy or excessive absences"); *Doe v. Sch. Bd. of Ouachita Par.*, 274 F.3d 289, 292 (5th Cir. 2001) ("[T]he Supreme Court has repeatedly recognized the right of children and their parents to receive public education that is compliant with the Establishment Clause.").

Considering these principles, H.B. 71 is plainly unconstitutional. There can be no dispute that *Kennedy affirmed* that public schools may not religiously coerce students. *See* 597 U.S. at 537; *accord Lee*, 505 U.S. at 587 ("It is beyond dispute that, at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise[.]"). *Kennedy* explicitly distinguished Coach Kennedy's postgame "private religious exercise" from the "problematically coercive" religious observances challenged in *Lee* and *Santa Fe*, which were officially sponsored by the school and delivered to "captive audiences" at school events students were either required or expected to attend. 597 U.S. at 537-41. *Lee* and *Santa Fe*, therefore, remain controlling with respect to religious-coercion claims asserted by public-school students.

Defendants seek to confine *Kennedy*'s prohibition against religious coercion to "coercion 'to engage in a formal religious exercise' like prayer, devotional Bible reading, or church attendance." Defs.Br.48-49 (quoting *Kennedy*, 597 U.S. at 537). Meanwhile, they insist H.B. 71 amounts to "the mere display on public property of [a religious symbol]," which "is in no meaningful sense either a religious activity or coercive." *Id.* at 49 (quotation omitted). Their position finds no support in *Kennedy*, and is belied by other Supreme Court precedent delineating unconstitutional religious coercion.

Tellingly, when Defendants quote *Kennedy*'s "formal religious exercise" language, they omit *Kennedy*'s citation to *Lee* therefor. *See* 597 U.S. at 537 (quoting 505 U.S. at 589). In *Lee*, the "formal religious exercise" the Court enjoined was a religious invocation at the plaintiff's graduation ceremony. If hearing a lone graduation speaker recite a single invocation on a single day crosses the constitutional line, surely continuous exposure in every classroom to the Ten Commandments for hundreds of days per year, K-12, does too.

And in *Schempp* the Court recognized that daily scriptural readings—which students were only required passively to listen to, not

47

actively participate in, and from which they could opt out without penalty—constituted unconstitutional "religious exercise." 374 U.S. at 224-25.

The law is equally clear that school-sponsored religious observance is no less coercive merely because it is silent. In *Stone*, the Court found that it was not "significant that the Bible verses involved in this case are merely posted on the wall, rather than read aloud as in *Schempp* and *Engel*." 449 U.S. at 42;[7] *see also Van Orden*, 545 U.S. at 691 (plurality opinion) (distinguishing *Stone* displays, which "confronted elementary school students every day," from the "far more passive use of those texts" on a lone monument), *quoted in Staley*, 485 F.3d at 308; *Washegesic v. Bloomingdale Pub. Sch.*, 813 F. Supp. 559, 564 (W.D. Mich. 1993) ("[S]usceptibility to coercion from government and peers is [not] limited to situations involving religious exercises."), *aff'd*, 33 F.3d 679 (6th Cir. 1994). Defendants cite no caselaw suggesting that posting scripture throughout schools is less coercive than reading it, whereas every court to consider the question has agreed with Plaintiffs that "[g]overnment

---

[7] The Court did not cite *Lemon* for this proposition.

school promoted religious activity is no less unconstitutional merely because it is silent." *Nathan*, 795 F.Supp.3d at 943 (citing *Wallace*, 472 U.S. 38, 60-61); *see also Stinson*, 2025 WL 2231053, at *11 ("[T]he Ten Commandments are not passive because students in public schools are forced to engage with them and cannot look away."). Even the U.S. Congress has recognized that a silent "display" carries the potential "to…coerce." *See Boos v. Barry*, 485 U.S. 312, 316 (1988) (quoting and invalidating D.C. Code § 22-1115).

Although silent, H.B. 71 displays are coercive as a matter of common sense. The Ten Commandments are, after all, commandments—rules and instructions to be followed. And they are explicitly *religious*: "I AM the LORD thy God," "Thou shalt have no other gods before me," etc. Governor Landry's suggestion to objecting parents to simply "[t]ell your child not to look at them,"[8] or Defendants' suggestion that students are free to "engage with [H.B. 71 displays] or ignore [them] as they wish," Defs.Br.48, are impracticable. Besides tables and chairs, H.B. 71 displays

---

[8]    Erik Ortiz, *Louisiana governor tells parents against Ten Commandments in classrooms: "Tell your child not to look"*, NBC News (Aug. 5, 2024), https://shorturl.at/xrM2d (last accessed Dec. 4, 2025).

will be the only element common to every classroom students enter. By Defendants' logic, the Constitution places no limits on the dissemination of religious messaging through "silent" posters on classroom walls—a state could, for example, mandate posters in every classroom containing the Lord's Prayer, mocking minority faiths through demeaning depictions of their sacred symbols, or offering instructions on how to proselytize nonbelievers.

Students cannot help but notice the lengths to which the state has gone to ensure that they encounter these displays, and they will reasonably feel pressured to "read, meditate upon, perhaps to venerate and obey, the Commandments." *See Stone*, 449 U.S. at 42; *see also City of Elkhart v. Books*, 532 U.S. 1058, 1061 (2001) (Rehnquist, C.J., dissenting from denial of certiorari) ("In *Stone*, the posting effectively induced schoolchildren to meditate upon the Commandments during the school day."). "This pressure, though [it may be] subtle and indirect, can be as real as any overt pressure." *Lee*, 505 U.S. at 593; *see also Doe ex rel. Doe v. Elmbrook Sch. Dist.*, 687 F.3d 840, 851 (7th Cir. 2012) (en banc) ("[R]eligious displays in the classroom tend to promote religious beliefs, and students might feel pressure to adopt them. Such concern was front

50

and center in *Stone*[.]"). In addition to the coercive nature of the displays themselves, the coercive effects of peer pressure, the heightened risk of teacher-led proselytization, and the other isolating, stigmatizing harms alleged in Plaintiffs' uncontested declarations cannot be hand-waved away in light of these precedents. *See, e.g.*, ROA.317 (Plaintiff testimony that the Act will pressure his child—"one of a few Jewish students" in the class—"to suppress expression of [their] own Jewish background and beliefs"); *see generally* ROA.278-329; ROA.1628; ROA.1778.

### 4. H.B. 71 discriminates based on religious denomination.

In addition to its coercive nature, H.B. 71 violates the Establishment Clause's requirement that the "government maintain 'neutrality between religion[s]'" *Cath. Charities Bur., Inc. v. Wis. Lab. & Indus. Rev. Comm'n*, 605 U.S. 238, 254 (2025) (quoting *Epperson v. Ark.*, 393 U.S. 97, 104 (1968)). The Act's discriminatory denominational preference affords Plaintiffs an entirely independent path to relief under the Establishment Clause.

Through the Act, the state of Louisiana officially adopts a Protestant version of the Ten Commandments, which conflicts with Jewish and Catholic articulations of the decalogue, and with the beliefs

of atheists, Muslims, Hindus, Sikhs, Buddhists, and other adherents to non-Judeo-Christian faiths. ROA.1778 n.22. It thus runs directly afoul of the Supreme Court's admonition that "[o]ur Government is prohibited from prescribing [scripture] to be [presented] in our public institutions in order to promote a preferred system of belief or code of moral behavior." *See Town of Greece v. Galloway*, 572 U.S. 565, 565 (2014). Since H.B. 71 "establishes a denominational preference, courts must treat the law as suspect and apply strict scrutiny in adjudging its constitutionality." *Cath. Charities*, 605 U.S. at 248 (cleaned up). Defendants do not even attempt to articulate a compelling state interest or narrow tailoring for H.B. 71's adoption of Protestant scripture, as required to survive strict scrutiny.

As a threshold matter, Defendants do not dispute that the Ten Commandments are sectarian vis-à-vis the many non-Abrahamic religions practiced in Louisiana. ROA.876.[9] The scripture adopted in H.B. 71 conflicts with and marginalizes the beliefs of atheists, agnostics, and

---

[9] Amici for Defendants *admit* the Act proposes "a Christian perspective…to counter the secular humanism which dominates government schools." Suppl. Br. of America's Future et. al. as Amicus Curiae Supporting Appellants, ECF No. 313-2, at 16.

all followers of non-Judeo-Christian faiths. The Court's denominational-preference analysis can end there.

Defendants wrongly conceive of denominational preference as a narrow question over whether the selected text picks sides among Judeo-Christian faiths. They emphasize that an "identical" text was upheld in *Van Orden*, and cite dicta from *Van Orden* that that text "was arrived at following 'consultation with a committee composed of members of several faiths in order to find a nonsectarian text[.]'" Defs.Br.55 (quoting 545 U.S. at 701 (Breyer, J., concurring in the judgment)). But *Van Orden* is distinguishable.

*First*, *Van Orden* did not involve state-mandated scripture. Unlike here, the state of Texas had nothing to do with "prescribing" the text on the donated monument in *Van Orden*—it came wholesale from the donating organization. *See* ROA.1762-63.

*Second*, neither *Van Orden* nor any other case cited by Defendants textually analyzes this version of the Ten Commandments for sectarian preference, much less with the benefit of expert testimony like Dr. Green's. Upon thoroughly considering such evidence, the district court below found the Act's version of the Ten Commandments to be "a specific

Protestant version of the Ten Commandments contained in the King James Bible, as opposed to a Roman Catholic or Jewish version." ROA.1623; *see also Stinson*, 2025 WL 2231053, at *13 n.14 (finding identical scriptural text "differs from other Protestant, Catholic, and Jewish versions," and "conflict[s] with [Plaintiffs' attested] beliefs" and those of "atheists, agnostics, and…various other [non-Judeo-Christian] religious traditions"). Justice Breyer, concurring in *Van Orden*, simply pointed to a *process* by the Fraternal Order of Eagles' "to find a nonsectarian text[.]" 545 U.S. at 701. *Van Orden* does not state that this process was successful.[10]

---

[10] Justice Breyer's statement regarding the Eagles' "process" only cites the Respondents' Brief as a source. *Id*. That brief, in turn, cites two cases—*State v. Freedom from Religion Foundation, Inc.*, 898 P.2d 1013 (Colo. 1995), and *Books v. City of Elkhart*, 235 F.3d 292 (7th Cir. 2000)—neither of which concludes or offers any evidence that the text was actually nonsectarian. Br. for Respondents, *Van Orden v. Perry*, Civ. No. 03-1500, 5-6 & n.9. The court in *ACLU Nebraska Foundation v. City of Plattsmouth* also described this version of the Ten Commandments as nonsectarian, but it likewise only cited *Books* for support, and did not independently analyze the text. *See* 419 F.3d 772, 773 & n.2 (8th Cir. 2005) (citing *Books*, 235 F.3d at 294-95). The Eagles' submitted an amicus brief in this case, but do not attempt to rehabilitate their chosen text as nonsectarian. *See* ECF No. 311-2.

Defendants resort to baseless *ad hominem* disparagement of Dr. Green, deriding his views as "blatantly anti-Catholic" and biased by his long-ago employment with one of the non-profits representing Plaintiffs. The district court already considered and rejected those allegations in denying Defendants' *Daubert* motion, noting, "Green's employment with AUSCS [was] *some twenty years ago*." ROA.1616 (emphasis added). Further, there is nothing "anti-Catholic" about identifying differences between Catholic and Protestant versions of the Ten Commandments regarding "graven images." As Dr. Green explained in his Report, "[a] broad prohibition on 'graven images' could, for some Catholics, call into question the faith's reliance on and adoration of various religious statues." ROA.876 (citing, *inter alia*, *The Oxford Companion to the Bible*).

Meanwhile, Defendants do *nothing* to contest the disparities between the H.B. 71 Ten Commandments and the Jewish version. The evidentiary record on those differences does not rely on Dr. Green's testimony alone, but also on the unrebutted testimony of Jewish Plaintiffs themselves. *See, e.g.*, ROA.315-16; ROA.320-21 (describing Plaintiffs Gary Sernovitz and Molly Pulda's objections to H.B. 71's

Protestant scripture from a Jewish perspective); ROA.327-28 (same for

Plaintiff Joshua Herlands).

In short, H.B. 71 runs afoul of "[t]he clearest command of the

Establishment Clause" that "one religious denomination cannot be

officially preferred over another." *Larson v. Valente*,

456 U.S. 228, 244 (1982). Nothing in *Kennedy* abrogated this principle.

*See Carson v. Makin*, 596 U.S. 767, 787 (2022) (noting concern for

"denominational favoritism" and citing *Larson*, 456 U.S. at 244, one week

before *Kennedy* ruling). The *Catholic Charities* decision issued just this

year reaffirms it. Defendants' failure to meaningfully contest Plaintiffs'

argument on this score supplies an independent ground to affirm the

decision below.

### 5.    Defendants' proposed "hallmarks test" is not the law and is irrelevant here.

Defendants' doctrinal argument that "*Kennedy* establishes a

hallmarks analysis"—whereby only the specific practices delineated in

Justice Gorsuch's *Shurtleff* concurrence run afoul of the Establishment

Clause—is incorrect and irrelevant. The district court correctly rebuffed

this proposed standard. ROA.1744 ("*Kennedy* did not limit Establishment

Clause claims to Justice Gorsuch's six hallmarks found in his *Shurtleff*

concurrence."). "In *Kennedy*, Justice Gorsuch used language indicating that his...hallmarks were not an exhaustive list adopted by the Court." ROA.1744 & n.15. His *Shurtleff* concurrence likewise identifies "*some* helpful hallmarks [of establishment] that localities and lower courts *can* rely on." *Shurtleff*, 596 U.S. at 285 (Gorsuch, J., concurring in the judgment) (emphasis added); *see* ROA.1732. Defendants conceded this at oral argument. ROA.1744 ("Defendants acknowledged...that Justice Gorsuch's six hallmarks are not an exhaustive set of criteria for determining the viability of an Establishment Clause claim.").

Defendants nevertheless double down on their doctrinal gambit by selectively quoting language from out-of-circuit caselaw to manufacture a "circuit split." The Third Circuit's ruling in *Hilsenrath v. School District of the Chathams*, 136 F.4th 484 (3d Cir. 2025)—like *Kennedy* and the prior rulings in this case—hinged on its coercion analysis. Unsurprisingly, Defendants avoid *Hilsenrath*'s acknowledgement that "coercion was one of the 'foremost hallmarks of religious establishments' at the founding[.]" *Id.* at 492; *see also id.* at 493 (discussing *Lee* and *Santa Fe*). They also omit that *Hilsenrath* cited *Stone* in distinguishing the challenged lessons regarding Islam from classroom Ten Commandments

displays like the Act's, finding that the two Islam lessons—included as part of a year-long World Cultures and Geography class—were not coercive because they "w[ere] 'integrated into the school curriculum' as part of 'an appropriate study of history, civilization,' and 'comparative religion.'" *Id.* at 492-93 (quoting *Stone*, 449 U.S. at 42).

The Fourth Circuit's ruling in *Firewalker-Fields v. Lee*, 58 F.4th 104 (4th Cir. 2023), is entirely inapposite to, much less in conflict with, the Panel's (or district court's) decision. It does not cite *Shurtleff* nor even reference the "hallmarks." Nor does it conduct an Establishment Clause analysis under *Kennedy*, instead remanding the case for further factual development. *Id.* at 111. Granting relief on Plaintiffs' Establishment Clause claim here is *consistent* with the Fourth Circuit's suggestion, *id.* at 122 n.7, that a plaintiff bears the evidentiary burden to show that the challenged practice resembles one or more hallmarks of establishment under *Kennedy*. Plaintiffs did so. As they have shown, H.B. 71 will give rise to the "foremost hallmark" of them all—religious coercion—while simultaneously violating the Establishment Clause's "clearest command" against official denominational preference.

6.    **H.B. 71 does not fit within any historical tradition.**

Nothing in the historical record rebuts the notion that the Act's religious displays constitute the sort of "religious establishments the framers sought to prohibit when they adopted the First Amendment." *Kennedy*, 597 U.S. at 537. The opposite is true.

After receiving extensive expert testimony, and conducting its "own review of the evidence," ROA.1777, the district court found as a factual matter that there is "insufficient evidence" of a "broader tradition" of "the use of the Ten Commandments in public education." ROA.1770. The court credited as "persuasive and well supported" Dr. Green's conclusion that "there was no longstanding, widespread use of the Ten Commandments in public education," ROA.1771, recounting the wealth of evidence on which he relied, including swift opposition to efforts to use the Bible in early public schools, contemporaneous surveys by federal officials regarding religion in public schools, popular contemporaneous treatises, and a review of any potentially relevant state laws spanning the early public-education system. ROA.1771-72.

Despite not providing their own expert testimony, Defendants rely on purported historical evidence from various amici and the expert report

of one of those amici, Mark David Hall, submitted in a different case. *See* Defs.Br.52. The analysis provided by amici—like the evidence submitted by Defendants below and cited in their Supplemental Brief—is both inapposite and incorrect. Both amici and Defendants suggest that examples of displaying the Ten Commandments on public property evince a tradition supporting their omnipresence throughout public schools. *See, e.g.*, ECF No. 278-2 ("Hall.Br.") at 26-27; Defs.Br.51-52. Such is not the case, as *Van Orden* (among other cases) makes clear in distinguishing those "far more passive use[s]" of the decalogue. 545 U.S. at 691 (plurality opinion). Examples of the Ten Commandments in the "public square" fare no better. Defs.Br.50-52. A public school is not a public square, and a lone, avoidable monument is not the same as ubiquitous classroom displays. *See supra* Section I.B.3.a.

Courtroom imagery depicting the Ten Commandments is likewise incomparable. For example, the frieze of Moses holding the tablets among the Supreme Court's depiction of eighteen "great lawgivers of history" does not privilege the Commandments, or, unlike the Act, even present their text in a manner in which it is designed to be read. Rather, it "is written in Hebrew, and is only partial—most notably, only the text of

Commandments VI through IX (the most clearly secular) appears." *ACLU of Ohio Found., Inc. v. Ashbrook*, 211 F. Supp. 2d 873, 884 n.9 (N.D. Ohio Jun. 11, 2002), *aff'd*, 375 F.3d 484 (6th Cir. 2004).

When Defendants and Dr. Hall discuss the Ten Commandments in schools, they conflate *colonial* educational practices with those in the post-independence public-school era. Hall.Br.20-21. Dr. Hall admits that "[s]chools in the founding era were not generally run by governments," Hall.Br.20, and that religious indoctrination waned as public-school education expanded, in part because the selection of sectarian religious texts for instruction spurred conflict. *See* Hall.Br.23-24 ("[U]tilizing the King James Version of the Bible in public schools…eventually prompted some states to remove Bible teaching and religious exercises from public schools."). Defendants' effort to manufacture continuity by looking to carry-over practices from the colonial period that fell out of use conflicts with *Town of Greece*'s instruction that, to survive constitutional scrutiny, a challenged religious practice must, among other requirements, "coexis[t] with the principles of disestablishment and religious freedom." *See* 572 U.S. at 576-78.

So, too, does Defendants' identification of a handful of early texts mentioned in H.B. 71—only some of which included the Ten Commandments and were used in early public schools. ROA.1773. Dr. Green "systematically dismantled this purported historical evidence" below, along with H.B. 71's false claim that the Ten Commandments were a "prominent part of American public education for almost three centuries." ROA.1774-76. For instance, one of Defendants' examples, the *New England Primer*, was "used chiefly, if not exclusively, in *religiously* run schools, and, importantly, it fell into disuse during the early decades of the nineteenth century, before the rise of public education." ROA.1769-78 (quoting ROA.868-69). To the extent *McGuffey's Readers* contained sporadic reference to the Ten Commandments, the commandments "were largely eliminated from the *Readers* in later versions, and reliance on [the *Readers*] tapered in the early twentieth century as public schools looked at other available options." ROA.1719 (quoting ROA.871); *see also* ROA.870 & n.69 (describing analysis of commandments' waning appearance in *Readers* over time). These materials do not reflect an "unambiguous and unbroken history" sufficient to salvage H.B. 71 under

the Establishment Clause. *See Marsh v. Chambers*, 463 U.S. 783, 792 (1983).

In sum, because "the historical records show only 'scattered instances' that are 'too little evidence too thinly spread to conclude that [the practice] occurred regularly[,]'" the district court correctly rejected the "categories" of historical evidence offered by Defendants. ROA.1777-78 ("[T]he limited examples offered by AG Defendants do not show a 'widespread practice' of using the Ten Commandments in public schools that was 'common for [the] Founding-era' or at the time of incorporation." (quoting and contrasting *Freedom From Religion Found., Inc. v. Mack*, 49 F.4th 941, 957 (5th Cir. 2022))).

Defendants' arguments to the contrary insist that this analysis "defines the relevant tradition far too narrowly." Defs.Br.54. Defendants would have this Court uphold H.B. 71 based on the mere "'official acknowledgment by all three branches of government of the role of religion in American life from at least 1789,'" which Defendants contend "includes prayer and other religious acknowledgments[.]" Defs.Br.50 (quoting *Lynch v. Donnelly*, 465 U.S. 668, 674 (1984)). But this is not the test. Under *Kennedy*'s "historical practices and understandings" analysis,

"[t]he line that courts and governments must draw between the permissible and the impermissible has to accord with history and faithfully reflect the understanding of the Founding Fathers." *Kennedy*, 597 U.S. at 536-37 (cleaned up). Under any conceivable Establishment Clause analysis, H.B. 71 fails to pass muster and is facially unconstitutional.

### B.    H.B. 71 Violates the Free Exercise Clause.

Defendants' Supplemental Brief hardly disputes the merits of Plaintiffs' free-exercise claims, and for good reason. Those claims, too, were vindicated by the district court, bolstered by *Mahmoud*, and supply independent grounds to affirm the preliminary injunction issued below.

The right to free exercise necessarily includes the right *not* to be pressured into government-sponsored religious observance that violates one's conscience, as well as the right not to be coerced by the government to suppress one's own religious beliefs and practices. *See Mahmoud*, 606 U.S. at 563 (rejecting notion that Free Exercise Clause provides "nothing more than protection against compulsion or coercion to renounce or abandon one's religion"). The Free Exercise Clause is violated where the government burdens one's sincerely held religious beliefs, either through

(1) "indirect coercion or penalties on the free exercise of religion," *Carson*, 596 U.S. at 778 (cleaned up), or (2) usurpation of parents' prerogative "to guide the religious future…of their children," *Wisconsin v. Yoder*, 406 U.S. 205, 232 (1972). In the public-school context, any "educational requirement or curriculum" that "'substantially interfer[es] with the religious development' of [a] child or pose[s] 'a very real threat of undermining' the religious beliefs and practices the parent wishes to instill in the child" is subject to strict scrutiny—regardless of "whether [it] is neutral or generally applicable." *Mahmoud*, 606 U.S. at 525 (quoting *Yoder*, 406 U.S. at 218).

The Act easily clears this threshold. It orders schools to display the Ten Commandments in every classroom without exception. Children— subject to compulsory attendance laws—will thus be subjected to scripture nearly every hour they are in school, K-12. *See* ROA.1765. As discussed above, the displays' unavoidable, constant omnipresence in child-Plaintiffs' public-school experience will coercively "induce [them] to read, meditate upon, perhaps to venerate and obey, the Commandments." *Stone*, 449 U.S. at 42. "Public education is a public benefit, and the government cannot condition its availability on

[Plaintiffs'] willingness to accept [such an unconstitutional] burden on their religious exercise." *See Mahmoud*, 145 S. Ct. at 2359 (cleaned up).

Plaintiffs' testimony details precisely how H.B. 71 violates the free-exercise rights of both child-Plaintiffs' and their parents. *See, e.g.*, ROA.302 (Plaintiff's testimony that the Act "will create a structure for teachers and school administrators to inject…religious beliefs into the classroom," and "lead[] to peer-to-peer harassment of [child-Plaintiff], who has been open about being an atheist"); ROA.296-97 (Plaintiff Rev. Sims's testimony that the Act will "interfere with and undermine my ability to guide [my children's] spiritual development"); ROA.55-76; ROA.278-329. Considering the record evidence as a whole, the district court correctly concluded that "Plaintiffs have established a burden on their sincerely held religious beliefs." ROA.1761. Defendants do not allege that this factual finding was clearly erroneous.

Defendants also do not even attempt to satisfy strict scrutiny. They do not articulate a compelling interest in implementing H.B. 71, or explain how the Act is narrowly tailored to advance such an interest. Their failure on this score is fatal: "Even assuming that H.B. 71 advanced a compelling interest (e.g., for educational or historical value), the Act is

unquestionably not narrowly tailored in pursuit of those interests" because "[t]here are any number of ways that the State could advance an alleged interest in educating students about the Ten Commandments that would be less burdensome on the First Amendment than the one required by the Act[.]" ROA.1764 (cleaned up). Instead, Defendants' Supplemental Brief dismisses Plaintiffs' free-exercise claims as "baseless," and rests on the arguments set forth in Defendants' Opening Brief filed last year. Defs.Br.68 (citing ECF No. 77 at 63-68). Defendants' free-exercise arguments were meritless at the time they were made for the reasons Plaintiffs articulated at the time, *see* ECF No. 79 at 60-64, and are foreclosed entirely in light of *Mahmoud*.[11]

Analogizing to *Mahmoud* underscores the merits of Plaintiffs' claims. Indeed, the Act works a far more burdensome intrusion on Plaintiffs' religious rights than the materials at issue in *Mahmoud*. First, unlike the "LGBTQ+-inclusive" materials at issue in *Mahmoud*, H.B. 71 displays are *patently religious* scripture and directly conflict with parent-

---

[11] Much of Defendants' argument before the Panel rested on their insistence that H.B. 71 displays are "passive" and "neutral." ECF No. 92 at 65-68. Those arguments have been addressed *supra* Sections II.A.3-4.

Plaintiffs' religious beliefs and teachings to their children. *See Mahmoud*, 606 U.S. at 533-35. Second, *Mahmoud* involved the introduction of just five storybooks, to be used only periodically in elementary schools, spending most of the school year on a shelf, out of view. Here, H.B. 71's religious displays will adorn the walls of every classroom, K-12, regardless of subject matter, every day.

Rather than attempt to distinguish *Mahmoud*, Defendants emphasize that the *relief* there was limited to an opt-out right, insisting that *Mahmoud* therefore commands narrower relief than the injunction awarded below. Defs.Br.70. Accordingly, rather than asking this Court to overrule the district court's free-exercise ruling, Defendants argue that these claims should be remanded to the Panel or the district court to apply *Mahmoud* as an intervening change in law. Defs.Br.69-71 (citing *United States v. Runnels*, 2022 WL 1010695, at *3 & n.21 (5th Cir. Apr. 5, 2022) (per curiam)). But *Runnels* concerned a change in the law that could have *invalidated* the criminal-defendant appellant's sentence. 2022 WL 1010695, at *3. *Mahmoud*, by contrast, *strengthens* Plaintiffs' free-exercise claims. The district court would surely reach the same result now in light of *Mahmoud*, as would the Panel.

Defendants attempt to justify their refusal to substantively contest Plaintiffs' Free Exercise Clause claims on the ground that the Panel did not rule on them, but that is irrelevant. "[T]he grant of en banc rehearing vacates the earlier panel decision," so this Court's review is directed toward the district court's ruling. *United States v. Vargas-Duran*, 356 F.3d 598, 602 (5th Cir. 2004). Defendants cite no authority preventing this Court from reviewing en banc the district court's free-exercise ruling with the benefit of *Mahmoud*, and such review commands a ruling for Plaintiffs.

## III.   THE DISTRICT COURT'S PRELIMINARY INJUNCTION IS CORRECT.

The district court properly exercised its discretion in issuing a preliminary injunction. *See Harrison v. Young*, 48 F.4th 331, 339 (5th Cir. 2022) (appellate courts review injunctions for "abuse of discretion"). Defendants' argument that the scope of relief should be narrowed is meritless.[12]

---

[12] Defendants apparently abandon their argument against the notice provision of the district court's preliminary injunction. For the reasons previously articulated by Plaintiffs, *see* ECF No. 79 at 66, and the Panel, Op.43, the notice provision is lawful.

69

H.B. 71 violates Plaintiffs' rights under both the Establishment and Free Exercise Clauses. But even if the Court were to affirm based only on Plaintiffs' free-exercise claims, the injunction should not be narrowed. Defendants argue that because the two clauses protect against different harms, they provide different relief, citing the opt-out remedy in *Mahmoud*. Defs.Br.69-70. But H.B. 71 makes an opt-out remedy impossible. Students move between classrooms within their schools, and between schools within their districts. Defendants' suggestion that the injunction be limited to prohibiting applications of H.B. 71 that burden the Plaintiffs' religious exercise only in child-Plaintiffs' classrooms is untenable. Defs.Br.70.

Defendants' proposal would require districts to construct H.B. 71-free bubbles around minor-child-Plaintiffs, requiring schools to take down and re-hang posters whenever a Plaintiff entered or exited a classroom. Such a "bubble" injunction would be completely practically unworkable. Other courts have considered and rejected similar "bubble" suggestions advanced by other states with compulsory Ten-Commandments-in-schools laws. *See, e.g.*, *Cribbs Ringer*, 2025 WL 3227708, at *7 (holding "it is impracticable, if not impossible, to prevent

Plaintiffs from being subjected to unwelcome religious displays without enjoining" implementation of the challenged statute); *Stinson*, 2025 WL 2231053, at \*15 (denying state's demand that "the Court...limit the injunction to Plaintiffs' specific classrooms and libraries"). As these courts have recognized, "restricting the scope of a preliminary injunction to just the individual child-Plaintiffs' classrooms or schools is unlikely to avoid constitutional injury." *Stinson*, 2025 WL 2231053, at \*15 n.16. And an injunction along these lines would also put the minor-child Plaintiffs at risk of repeated "accidental" encounters with the Act's scriptural displays.

## CONCLUSION

For the foregoing reasons, the court should affirm the decision below.

Dated: December 5, 2025

Respectfully submitted,

*/s/ Jonathan K. Youngwood*

Daniel Mach
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street, NW, Ste. 600
Washington, DC 20005

Jonathan K. Youngwood
SIMPSON THACHER & BARTLETT
LLP
425 Lexington Avenue
New York, NY 10017

Nora Ahmed
Charles Andrew Perry
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF LOUISIANA
PO Box 56157
New Orleans, LA 70156

Patrick C. Elliott
Samuel T. Grover
FREEDOM FROM RELIGION
FOUNDATION
PO Box 750
Madison, WI 53701

Alex J. Luchenitser
Amy Tai
AMERICANS UNITED FOR
SEPARATION OF CHURCH & STATE
1310 L Street, NW, Ste. 200
Washington, DC 20005

## <u>CERTIFICATE OF SERVICE</u>

On December 5, 2025, this document was served via CM/ECF on all

registered counsel and transmitted to the Clerk of the Court.

*/s/ Jonathan K. Youngwood*
Jonathan K. Youngwood

**CERTIFICATE OF COMPLIANCE**

This document complies with Federal Rule of Appellate Procedure 32 because it contains 13,000 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f). This document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) because it has been prepared in a proportionally spaced, serifed typeface using Microsoft Word in 14-point Century Schoolbook font.

*/s/ Jonathan K. Youngwood*
Jonathan K. Youngwood