No. 24-30706

# In the United States Court of Appeals for the Fifth Circuit

DARCY ROAKE, REVEREND, ON BEHALF THEMSELVES AND ON BEHALF OF THEIR MINOR CHILDREN, ET AL.,
*Plaintiffs-Appellees*

v.

CADE BRUMLEY, IN HIS OFFICIAL CAPACITY AS THE LOUISIANA STATE SUPERINTENDENT OF EDUCATION,
*Defendants-Appellants*

———

On Appeal from the United States District Court
for the Middle District of Louisiana

———

**APPELLANTS' SUPPLEMENTAL EN BANC REPLY BRIEF**

———

ERIC C. RASSBACH
JOSEPH C. DAVIS
BENJAMIN A. FLESHMAN
AMANDA L. SALZ
THE BECKET FUND FOR
　RELIGIOUS LIBERTY
1919 Pennsylvania Ave. NW
　Suite 400
Washington, D.C. 20006

*Counsel for Appellants Brumley
and LSBESE Officials*

ELIZABETH B. MURRILL
Attorney General of Louisiana

J. BENJAMIN AGUIÑAGA
Solicitor General

ZACHARY FAIRCLOTH
Principal Deputy Solicitor General

CAITLIN HUETTEMANN
Assistant Solicitor General

OFFICE OF THE ATTORNEY GENERAL
1885 N. 3rd St.
Baton Rouge, LA 70802
(225) 506-3746
AguinagaB@ag.louisiana.gov

*Counsel for Appellants*

## CERTIFICATE OF INTERESTED PERSONS

A certificate of interested persons is not required here because, under the fourth sentence of Fifth Circuit Rule 28.2.1, Appellants—as "governmental" parties—need not furnish a certificate of interested persons.

*/s/ J. Benjamin Aguiñaga*
J. BENJAMIN AGUIÑAGA

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ............................................ ii

TABLE OF AUTHORITIES .................................................................... iv

REPLY .................................................................................................... 1

ARGUMENT .......................................................................................... 2

I.     Plaintiffs Misapprehend This Court's En Banc Practice. .............. 2

II.    Plaintiffs' Free Exercise Clause Claim Fails. ................................. 4

III.   Plaintiffs' Free Exercise Clause Claim Does Not
Justify a Universal Injunction. ...................................................... 9

CONCLUSION ..................................................................................... 11

CERTIFICATE OF SERVICE ............................................................... 13

CERTIFICATE OF COMPLIANCE ..................................................... 14

## TABLE OF AUTHORITIES

**Cases**                                                                                                  **Page(s)**

*Abraham Watkins Nichols Agosto Aziz & Stogner v. Festeryga,*
  138 F.4th 252 (5th Cir. 2025) (en banc) .......................................... 2, 3

*Coke v. Gen. Adjustment Bureau, Inc.,*
  640 F.2d 584 (5th Cir. 1981) ................................................................ 3

*Croft v. Perry,*
  624 F.3d 157 (5th Cir. 2010) ................................................................ 8

*DaimlerChrysler Corp. v. Cuno,*
  547 U.S. 332 (2006) .............................................................................. 9

*Daves v. Dallas Cnty.,*
  22 F.4th 522 (5th Cir. 2022) ................................................................ 3

*E.T. v. Paxton,*
  19 F.4th 760 (5th Cir. 2021) .............................................................. 11

*Mahmoud v. Taylor,*
  606 U.S. 522 (2025) ..................................................................... *passim*

*Murray v. City of Austin,*
  947 F.2d 147 (5th Cir. 1991) ........................................................... 5, 6

*Nathan v. Alamo Heights Independent School District,*
  No. 25-50695 (5th Cir. Oct. 28, 2025) ................................................. 4

*Texas v. United States,*
  126 F.4th 392 (5th Cir. 2025) ............................................................ 10

*Trump v. CASA, Inc.,*
  606 U.S. 831 (2025) ............................................................................ 10

*Wisconsin v. Yoder,*
  406 U.S. 205 (1972) .............................................................................. 5

# REPLY

Having won before the Panel solely on Establishment Clause grounds, in their supplemental brief Plaintiffs switch horses, arguing from the first sentence that the Supreme Court's recent Free Exercise Clause decision in *Mahmoud v. Taylor*, 606 U.S. 522 (2025), is what saves their case. *See, e.g.*, ECF 345-2 at 1, 2, 15–16, 64–69.

It is difficult to understand that move as anything other than desperation. And their effort to blame Defendants for not joining in their bait-and-switch falls flat. Defendants briefed the free-exercise issue before the Panel. ECF 92 at 63–68; ECF 189 at 28–31. But the Panel expressly declined to consider it. Op.23 n.14. So it is no surprise that Defendants' petition and supplemental brief did not address it. Jurisdiction and the Establishment Clause are what this case is about and presumably why this Court granted en banc review.

The free-exercise argument is also badly wrong on the merits. Indeed, *Mahmoud underscores* why Plaintiffs' free-exercise claim fails on the merits. Posters on the wall are not like active instruction using *Mahmoud*'s storybooks (from which *Mahmoud* required opt-outs); they are like *Mahmoud*'s storybooks on the shelf (which no one in *Mahmoud*

challenged)—no one has to read them, and no one gets to direct their removal simply because of a disagreement about the content.

## ARGUMENT

### I. Plaintiffs Misapprehend This Court's En Banc Practice.

Start with process. Plaintiffs' claim that it is "telling[]" that "Defendants' Supplemental Brief scarcely addresses the merits of Plaintiffs' free-exercise claims" is deeply puzzling. ECF 345-2 at 2. The only tell here is that Plaintiffs apparently do not believe that their standing and Establishment Clause arguments are as strong as they claimed before the Panel.

It would be odd, if not improper, for a supplemental en banc brief to address an issue that a panel refused to address and that the en banc petition did not address—particularly where this Court's practice is to "return" a case "to the original panel … to resolve the remaining issues" after deciding the issues that justified the grant of en banc review. *Abraham Watkins Nichols Agosto Aziz & Stogner v. Festeryga,* 138 F.4th 252, 263 (5th Cir. 2025) (en banc); *see also id.* at 263 (Ho, J., concurring) (describing the "basic principle of en banc rehearing" "that we need not decide every issue en banc, but instead may leave non-en banc worthy

issues for the original panel to address"); ECF 271 at 68–69 (Defendants respecting "the Court's ordinary en banc practice" (citing *Abraham Watkins*)). Rather than distinguish *Abraham Watkins*, Plaintiffs refuse to acknowledge it altogether.

Plaintiffs' misunderstanding of this Court's operations also explains their erroneous claims that Defendants "abandon[ed]" various panel-stage issues by "failing" to raise them in their supplemental brief. *See* ECF 345-2 at 18 n.1, 69 n.12 (citing *Coke v. Gen. Adjustment Bureau, Inc.*, 640 F.2d 584, 586 n.2 (5th Cir. 1981) (en banc)). This Court calls en banc briefs "supplemental" for a reason—because they *supplement* the panel-stage briefs, which are submitted to the full Court. *See* ECF 250-1 (ordering additional copies of "merits briefs, reply briefs, and record excerpts, for the use of the en banc court"); ECF 250-2 ("supplemental briefs"). "Whatever else that might mean, it supports that arguments do not need to be restated if they have been sufficiently pressed in the briefing to the panel." *Daves v. Dallas Cnty.*, 22 F.4th 522, 547 (5th Cir. 2022) (en banc). In so holding, the en banc *Daves* Court rejected a dissent's reliance on *Coke*, which Plaintiffs now present as good law. *See id.* at 567 (Haynes, J., dissenting) (relying on *Coke* to claim waiver).

3

## II. Plaintiffs' Free Exercise Clause Claim Fails.

All that said, this Court, informed by the panel-stage briefing (and now this brief), certainly *can* address Plaintiffs' free-exercise claim. Defendants would welcome that approach because the Supreme Court's intervening decision in *Mahmoud* so plainly forecloses Plaintiffs' claim.[1] Moreover, the grant of initial en banc review in *Nathan v. Alamo Heights Independent School District*, No. 25-50695 (5th Cir. Oct. 28, 2025) (and consolidation for argument with this case) may make it prudent to take that step.

Should the Court address that claim on the merits, it would fail. As Defendants argued before the district court and Panel, H.B. 71 does not burden parents' or students' religious exercise. ECF 92 at 63–68; ECF 189 at 28–31. Nothing in Plaintiffs' supplemental brief or *Mahmoud* changes that result.

To start, Plaintiffs incorrectly frame their alleged "burden" as a "factual finding" turning on their own "testimony" that is insulated from

---

[1] Plaintiffs' counsel filed amicus briefs on the losing side of *Mahmoud*. Defendants' outside counsel represented the prevailing *Mahmoud* petitioners, and Louisiana supported the *Mahmoud* petitioners as an amicus.

appellate review. ECF 345-2 at 66. Although the district court did decide on a paper record (and without hearing any live testimony from Plaintiffs) that Plaintiffs' claimed beliefs were "sincerely held," ROA.1761, the entirely separate question of whether that religious exercise was burdened is an "objective" legal inquiry, not one requiring deference to the claimed feelings of a plaintiff. *Mahmoud*, 606 U.S. at 543 (citation omitted); *see also Wisconsin v. Yoder,* 406 U.S. 205, 218 (1972) (distinguishing between "objective danger" and "interference … from a subjective point of view"). And neither the district court, the Panel, nor Plaintiffs cite a single case holding that a passive display of religious imagery burdened a person's religious exercise in violation of the Free Exercise Clause.

To the contrary, when the plaintiff in *Murray v. City of Austin* alleged that a cross on a city seal—which he confronted in "many items of correspondence from the City" as well as on City property—"subtly coerc[ed]" him to "adhere to the majoritarian faith" and "forc[ed] him to support" the cross, this Court "quickly dispose[d]" of his free-exercise claim. 947 F.2d 147, 150, 152 (5th Cir. 1991). Noting he had "fail[ed] to articulate a sufficient burden or restriction imposed on the free exercise

5

of his religion," the Court rightly stated that the case was "a 'far cry from cases dealing with actual interference … or actual compulsion.'" *Id.*

So too here—and *Mahmoud* soundly underscores that result. *Mahmoud* centered the Free Exercise Clause analysis on a "fact-intensive" inquiry into the "specific nature of the educational requirement … at issue." 606 U.S. at 550. The specific nature of the requirement there was active "instruction" aimed at "'disrupt[ing]' children's thinking about sexuality and gender," *id.* at 529; *see also id.* at 532, 535–40. In particular, *Mahmoud* involved a claim by religious parents to have "their children be excused from classroom instruction related to" Montgomery County's "'LGBTQ+-inclusive'" "storybooks." *Id.* at 537. The County had set "an expectation that teachers use" the challenged books "as part of instruction," and that the "discussion that ensue[d]" after reading the books would "correct the children and accuse them of being hurtful when they express a degree of religious confusion." *Id.* at 555.

The *Mahmoud* facts are nowhere close to purely passive posters on the wall depicting a document foundational to American law. H.B. 71 requires no instruction on the Ten Commandments, no teacher

6

discussion or even acknowledgement of the displays, no requirements about where in the classrooms the displays are placed, and certainly no attempt to "correct" or "disrupt" students' religious beliefs. *Cf.* ECF 287 at 5–8 (Louisiana legislators describing how "the legislative record as a whole shows that the Legislature enacted H.B. 71 to promote civic education"). In fact, neither this Court nor the district court would be able to engage in a "fact-intensive" review of the "specific nature" of the challenged displays that is required under the Free Exercise Clause, *Mahmoud*, 606 U.S. at 550, since no one knows what the relevant displays will look like—which also undermines Plaintiffs' similarly puzzling attempt to invoke *Mahmoud* on justiciability. *Cf.* ECF 345-2 at 19; *compare* 606 U.S. at 532–40 (challenged curriculum and instruction already had proceeded for a year and the Court knew exactly what the storybooks contained).

More still, the *Mahmoud* parents explicitly disavowed any "objection 'to the books being on the shelf or available in the library.'" 606 U.S. at 621 n.11 (Sotomayor, J., dissenting). The right they claimed was instead to "have their children excused from instruction related to the

7

storybooks," *id.* at 545–46 (majority)—not to ban the storybooks from schools altogether or even from their children's classrooms.

Here, however, Plaintiffs seek to do exactly what *Mahmoud* does not permit: "micromanage the public school curriculum," *id.* at 568, by completely banning H.B. 71 displays from all public-school classrooms in Louisiana. Aside from presenting a fundamental remedies problem, *see infra* Part III, that would open up public education in this Circuit to ongoing classroom-redesign-by-lawsuit. Among other things, that would allow objecting students not just to sit quietly while the Pledge of Allegiance is recited in their presence, but to stop others from willingly reciting it. *Contra Croft v. Perry*, 624 F.3d 157, 170 (5th Cir. 2010). And it would allow students to ban non-kosher, non-halal, or non-vegetarian food from school cafeterias because they object to its presence in schools on religious grounds. But turning retail accommodations for individual dissenters into wholesale rules for every student is unworkable and would effectively lead to the elimination of religious accommodations altogether.

*Mahmoud* emphatically bars the Free Exercise Clause claim.

## III. Plaintiffs' Free Exercise Clause Claim Does Not Justify a Universal Injunction.

Regardless, Plaintiffs' free-exercise claim cannot lawfully "supply independent grounds to affirm the preliminary injunction below." ECF 345-2 at 16. As Defendants explained, a winning free-exercise claim would at most mean H.B. 71 was unconstitutional *as applied* to Plaintiffs and support a *Plaintiff-specific* injunction—so the Court must address the Establishment Clause to review the ruling that H.B. 71 is "facially unconstitutional." ROA.1793–94 (emphasis omitted); *see* ECF 271-1 at 69–70; *Mahmoud*, 606 U.S. at 568.

Plaintiffs claim "the injunction should not be narrowed" because "[s]tudents move between classrooms within their schools, and between schools within their districts." ECF 345-2 at 70. But Plaintiffs offered *zero* evidence below to support that this was true of the students here, much less to imply that these students might someday visit every classroom in every school in their district or in the State of Louisiana. *See, e.g.*, *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 353 (2006) ("[t]he remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established").

9

In any event, even if this theory were viable, it *still* would not justify the universal injunction entered below. *See Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025) (barring "injunctions [that] are broader than necessary to provide complete relief to each plaintiff with standing to sue"). Plaintiffs claim it would be "unworkable" to "requir[e] schools to take down and re-hang posters whenever a Plaintiff entered or exited a classroom." ECF 345-2 at 70. But even if that were necessary (that question has not been litigated), it would not justify Plaintiffs' opposite extreme—an injunction barring Defendants from enforcing H.B. 71 anywhere in Louisiana.

Examples readily come to mind disproving Plaintiffs' false dichotomy: *e.g.*, an injunction limited to Plaintiffs' classrooms, to Plaintiffs' schools, or even to Plaintiffs' schools plus any other classrooms that Plaintiffs can actually show they will visit. Each of these would still be baseless on the merits, but they at least would be "more limited" than the universal injunction below. *Texas v. United States*, 126 F.4th 392, 421 (5th Cir. 2025). And since there are many other ways "the injunction could have been tailored to address only the … plaintiffs in this action," "at minimum, the district court's blanket injunction prohibiting the

10

enforcement of [H.B. 71] in all public schools across the State of [Louisiana] is overbroad," *E.T. v. Paxton*, 19 F.4th 760, 769 (5th Cir. 2021)—assuming the free-exercise claim could even get off the ground, which it cannot.

## CONCLUSION

The Court should reverse and render judgment for Defendants.

|  |  |
|---|---|
| | Respectfully submitted, |
| | ELIZABETH B. MURRILL<br>Attorney General of Louisiana |
| ERIC C. RASSBACH<br>JOSEPH C. DAVIS<br>BENJAMIN A. FLESHMAN<br>AMANDA L. SALZ<br>THE BECKET FUND FOR<br>  RELIGIOUS LIBERTY<br>1919 Pennsylvania Ave. NW<br>  Suite 400<br>Washington, D.C. 20006<br><br>*Counsel for Appellants*<br>*Brumley and LSBESE Officials*<br><br>Dated: December 12, 2025 | */s/ J. Benjamin Aguiñaga*<br>J. BENJAMIN AGUIÑAGA<br>Solicitor General<br><br>ZACHARY FAIRCLOTH<br>Principal Deputy Solicitor General<br><br>CAITLIN HUETTEMANN<br>Assistant Solicitor General<br><br>OFFICE OF THE ATTORNEY GENERAL<br>1885 N. 3rd St.<br>Baton Rouge, LA 70802<br>(225) 506-3746<br>AguinagaB@ag.louisiana.gov<br><br>*Counsel for Appellants* |

## CERTIFICATE OF SERVICE

I certify that on December 12, 2025, I filed the foregoing brief with the Court's CM/ECF system, which will automatically send an electronic notice of filing to all counsel of record.

*/s/ J. Benjamin Aguiñaga*
J. BENJAMIN AGUIÑAGA

## CERTIFICATE OF COMPLIANCE

Pursuant to Fifth Circuit Rule 32.3, the undersigned certifies that this motion complies with:

(1) the 2,000-word limit requested in Defendants' motion for leave to file a supplemental en banc reply brief because it contains 1,998 words; and

(2) the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word 2016 (the same program used to calculate the word count).

<i>/s/ J. Benjamin Aguiñaga</i><br>
J. B<small>ENJAMIN</small> A<small>GUIÑAGA</small>

Dated: December 12, 2025