

**LIZ MURRILL**
**ATTORNEY GENERAL**

STATE OF LOUISIANA
DEPARTMENT OF JUSTICE
OFFICE OF THE ATTORNEY GENERAL
P.O. BOX 94005
BATON ROUGE, LA
70804-9005

January 9, 2026

**VIA CM/ECF**

Mr. Lyle W. Cayce
Clerk of Court
United States Court of Appeals for the Fifth Circuit
600 S. Maestri Place
New Orleans, LA 70130-3408

  Re: *Roake v. Brumley*, No. 24-30706

Dear Mr. Cayce:

  I write to notify the Court about a factual development that implicates Defendants' pending arguments before the Court. On January 8, Defendant Vernon Parish School Board passed the attached resolution regarding H.B. 71. That resolution acknowledges that the district court's injunction bars the Board from enforcing H.B. 71. It announces, however, that the Board has received donated displays identical to the displays proposed by the Attorney General's January 3, 2025 guidance letter. ECF 271 at 7–10. Accordingly, the resolution states that, if the district court's injunction is lifted, "the Board intends to" (a) "adopt the Attorney General's guidance as its own," and (b) "direct all schools within its jurisdiction to immediately implement H.B. 71 in accordance with that guidance, using the currently donated displays identified in the Attorney General's guidance." Resolution at 4. The resolution further states that "the Board intends to emphasize that the H.B. 71 displays must be displayed among other displays reflecting educational content." *Id.*

  Defendants do not understand this development to affect their constitutional ripeness challenge. *See DM Arbor Court, Ltd. v. City of Houston*, 988 F.3d 215, 219 (5th Cir. 2021) ("A case ripening based on post-trial-court developments [] makes more sense when the ripeness problem is rooted in prudential, rather than constitutional, concerns."). It also does not affect Defendants' standing argument because (a) standing is assessed as of the date the complaint is filed, *Murthy v. Missouri*, 603 U.S. 43, 58 (2024), and (b) "'plaintiffs must demonstrate standing' … against each defendant," not just one, *id.* at 61.

  I thank you for relaying this letter to the en banc Court.



STATE OF LOUISIANA
DEPARTMENT OF JUSTICE
OFFICE OF THE ATTORNEY GENERAL
P.O. BOX 94005
BATON ROUGE, LA
70804-9005

LIZ MURRILL
ATTORNEY GENERAL

Respectfully,

/s/ J. Benjamin Aguiñaga

| | |
|---|---|
| ERIC C. RASSBACH | ELIZABETH B. MURRILL |
| JOSEPH C. DAVIS | Attorney General of Louisiana |
| BENJAMIN A. FLESHMAN | |
| AMANDA L. SALZ | J. BENJAMIN AGUIÑAGA |
| THE BECKET FUND FOR | Solicitor General |
|   RELIGIOUS LIBERTY | |
| 1919 Pennsylvania Ave. NW | ZACHARY FAIRCLOTH |
|   Suite 400 | Principal Deputy Solicitor General |
| Washington, D.C. 20006 | |
| | OFFICE OF THE ATTORNEY GENERAL |
| *Counsel for Appellants* | 1885 N. 3rd St. |
| *Brumley and LSBESE* | Baton Rouge, LA 70802 |
| *Officials* | (225) 506-3746 |
| | AguinagaB@ag.louisiana.gov |
| | |
| | *Counsel for Appellants* |

2

President
Deidra Shell

Superintendent
James Williams

Vice-President
Kelly Kaiama Goodwin

# Vernon Parish School Board
201 Belview Road
LEESVILLE, LOUISIANA 71446
(337) 239-3401
Fax (337) 238-5777

**BOARD MEMBERS:**

District One
Rhonda Morrison
Robert Pynes, Jr.
Jim Seaman
Jackie Self
Kelly K. Goodwin

District Two
Angie Davis

District Three
Deidra Shell

District Four
Randy Martin

District Five
Shad Stewart

District Six
Vernon L. Travis, Jr.

District Seven
John Blankenbaker

District Eight
Candace Black

Fort Polk
Garrison Commander
Colonel J. Adam Barlow

ON MOTION OF CANDACE BLACK, SECONDED BY KELLY KAIAMA GOODWIN , THE FOLLOWING VOTES WERE CAST BY THE BOARD:

11 YEAS

0 NEAS

_____

JAMES WILLIAMS, SUPERINTENDENT

VERNON PARISH SCHOOL BOARD

"An Equal Opportunity Employer"

Case: 24-30706    Document: 384    Page: 4    Date Filed: 01/09/2026

Vernon Parish School Board
January 8, 2026
Resolution

**BE IT FOREVER KNOWN**, that by official action taken at its meeting of January 8, 2026 the Vernon Parish School Board (sometimes referred to as the "Board") adopted the following resolution:

**WHEREAS**, the Louisiana Legislature enacted, and the Governor signed into law, H.B. 71 (also known as Act No. 676);

**WHEREAS**, H.B. 71 reflects the Legislature's observation that "the Supreme Court of the United States [has] recognized that the Ten Commandments 'have historical significance as one of the foundations of our legal system'";

**WHEREAS**, H.B. 71 reflects the Legislature's "intent to ... ensure that the students in our public schools may understand and appreciate the foundational documents of our state and national government";

**WHEREAS**, to effectuate that intent, H.B. 71 directs "each public school governing authority [to] display the Ten Commandments in each classroom in each school under its jurisdiction," in accordance with specific minimum requirements;

**WHEREAS**, H.B. 71 provides that "[t]he nature of the display shall be determined by each governing authority";

**WHEREAS**, the Attorney General promulgated a guidance letter on January 3, 2025 containing the following recommendation:

> Louisiana schools should implement H.B. 71 pursuant to the following parameters:
>
> 1. A school should select, and display at its discretion, the four displays attached to this guidance letter—provided that the displays themselves or funding for the displays are donated—such that any given display may appear in any given classroom.
> 2. To ensure readability, each display should be between the statutory minimum size, 11 inches by 14 inches, and 18 inches by 24 inches.
> 3. To avoid any possibility of confusion regarding whether displays are attributable to individual teachers, a school should place its displays on any classroom wall other than behind a teacher's desk, podium, or location from which a teacher ordinarily delivers instruction.

4. A school should seek to place its displays among others reflecting educational content, such as those displaying the Mayflower Compact, the Declaration of Independence, and the Northwest Ordinance, *see* La. R.S. 25:1282.

**WHEREAS**, the Attorney General's guidance urged schools to use the following four particular displays in administering her guidance:

## THE HOUSE OF REPRESENTATIVES & THE LAWGIVERS

 

Twenty-three marble relief portraits hanging over the gallery doors of the House Chamber in the U.S. Capitol depict historical figures noted for their work in establishing the principles that underlie American law. Those lawgivers include notable figures like Hammurabi, Solon, and Thomas Jefferson. When the Speaker of the House assumes his position on the dais, he looks directly at yet another lawgiver, Moses. In fact, the Architect of the Capitol emphasizes that the 22 other lawgivers lining the Chamber walls are oriented "so that all look towards the full-face relief of Moses in the center of the north wall."

**MOSES THE LAWGIVER**



### THE TEN COMMANDMENTS

I AM THE LORD THY GOD.
THOU SHALT HAVE NO OTHER GODS BEFORE ME.
THOU SHALT NOT MAKE TO THYSELF ANY GRAVEN IMAGES.
THOU SHALT NOT TAKE THE NAME OF THE LORD THY GOD IN VAIN.
REMEMBER THE SABBATH DAY, TO KEEP IT HOLY.
HONOR THY FATHER AND THY MOTHER, THAT THY DAYS MAY BE LONG UPON THE LAND WHICH THE LORD THY GOD GIVETH THEE.
THOU SHALT NOT KILL.
THOU SHALT NOT COMMIT ADULTERY.
THOU SHALT NOT STEAL.
THOU SHALT NOT BEAR FALSE WITNESS AGAINST THY NEIGHBOR.
THOU SHALT NOT COVET THY NEIGHBOR'S HOUSE.
THOU SHALT NOT COVET THY NEIGHBOR'S WIFE, NOR HIS MANSERVANT, NOR HIS MAIDSERVANT, NOR HIS CATTLE, NOR ANYTHING THAT IS THY NEIGHBOR'S.

**SPEAKER MIKE JOHNSON**



The History of the Ten Commandments in American Public Education: The Ten Commandments were a prominent part of American public education for almost three centuries. Around the year 1688, The New England Primer became the first published American textbook and was the equivalent of a first grade reader. The New England Primer was used in public schools throughout the United States for more than one hundred fifty years to teach Americans to read and contained more than forty questions about the Ten Commandments. The Ten Commandments were also included in public school textbooks published by educator William McGuffey, a noted university president and professor. A version of his famous McGuffey Readers was written in the early 1800s and became one of the most popular textbooks in the history of American education, selling more than one hundred million copies. Copies of the McGuffey Readers are still available today. The Ten Commandments also appeared in textbooks published by Noah Webster in which were widely used in American public schools along with America's first comprehensive dictionary that Webster also published. His textbook, The American Spelling Book, contained the Ten Commandments and sold more than one hundred million copies for use by public school children all across the nation and was still available for use in American public schools in the year 1975.

# THE SUPREME COURT & THE LAWGIVERS

 

*Various lawgivers, including Blackstone, Moses, and Marshall, look over the Supreme Court as it goes about its daily business. They are represented on the north and south wall friezes. In fact, Moses and the Ten Commandments appear throughout the building, including on a bas-relief medallion on the West Façade facing the Capitol; as the central image in the East Pediment; and as reliefs on eight metopes lining the Great Hall.*

### WILLIAM BLACKSTONE

### MOSES


### JOHN MARSHALL

#### THE TEN COMMANDMENTS

I AM THE LORD THY GOD.
THOU SHALT HAVE NO OTHER GODS BEFORE ME.
THOU SHALT NOT MAKE TO THYSELF ANY GRAVEN IMAGES.
THOU SHALT NOT TAKE THE NAME OF THE LORD THY GOD IN VAIN.
REMEMBER THE SABBATH DAY, TO KEEP IT HOLY.
HONOR THY FATHER AND THY MOTHER, THAT THY DAYS MAY BE LONG UPON THE LAND WHICH THE LORD THY GOD GIVETH THEE.
THOU SHALT NOT KILL.
THOU SHALT NOT COMMIT ADULTERY.
THOU SHALT NOT STEAL.
THOU SHALT NOT BEAR FALSE WITNESS AGAINST THY NEIGHBOR.
THOU SHALT NOT COVET THY NEIGHBOR'S HOUSE.
THOU SHALT NOT COVET THY NEIGHBOR'S WIFE, NOR HIS MANSERVANT, NOR HIS MAIDSERVANT, NOR HIS CATTLE, NOR ANYTHING THAT IS THY NEIGHBOR'S.

"IT IS EMPHATICALLY THE PROVINCE AND DUTY OF THE JUDICIAL DEPARTMENT TO SAY WHAT THE LAW IS."




*The History of the Ten Commandments in American Public Education: The Ten Commandments were a prominent part of American public education for almost three centuries. Around the year 1688, The New England Primer became the first published American textbook and was the equivalent of a first grade reader. The New England Primer was used in public schools throughout the United States for more than one hundred fifty years to teach Americans to read and contained more than forty questions about the Ten Commandments. The Ten Commandments were also included in public school textbooks published by educator William McGuffey, a noted university president and professor. A version of his famous McGuffey Readers was written in the early 1800s and became one of the most popular textbooks in the history of American education, selling more than one hundred million copies. Copies of the McGuffey Readers are still available today. The Ten Commandments also appeared in textbooks published by Noah Webster in which were widely used in American public schools along with America's first comprehensive dictionary that Webster also published. His textbook, The American Spelling Book, contained the Ten Commandments and sold more than one hundred million copies for use by public school children all across the nation and was still available for use in American public schools in the year 1975.*

# Religion's Role in American Public Education

The History of the Ten Commandments in American Public Education: The Ten Commandments were a prominent part of American public education for almost three centuries. Around the year 1688, The New England Primer became the first published American textbook and was the equivalent of a first grade reader. The New England Primer was used in public schools throughout the United States for more than one hundred fifty years to teach Americans to read and contained more than forty questions about the Ten Commandments.

The Ten Commandments were also included in public school textbooks published by educator William McGuffey, a noted university president and professor. A version of his famous McGuffey Readers was written in the early 1800s and became one of the most popular textbooks in the history of American education, selling more than one hundred million copies. Copies of the McGuffey Readers are still available today.

The Ten Commandments also appeared in textbooks published by Noah Webster in which were widely used in American public schools along with America's first comprehensive dictionary that Webster also published. His textbook, The American Spelling Book, contained the Ten Commandments and sold more than one hundred million copies for use by public school children all across the nation and was still available for use in American public schools in the year 1975.

#### THE TEN COMMANDMENTS

I AM THE LORD THY GOD.
THOU SHALT HAVE NO OTHER GODS BEFORE ME.
THOU SHALT NOT MAKE TO THYSELF ANY GRAVEN IMAGES.
THOU SHALT NOT TAKE THE NAME OF THE LORD THY GOD IN VAIN.
REMEMBER THE SABBATH DAY, TO KEEP IT HOLY.
HONOR THY FATHER AND THY MOTHER, THAT THY DAYS MAY BE LONG UPON THE LAND WHICH THE LORD THY GOD GIVETH THEE.
THOU SHALT NOT KILL.
THOU SHALT NOT COMMIT ADULTERY.
THOU SHALT NOT STEAL.
THOU SHALT NOT BEAR FALSE WITNESS AGAINST THY NEIGHBOR.
THOU SHALT NOT COVET THY NEIGHBOR'S HOUSE.
THOU SHALT NOT COVET THY NEIGHBOR'S WIFE, NOR HIS MANSERVANT, NOR HIS MAIDSERVANT, NOR HIS CATTLE, NOR ANYTHING THAT IS THY NEIGHBOR'S.

 

**NOAH WEBSTER**    **WILLIAM McGUFFEY**


 


*Note: This is the version of the Ten Commandments upheld by the Supreme Court in Van Orden v. Perry, but different faith traditions adopt different versions.*



**WHEREAS**, the Board has received hundreds of donated H.B. 71 displays identical to the Attorney General's proposed displays;

**WHEREAS**, a federal court has enjoined Vernon Parish School Board and four other boards from enforcing H.B. 71:

**NOW, THEREFORE, BE IT RESOLVED,** that by the vote reflected herein below, the Vernon Parish School Board does hereby state the following:

- Because of the federal court injunction, the Board is currently unable to enforce H.B. 71.
- If that injunction is lifted, however, the Board intends to adopt the Attorney General's guidance as its own.
- In addition, if that injunction is lifted, the Board intends to direct all schools within its jurisdiction to immediately implement H.B. 71 in accordance with that guidance, using the currently donated displays identified in the Attorney General's guidance. In particular, the Board intends to emphasize that the H.B. 71 displays must be displayed among other displays reflecting educational content.